## Summary of Indicative Terms and Conditions for
## Proposed Debtor-in-Possession Financing

This Term Sheet sets forth the material terms of a debtor-in-possession financing facility (the "**DIP Facility**") to be provided by the lenders set forth on *Annex A* attached hereto (collectively, the "**DIP Lenders**") to Mississippi Phosphates Corporation, Ammonia Tank Subsidiary, Inc., and Sulfuric Acid Tank Subsidiary, Inc. (collectively, the "**Debtors**") in their chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") currently pending in the United States Bankruptcy Court for the Southern District of Mississippi, Gulfport Division (the "**Bankruptcy Court**") jointly administered under case no. 14-51667-KMS.

| | |
|---|---|
| Borrowers: | Each of the Debtors |
| Guarantor: | Phosphate Holdings, Inc. |
| DIP Agent: | STUW LLC, solely in its capacity as administrative agent for the DIP Lenders. The DIP Agent shall take direction from the DIP Lenders in accordance with the Pre-Petition Credit Agreement (as defined below). The DIP Agent shall be entitled to the protections (including rights to indemnification from the DIP Lenders), rights and remedies thereunder until definitive documentation for the DIP Facility is executed in accordance with the terms hereof. |
| Loan Parties: | Borrowers and Guarantor |
| DIP Lenders: | The DIP Lenders and assignees or designees thereof |
| Petition Date: | October 27, 2014 |
| Pre-Petition Lenders: | The "Lenders" under and as defined in the Pre-Petition Credit Agreement. The Pre-Petition Lenders as of the Petition Date are set forth on *Annex B* attached hereto. |
| Agent: | STUW LLC, solely in its capacity as administrative agent for the Pre-Petition Lenders. |
| Loan Advances: | Pursuant to the terms and conditions of this Term Sheet and the DIP Orders (as defined below), the DIP Lenders shall make advances (the "**Loan Advances**") to the Borrowers in an aggregate amount up to $5,000,000 to fund certain administrative and operational costs of the Chapter 11 Cases, with such Loan Advances subject to the timing and details of, and to be used in accordance, with the Approved Budget (as defined below) prepared by the Debtors and the Use of Proceeds section hereof. |
| | An amount up to $5,000,000, to the extent approved by the Bankruptcy Court in an interim order (the "**Interim DIP Order**") and otherwise subject to the timing and details of the Approved Budget, shall be available during the period from the first business day after the entry of the Interim DIP Order by the Bankruptcy Court through the date of entry of a final order by the Bankruptcy Court approving the DIP Facility (the "**Final DIP Order**," and together with the Interim DIP Order, the "**DIP Orders**"). The DIP Orders shall be in form and substance satisfactory to the DIP Agent and DIP Lenders. |
| | The remainder of Loan Advances shall be available after entry of the Final |

**EXHIBIT A**

| | |
|---|---|
| | DIP Order.
Upon entry of the Interim DIP Order, the Borrowers shall open a new deposit account or designate an existing deposit account at a bank acceptable to the DIP Agent and DIP Lenders, in which the proceeds of the Loan Advances, but no other estate funds or property, shall be held and from which disbursements in accordance with the Approved Budget, but no other disbursements, shall be made.
All Loan Advances shall be deemed to be the DIP Agent's cash collateral, which shall be used with the consent of the DIP Agent and DIP Lenders pursuant to the terms of this Term Sheet, the Approved Budget and the Final DIP Order. |
| Maturity Date: | The Borrowers shall be obligated to repay the advances under the DIP Facility in full, including accrued interest thereon and related costs and expenses (collectively, the "**DIP Obligations**"), on the date (the "**Maturity Date**") that is the first to occur of: (a) April 30, 2015, or such later date as the DIP Lenders may agree in their sole and absolute discretion; (b) the closing of a sale of substantially all assets of the Debtors; (c) the consummation of a plan of reorganization; and (d) the occurrence of a Termination Event (as defined below).
Following the occurrence of the Maturity Date, the DIP Lenders shall not be obligated to fund further Loan Advances under the DIP Facility. |
| DIP Agent's Fees and Expenses: | All post-petition fees and expenses of the DIP Agent (including, without limitation, the fees and expenses of any legal counsel, consultants, accounting firms, auditors, financial advisors or other advisors and professionals retained by the DIP Agent from time to time) incurred in connection with the Chapter 11 Cases or incurred in connection with the negotiation and formulation of the DIP Facility (only from and after the Petition Date) and enforcement of rights and remedies under the DIP Facility (the "**DIP Agent's Fees and Expenses**") shall be paid by the DIP Lenders and shall increase the DIP Obligations; *provided*, however, that the DIP Agent's Fees and Expenses shall not reduce the amount of Loan Advances available to the Debtors. The DIP Agent shall provide summary invoices of the DIP Agent's Fees and Expenses to the Debtors within five (5) days of receipt of invoiced fees and expenses. |
| Credit Bid: | The DIP Agent, on behalf of the DIP Lenders, shall be authorized by the Bankruptcy Court, as part of each of the DIP Orders, to credit bid all or any portion of the DIP Obligations, in addition to any other amounts owing to the DIP Agent and DIP Lenders, as part of any bid submitted in a sale of the Debtors' assets pursuant to section 363(k) of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code. |
| Termination Events: | The occurrence of any of the following shall constitute a "**Termination Event**" under the DIP Orders:
a) appointment of a chapter 11 trustee or examiner with expanded powers for any of the Debtors;
b) dismissal or conversion of any of the Chapter 11 Cases; |

c) entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms of the DIP Orders;

d) failure of a Final DIP Order to be entered within 30 days after entry of the Interim DIP Order;

e) request by the Debtors for authorization to obtain post-petition loans or other financial accommodations (i) pursuant to Bankruptcy Code section 364(d), or (ii) that seeks to grant or acknowledge a super-priority claim senior to the super-priority claims of the DIP Lenders pursuant to Bankruptcy Code section 364(c) or otherwise (other than from or with the consent of the DIP Lenders);

f) violation of this Term Sheet, the terms of the DIP Orders, or the provisions of final documentation evidencing the DIP Facility;

g) granting of relief from the automatic stay to permit any creditor to take action with respect to the Loan Parties' assets;

h) filing of a plan by, or on behalf of, the Debtors not acceptable in form and substance to the DIP Lenders;

i) sale or other disposition of any property or assets of the Debtors outside the ordinary course of business without the prior written consent of the DIP Lenders;

j) termination or expiration of the Debtors' exclusivity periods provided in section 1121(c) and (d) of the Bankruptcy Code;

k) filing of any contested matter or adversary proceeding by any party or party-in-interest in the Chapter 11 Cases challenging the claims, Liens, priority or rights of the DIP Agent, DIP Lenders, Agent or Pre-Petition Lenders, including any challenge to rights of the DIP Agent, DIP Lenders, Agent or Pre-Petition Lenders to credit bid the full amounts of their respective claims;

l) any action (including, without limitation, any regulatory or other enforcement action) by any federal or state governmental or regulatory agency or authority that has a material adverse effect on the Debtors' operations in the DIP Agent's and DIP Lenders' sole discretion;

m) default by the Guarantor under the guaranty agreement executed by it;

n) failure of Debtors to timely comply with or otherwise satisfy the Sale Milestones (as defined below);

o) failure of the Debtors to repay in full all then-outstanding Loan Advances, and accrued and unpaid interest thereon, by November 30, 2014;

p) failure of the Debtors to timely execute and deliver definitive documentation evidencing the DIP Facility in form and substance satisfaction to the DIP Agent and DIP Lenders; or

q) any variance (negative to the Approved Budget) of more than 10% in any line item of the Approved Budget (subject to carryover rights

| | |
|---|---|
| | provided below).<br><br>A Termination Event shall only be triggered after at least two (2) business days' written notice from the DIP Agent, on behalf of the DIP Lenders, to the Debtors. |
| Use of Proceeds and Cash Collateral /Approved Budget: | Proceeds of Loan Advances and cash collateral shall be used exclusively for funding the Debtors' environmental remediation obligations and administrative and operational expenses in the ordinary course business in the Chapter 11 Cases as set forth in a budget in form and substance acceptable to the DIP Lenders annexed to the Interim DIP Order, as such budget may be amended from time to time as provided in the DIP Orders and in form and substance acceptable to the DIP Lenders (the "**Approved Budget**"). The Borrowers shall not be permitted variances (negative to the Approved Budget) from the receipts and expenses set forth in the Approved Budget in amounts greater than ten percent (10%) for specific line items, provided, however, the Borrowers shall be permitted to carry forward any unused portion of Loan Advances attributable to particular line items (including amounts previously carried forward) in any week to pay the same line item during the next succeeding three weeks. No more than $50,000 of the DIP Facility may be used in connection with the investigation, discovery proceedings or initiation or prosecution of any claims, causes of action, objections or other litigation against the DIP Agent, DIP Lenders, Agent or Pre-Petition Lenders, or with respect to the DIP Obligations or the Pre-Petition Indebtedness (as defined below). For the avoidance of doubt, all budgets presented by the Debtors to support the use of cash collateral or Loan Advances must be approved by the DIP Lenders. |
| Minimum Loan Advances; Timing: | Loan Advances shall occur no more frequently than twice a month and shall be in a minimum amount of $500,000 (unless less than $500,000 remains to be funded under the DIP Facility); *provided*, that the DIP Lenders, in their sole discretion, may provide Loan Advances in an aggregate amount of less than $100,000 upon request by the Debtors. Each request shall specify the use of proceeds and otherwise be in form and substance satisfactory to the DIP Lenders. |
| Reporting Requirements: | The Borrowers shall deliver the following to the DIP Agent on Tuesday, November 4, 2014 and every other Tuesday thereafter: (a) a variance report detailing: (i) the actual cash expenditures for the prior month and a comparison to the Approved Budget for that month; (ii) the actual cumulative cash expenditures for all of the prior months since the entry of the Interim DIP Order as compared to the Approved Budget for such months; and (iii) a narrative explanation of the variances between the actual monthly expenditures and the budgeted monthly expenditures; and (b) an updated monthly cash flow forecast for the then-remaining period of the Approved Budget (collectively, the "**Budget Reports**"). The Budget Reports shall be subject to the DIP Lenders' review and approval. |
| Excess Cash Flow Sweep; Prepayments: | The Debtors shall prepay in full all then-outstanding Loan Advances, and accrued and unpaid interest thereon, on or before November 30, 2014. After November 30, 2104, to the extent the Debtors' ending cash balance on the last business day of each week equals or exceeds $1,500,000, then all cash in excess of $1,000,000 shall be swept on the next business day to repay Loan |

| | |
|---|---|
| | Advances. |
| Additional Advances: | Subject to conditions in definitive documentation for the DIP Facility (including, without limitation, accuracy of representations and warranties, no events of default, and other customary funding conditions), repaid Loan Advances may be re-borrowed by the Debtors (a) solely to the extent permitted in the Approved Budget to effect the wind down of the Debtors' operations, including, without limitation, amounts needed to cover costs and expenses (including amounts payable to Allen Engineering and other environmental consultants) associated with the Debtors' ongoing requirements to address environmental issues, which include, without limitation, the maintenance of the east gypsum disposal facility and the Debtors' water treatment process, and (b) in increments of no more than $1,000,000 after November 30, 2014, but only if the Debtors' ending cash balance on the last business day of any week after such date is less than $1,000,000. |
| Reporting Obligations of the Debtors; Access to Books and Records: | In addition to the Debtors' reporting obligations in connection with the Approved Budget, the Loan Parties shall permit the DIP Lenders unfettered access to the Debtors' properties and their books and records during regular business hours on one (1) business day's notice. The DIP Lenders' access to the Debtors' books and records shall not be deemed to be a waiver of the attorney-client privilege by the Debtors with respect to any books and records subject to the attorney-client privilege or other applicable privilege. |
| Conditions to Funding: | As a condition to funding, the Debtors shall obtain interim and final orders from the Court, acceptable in form and substance to the DIP Agent and DIP Lenders, (a) authorizing the payment of employee pre-petition wages and benefits, (b) authorizing the provision of adequate assurance of utility providers, and (c) approving this Term Sheet. |
| Sale Milestones: | Subject to the Bankruptcy Court's schedule and availability, the Debtors shall be required to comply with the following (the "**Sale Milestones**"):<br><br>a) On or before November 3, 2014 (the "**Initial Deadline**"), the Debtors shall file and properly serve a motion seeking entry of an order (the "**Sale Procedures Order**") approving procedures for the sale of substantially all of the Debtors' assets, which shall permit (i) the Pre-Petition Lenders to credit bid the full amount of their aggregate allowed claims, and (ii) the DIP Lenders to credit bid the full amount of the aggregate DIP Obligations.<br><br>b) On or before the date that is not later than thirty (30) days after the Initial Deadline, the Bankruptcy Court will have entered the Sale Procedures Order.<br><br>c) On or before the date that is not later than ninety (90) days after the Initial Deadline, the Debtors shall have held the auction.<br><br>d) On or before the date that is not later than one hundred five (105) days after the Initial Deadline, the Bankruptcy Court will have entered an order approving the sale of assets, the results of the auction and the winning bid received at the auction.<br><br>e) On or before the date that is (x) not later than one hundred ten |

| | |
|---|---|
| | (110) days after the Initial Deadline, if a waiver of the stay set forth in Bankruptcy Rule 6004 is obtained, or (y) not later than one hundred twenty-five (125) days after the Initial Deadline, if such a waiver is not obtained, the Debtors shall have closed and consummated the sale.<br><br>Notwithstanding anything to the contrary herein, the DIP Lenders may extend any of the foregoing deadlines, and the Bankruptcy Court may set dates with respect to the Sale Milestones beyond the outer dates specified above to accommodate its schedule. To the extent the Bankruptcy Court makes such an extension, the Sale Milestones shall be automatically extended to reflect the Bankruptcy Court's extension. |
| First-Priority Lien: | The DIP Obligations shall be secured by a first-priority priming Lien senior to all other Liens on all of the Debtors' assets now owned or hereafter acquired and the proceeds therefrom pursuant to section 364(d) of the Bankruptcy Code. The DIP Obligations shall be secured by a first-priority Lien on all of the Guarantor's assets under applicable state law. Proceeds from the sale of assets shall be applied to repayment of outstanding Loan Advances and other DIP Obligations. |
| Superpriority Claim: | To ensure repayment of the DIP Obligations, the DIP Agent, for the benefit of the DIP Lenders, shall receive and be entitled to, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim against the Debtors' bankruptcy estates over all other costs and expenses of the kinds specified in, or ordered pursuant to, Bankruptcy Code sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, or any other Bankruptcy Code provision, and which allowed superpriority global administrative expense claim shall not be subject to objection or reclassification or subordination by the Debtors or any other party. |
| Adequate Protection | To the extent of any diminution in value of the Agent and Pre-Petition Lenders' collateral, the Agent, on behalf of the Pre-Petition Lenders, shall be granted:<br><br>a) allowed superpriority administrative expenses claims against the Debtors as provided in section 507(b) of the Bankruptcy Code that shall only be subordinate and subject to (i) the Carve Out and (ii) the DIP Agent's and DIP Lenders' superpriority Claims; and<br><br>b) a valid, perfected replacement security interest in and lien on all of the Debtors' assets (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements), subject and subordinate only to the Liens securing the DIP Obligations and the Carve Out. |
| Bankruptcy Code Section 506(c) Waiver: | No super priority or administrative expense claim incurred by the Debtors or any other party in the case shall be charged, surcharged or assessed against or recovered from the assets that secure the DIP Obligations or Pre-Petition Indebtedness, or any proceeds therefrom, pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise. |
| Interest Rate: | The Loan Advances shall accrue interest at a variable rate per annum equal to seven percent (7.00%) per annum. At all times while a default exists, interest |

| | |
|---|---|
| | shall accrue at a rate per annum equal to nine percent (9.00%). |
| Lien on Unused Loan Advances: | The DIP Agent, on behalf of the DIP Lenders, shall be granted a valid, properly perfected, first priority senior Lien on all unused Loan Advances, without the need for any deposit account control agreement or other evidence of perfection, and upon the occurrence of the Maturity Date, the DIP Agent and DIP Lenders shall be entitled to immediate repayment of all such unused Loan Advances. |
| Carve Out: | The super priority claims and Liens granted to the DIP Lenders or the DIP Agent under the DIP Orders shall be subject to the Carve Out (as defined in the DIP Orders) for (a) the unpaid fees of the Clerk of the Court and the U.S. Trustee; (b) the fees and expenses incurred by any Chapter 7 trustee and any professionals retained by such trustee, in an aggregate amount not to exceed $50,000; (c) to the extent provided in the Approved Budget and allowed by final order (which cannot exceed such budgeted amounts), all unpaid fees and expenses of Chapter 11 professionals retained by the Debtors or the Official Committee of Unsecured Creditors (the "**Committee**"), which are incurred at any time on or before the first business day following a Termination Event, whether allowed by the Court prior to or after the Termination Event; and (d) after the first business day following a Termination Event, to the extent allowed by a final order, the payment of reasonable fees of such Chapter 11 professionals referenced in *clause (c)* above, pro rata, in an aggregate amount not to exceed $200,000. Nothing herein shall impose an obligation on the DIP Lenders to advance any amounts to pay the Carve Out. |
| Documentation: | If required by the DIP Agent and DIP Lenders upon approval in the Final DIP Order, the DIP Facility shall be evidenced by definitive documentation in form and substance acceptable to the DIP Agent and DIP Lenders in their sole and absolute discretion. Such executed documentation, which shall supersede this Term Sheet, shall include representations, warranties and covenants customary for facilities of this type. |
| Governing Law: | New York, except as governed by the Bankruptcy Code, or except as governed by applicable local or state law as required for perfection of Liens in favor of the DIP Lenders. |
| Loan Parties' Stipulations; Challenge Period: | The Loan Parties shall stipulate in the DIP Orders that the claims and obligations under that certain Amended and Restated Credit Agreement, dated September 4, 2013 (the "**Pre-Petition Credit Agreement**"), among the Borrowers, the Guarantor, the Agent, and the Pre-Petition Lenders, plus interest and fees owing thereon as of the Petition Date (collectively, the "**Pre-Petition Indebtedness**"), are valid, enforceable and existing, and that all Liens, claims and interests held by the Agent and the Pre-Petition Lenders to secure the Pre-Petition Indebtedness are valid, existing, and properly perfected first priority Liens, and shall be subject to a sixty (60) day review period from the date of the Interim DIP Order for the Committee or any other party in interest first determined to have standing to conduct a review thereof (the "**Challenge Period**"). If, prior to the end of the Challenge Period, no adversary proceeding or contested matter is actually and timely filed by the Committee (or such other person determined to have standing to do so) that challenges the Pre-Petition Indebtedness or Liens securing such |

|  | indebtedness, then the Pre-Petition Lenders shall be deemed to have allowed secured claims in the aggregate of the amount of $58,197,393 consisting of $57,549,956 in principal and $647,437 in interest (plus costs expenses and fees recoverable under the pre-petition credit documents) as of the Petition Date for all purposes in the Chapter 11 Cases and any subsequent Chapter 7 cases, and shall be entitled to credit bid the full amount of their aggregate Pre-Petition Indebtedness and claims at any sale of assets in the Chapter 11 Cases pursuant to sections 363(k) or 1129 of the Bankruptcy Code. The Debtors and other Loan Parties shall not be entitled to assert a challenge to the claims, interests or Liens (or priority thereof) held or asserted by Prepetition Lenders or the Agent, on their behalf. |
|---|---|
| Approval of Bankruptcy Court: | This Term Sheet is subject to the approval of the Bankruptcy Court. |

*Signature page follows.*

ACCEPTED AND AGREED:

**PHOSPHATES HOLDINGS, INC.**

By: _____

    Name: Robert P. Kerley
    Title: Chief Financial Officer

**MISSISSIPPI PHOSPHATES CORPORATION**

By: _____

    Name: Robert P. Kerley
    Title: Chief Financial Officer

**AMMONIA TANK SUBSIDIARY, INC.**

By: _____

    Name: Robert P. Kerley
    Title: Chief Financial Officer

**SULFURIC ACID TANKS SUBSIDIARY, INC.**

By: _____

    Name: Robert P. Kerley
    Title: Chief Financial Officer

**STUW LLC,**
solely in its capacity as administrative agent for the DIP Lenders

By: _____

    Name:
    Title:

Case 14-51667-KMS    Doc 14-1    Filed 10/27/14    Entered 10/27/14 19:40:06    Desc
Exhibit A    Page 10 of 11

## ANNEX A

### DIP Lenders and Commitments

| DIP Lender | Commitment |
|---|---|
| Hudson Bay Fund LP | $475,143.25 |
| Hudson Bay Intermediate Fund Ltd. | $1,457,103.43 |
| Hudson Bay Master Fund Ltd. | $144,267.79 |
| Broadbill Partners, LP | $103,825.72 |
| Broadbill Partners II, LP | $25,956.43 |
| MILFAM I L.P. | $350,717.45 |
| IFC Acquisition Group LLC | $259,564.31 |
| Pine River Master Fund Ltd. | $476,544.44 |
| Pine River Credit Relative Value Master Fund Ltd. | $238,355.62 |
| Pine River Fixed Income Master Fund Ltd. | $428,839.96 |
| Pine River Deerwood Fund Ltd. | $47,704.48 |
| LMA SPC for and on behalf of the MAP 89 Segregated Account | $476,544.44 |
| Virtus Capital LP | $515,432.66 |

## ANNEX B

### Pre-Petition Lenders

Hudson Bay Fund LP
Hudson Bay Intermediate Fund Ltd.
Hudson Bay Master Fund Ltd.
Wilfred Global Opportunity Fund LP
IFC Acquisition Group LLC
Broadbill Partners, LP
Broadbill Partners II, LP
MILFAM I L.P.
MILFAM II L.P.
Lloyd I. Miller Trust A-1
Lloyd I. Miller Trust A-2
Virtus Capital LP
Virtus DB Recover LP
Virtus KG Fund LP
Virtus Angels Fund, LP
Virtus TK LLC
Pine River Master Fund Ltd.
Pine River Credit Relative Value Master Fund Ltd.
Pine River Fixed Income Master Fund Ltd.
Pine River Deerwood Fund Ltd.
LMA SPC for and on behalf of the MAP 89 Segregated Portfolio


ButlerSnow 23237310v2