IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MISSISSIPPI PHOSPHATES | ) | |
| CORPORATION, *et al.*[1] | ) | CASE NO. 14-51667-KMS |
| | ) | Chapter 11 |
| | ) | |
| Debtors | ) | Jointly Administered |
| | ) | |

**MOTION OF DEBTORS, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, 365, 503, AND 507, AND BANKRUPTCY RULES 2002, 3007, 6004, 6006, 9007, AND 9014, FOR ENTRY OF: (I) ORDER (A) APPROVING SALES AND BIDDING PROCEDURES IN CONNECTION WITH SALE OF ASSETS OF THE DEBTORS, (B) APPROVING FORM AND MANNER OF NOTICE, (C) SCHEDULING AUCTION AND SALE HEARING, (D) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) GRANTING RELATED RELIEF; AND (II) ORDER (A) APPROVING PURCHASE AGREEMENT, (B) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (C) GRANTING RELATED RELIEF**

Mississippi Phosphates Corporation, *et al.*, the Debtors and debtors-in-possession herein (collectively, the "***Debtors***") in these jointly administered chapter 11 cases, by and through the undersigned attorneys, file this this *Motion of Debtors, pursuant to Bankruptcy Code Sections 105(a), 363, 365, 503, and 507, and Bankruptcy Rules 2002, 3007, 6004, 6006, 9007, and 9014 for Entry of: (I) Order (A) Approving Sales and Bidding Procedures in Connection with Sale of Assets of the Debtors, (B) Approving Form and Manner of Notice, (C) Scheduling Auction and Sale Hearing, (D) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (E) Granting Related Relief; and (II) Order (A)*

---

[1] The chapter 11 cases of the following affiliated Debtors have been administratively consolidated for joint administration pursuant to that certain *Order Granting Motion of the Debtor for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b)*, dated October 29, 2014 [Dkt. #62]: Mississippi Phosphates Corporation ("***MPC***"), Case No. 14-51667, Ammonia Tank Subsidiary, Inc. ("***ATS***"), Case No. 14-51668 and Sulfuric Acid Tanks Subsidiary, Inc. ("***SATS***"), Case No. 14-51671. These chapter 11 cases are sometimes referred to herein as the "***Bankruptcy Cases***."

*Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* (the "**Motion**") for entry of orders as follows:

  A. With respect to the Sales and Bidding Procedures (as defined below), an Order in substantially the form attached hereto as **Exhibit A** (the "*Sales and Bidding Procedures Order*"), which grants the following relief:

- approving sales and bidding procedures, substantially in the form attached to the Sales and Bidding Procedures Order as **Exhibit 1** (the "*Sales and Bidding Procedures*"),[2] to govern the sale of all or substantially all assets of the Debtors (the "*Sellers Assets*");

- authorizing the Debtors to schedule an auction to sell the Sellers Assets (the "*Auction*") on or before Friday, March 6, 2015;

- scheduling the final hearing to approve a sale of the Sellers Assets (the "*Sale Hearing*") for on or before Friday, March 13, 2015;

- approving the form and manner of notice of the proposed sale transactions, the Sales and Bidding Procedures, the Auction, and the Sale Hearing;

- authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "*Assigned Contracts*") by the purchaser who submits the highest or otherwise best offer at the Auction in accordance with the Sales and Bidding Procedures (the "*Prevailing Purchaser*"); and

- granting related relief.

  B. With respect to the sale of the Sellers Assets, an order, the form of which shall be filed with the Court and served on the entities receiving this Motion before the Sale Hearing (the "*Sale Order*"), which shall include the following relief:

---

[2] The Debtors reserve the right to modify the Sales and Bidding Procedures if the Debtors, in consultation with the DIP Agent, the Agent and the Committee (collectively, the "*Creditor Constituencies*") to designate one or more "stalking horse bidders" with respect to some or all of the assets and to seek related protections with respect to the same by separate motion.

- 2 -

- authorizing the sale (the "*Sale*") of the Sellers Assets and the assumption and assignment of the Assigned Contracts (as defined herein) to the Prevailing Purchaser at the Auction free and clear of all liens, claims, encumbrances, and other interests[3] (collectively, "*Liens*"), other than any Liens permitted by the purchase agreement between the Debtors and the Prevailing Purchaser; and

- granting related relief.

In support of this Motion, the Debtors respectfully represent to the Court the following:

## BACKGROUND

I. **The Debtors' Chapter 11 Cases**

1. On October 27, 2014 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief and thereby commenced their cases under chapter 11, title 11 of the United States Code (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the Southern District of Mississippi, Southern Division (the "*Court*"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating the businesses and managing the properties as debtors-in-possession. No trustee or examiner has been appointed, and no official committee of unsecured creditors (the "*Committee*") has yet been established.

---

[3] Specifically, the Debtors seek to sell the Sellers Assets to the Prevailing Purchaser, and the assumption, assignment and sale of the Executory Contracts to the Prevailing Purchaser, free and clear of all Liens and Claims (as defined below) of any kind or nature whatsoever in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (4) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to: (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability; and (8) any environmental laws, provided, however, nothing in the Sale Order authorizing and permitting such sale will be construed to release, nullify, or enjoin a governmental body from seeking to enforce any environmental laws under which a purchaser of property would otherwise be determined to be liable as a current owner or current operator after the date of closing of the sale and purchase of the Sellers Assets.

2. MPC is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. MPC is a major United States producer and marketer of one of the most common types of phosphate fertilizer, diammonium phosphate ("**DAP**"). MPC's production facilities are located on a deep-water channel in Pascagoula, Mississippi. As of the Petition Date, MPC employed 224 employees and 26 "nested" third-party contract employees. MPC's production facilities currently yield approximately 600,000 to 650,000 tons of DAP annually.

3. ATS is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. ATS is a wholly owned subsidiary of MPC formed in May 2010. ATS' facilities include an ammonia tank, which stores ammonia used in MPC's production of DAP.

4. SATS is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. SATS is a wholly owned subsidiary of MPC formed in May 2010. SATS' facilities include a sulfuric acid storage tank, which stores sulfuric acid used in MPC's production of DAP.

5. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in that certain *Declaration of David N. Phelps in Support of the Debtor's Chapter 11 Petitions and First Day Motions* (the "**Phelps Declaration**") [Dkt. # 13], which is incorporated herein by reference.

## II. Interim DIP Order

6. On October 29, 2014, the Court entered its *Interim Order Under Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the Debtors to Incur Post-Petition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Post-Petition Priming and Senior Priority Security Interests and Superpriority Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing On the Motion* (Doc. No. 66) (the "**Interim DIP Order**"). The Interim DIP Order authorizes the Debtors to use cash collateral of the Debtors' Pre-Petition Lenders (as defined in the Interim DIP Order) and to obtain $5.0 million in debtors-in-possession financing from the DIP Lenders (as defined in the Interim DIP Order).

7. Pursuant to section 363(k) of the Bankruptcy Code and the express terms of the Interim DIP Order and the proposed final DIP order: (a) the Agent (as defined in the Interim DIP Order) for and on behalf of the Pre-Petition Lenders, is permitted to credit bid up to the full amount of its claims of $58,197,393 – representing the full amount of the Pre-Petition Indebtedness (as defined in the Interim DIP Order) – at any sale of assets under sections 363 or 1129 of the Bankruptcy Code; and (b) the DIP Agent (as defined in the Interim DIP Order) for an on behalf of the DIP Lenders, is permitted to credit bid the full amount of any DIP Obligations (as defined in the Interim DIP Order) outstanding as of any auction sale of assets under sections 363 or 1129 of the Bankruptcy Code.

## III. Proposed Sales and Bidding Procedures

8. To ensure that the highest or otherwise best offer is received for the Sellers Assets, the Debtors established the proposed Sales and Bidding Procedures to govern the

submission of competing bids at an Auction. Accordingly, the Debtors seek the Court's approval of the Sales and Bidding Procedures set forth in **Exhibit 1** to the Sales and Bidding Procedures Order and incorporated herein in their entirety by this reference.

9. The Debtors' proposed timeline with respect to the Sales and Bidding Procedures, the Auction, the Sale Hearing, and the closing of the Sale is as follows:[4]

- Entry of the Sales and Bidding Procedures Order no later than **December 11, 2014**;

- Submission deadline for bids (the "***Bid Deadline***") shall be **Friday, February 27, 2015, at 5:00 p.m.** (prevailing Central Time);

- The Debtors will determine which competing bids are Qualified Bids (as defined in the Sales and Bidding Procedures) within two (2) business days of a bid's submission, but not later than **Tuesday, March 3, 2015** at 11:59 p.m. (prevailing Central Time);

- The Debtors will provide to each Qualified Bidder notice of the terms of the highest or otherwise best Qualified Bid or Qualified Bids received (such highest or otherwise best Qualified Bid, the "***Auction Baseline Bid***") not later than **Tuesday, March 3, 2015** at 11:59 p.m. (prevailing Central Time);

- In the event that there is more than one Qualified Bidder, the Debtors will Conduct the Auction beginning on **Friday, March 6, 2015**, beginning at 9:30 a.m.;

- The Final Hearing to approve the sale of the Sellers Assets to the Prevailing Purchaser is scheduled, subject to the Court's availability, on **Friday, March 13, 2015**; and

- The Sale of Sellers Assets is to be closed and consummated on or before (x) **Tuesday, March 31, 2015**, if a waiver of the stay set forth in Bankruptcy Rule 6004 is obtained, or (y) on or before **Friday, April 10, 2015**, if such a waiver is not obtained.

---

[4] The dates in this timeline are subject to the terms of the Sales and Bidding Procedures Order and the Sales and Bidding Procedures.

## IV.    Proposed Assumption Procedures

10.    To facilitate and effect the sale of the Sellers Assets, the Debtors seek authority to assume and assign certain of the Debtors' executory contracts and unexpired leases (each a "***Contract or Lease***" and, collectively, the "***Contracts and Leases***"), consistent with the procedures established in the Sales and Bidding Procedures Order (the "***Assumption Procedures***").

11.    The proposed Assumption Procedures are as follows:

(a)    **Notice.** The Debtors will serve the notice attached hereto as **Exhibit B** (the "*Cure Notice*") on all non-Debtors counterparties to the Debtors' Contracts and Leases (the "*Contract Parties*").

(b)    **Content of the Cure Notice.** The Cure Notice will include the following information: (i) the title of the Contract or Lease to be assumed; (ii) the name of the counterparty to the Contract or Lease; (iii) any applicable cure amounts, whether arising pre-petition or post-petition (as such amounts may be amended from time to time through the filing of an amended Cure Notice, the "*Cure Amount*"); and (iv) the deadline by which any such Contract Party must object to the assumption or assignment of such Contract or Lease.

(c)    **Objections.** Objections to the proposed Cure Amount and adequate assurance of future performance obligations to the Contract Parties must: (i) be in writing; (ii) set forth the nature of the objector's claims against or interests in the bankruptcy estates and the basis for the objection and the specific grounds therefor; (iii) comply with the Bankruptcy Rules (as defined below) and orders of this Court; and (iv) be filed with the Court and served upon the Debtors, the Prevailing Purchaser, the Agent, the DIP Agent, the Committee and the United States Trustee, **so as to be filed by 5:00 p.m. (prevailing Central Time) within twenty-one (21) days of the service of the Cure Notice, or any amended Cure Notice** (the "*Contract Objection Deadline*").

(d)    **Effects of Objecting to a Cure Notice.** A properly filed and served objection to a Cure Notice will reserve such objecting party's rights against the Debtors with respect to the specific objections stated therein but will not constitute an objection to the remaining relief requested in the Motion.

## JURISDICTION

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

13. The statutory predicates for the relief requested herein are sections 105, 363, 365 and 507 of the Bankruptcy Code and Rules 2002, 3007, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## RELIEF REQUESTED

14. By this Motion, the Debtors seek entry of the two Orders:

(a) A Sales and Bidding Procedures Order which will grant the following relief: (1) approving the Sales and Bidding Procedures; (2) approving the form and manner of notice of the proposed sale transactions, the Sales and Bidding Procedures, the Auction, and the Sale Hearing; (3) authorizing the Debtors to hold the Auction; (4) scheduling the Sale Hearing; (5) authorizing procedures governing the assumption and assignment of the Assigned Contracts; and (6) granting related relief; and

(b) A Sale Order after the Sale Hearing which will grant the following relief: (1) approving the purchase agreement between the Debtors and the Prevailing Purchaser at the Auction; (2) authorizing the Sale of the Sellers Assets and the assumption and assignment of the Assigned Contracts to the Prevailing Purchaser at the Auction free and clear of all Liens, other than any permitted Liens set forth in the purchase agreement with the Prevailing Purchaser; and (3) granting related relief.

## BASIS FOR RELIEF

V. **Approval of Sales and Bidding Procedures is Appropriate and in Best Interests of the Bankruptcy Estates.**

    A. **Proposed Notice of Sale, Sales and Bidding Procedures, Auction, and Sale Hearing are Appropriate.**

15. The Debtors believe that the sale of the Sellers Assets in accordance with Sales and Bidding Procedures will obtain the maximum recovery for their creditors if the Sellers Assets are sold through a well-advertised Auction.

16. Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Sellers Assets, including disclosure regarding the Auction, the terms and conditions of the Sale, and the deadline for filing any objections. The Debtors request notice of the Sale, the Auction, the Sale Hearing, and the Sales and Bidding Procedures Order be deemed adequate and sufficient if:

    (a) No later than three business days after the entry of the Sales and Bidding Procedures Order, the Debtors (or their agents) serve by first class mail, postage prepaid, copies of (i) the Sales and Bidding Procedures Order, (ii) the Sales and Bidding Procedures, and (iii) a notice regarding the Sale (the "*Sale Notice*"), substantially in the form attached hereto as **Exhibit C**[5] on the following entities (collectively, the "*Notice Parties*") and those entities and individuals appearing on the Debtors' creditor matrix:

        (1) the Agent and its counsel;

        (2) the DIP Agent and its counsel;

        (3) the Committee and its counsel (if selected, and, if not yet selected, within five (5) business days of being selected);

        (4) the Office of the United States Trustee for the Southern District of Mississippi;

---

[5] In accordance with Bankruptcy Rule 2002(c)(1), the Sale Notice will include, among other things: (a) a description of how the Auction will be scheduled and the date, time, and place of the Sale Hearing; (b) a summary of certain of the terms and conditions of the Sale; (c) the time fixed for filing objections to the Sale; and (d) a description that the Sale of the Sellers Assets is free of any permitted Liens as set forth in the purchase agreement with the Prevailing Purchaser.

(5) the creditors listed on the List of Creditors Holding 20 Largest Unsecured Claims;

(6) the United States Attorney for the Southern District of Mississippi;

(7) the Internal Revenue Service;

(8) the Mississippi Department of Environmental Quality;

(9) the United States Environmental Protection Agency;

(10) all known taxing authorities for the jurisdictions to which the Debtors are subject;

(11) all entities known or reasonably believed to have asserted a Lien on any of the Sellers Assets;

(12) all creditors who are known to have or have asserted in writing secured claims;

(13) the counterparties to each of the Debtors' Contracts and Leases; and

(14) those parties who have formally filed request for notice to the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

(b) No later than five business days after the entry of the Sales and Bidding Procedures Order, the Debtors also will publish a notice (the "*Publication Notice*"), substantially in the form of **Exhibit D** hereto, in the (i) National Edition of *The Wall Street Journal* and (ii) a local newspaper.

17. In addition, the Debtors request the establishment of an objection deadline, prior to the Sale Hearing, such that that any objections related to the proposed Sale be served upon (such as to be **received** by) the following parties (the "*Objection Notice Parties*"), **on or before 5:00 p.m. (prevailing Central Time) on Monday, March 9, 2015** (the "*Sale Objection Deadline*"):

(a) Counsel to the Debtors, Butler Snow LLP, 1020 Highland Colony Parkway, Suite 1400, Ridgeland, MS 39157, Attn: Stephen W. Rosenblatt (steve.rosenblatt@butlersnow.com) and Christopher R. Maddux (chris.maddux@butlersnow.com);

 (b) Chief Restructuring Officer of the Debtors: David N. Phelps, 601 Industrial Drive, Pascagoula, MS 39581 (d.phelps@missphosphates.com);

 (c) Chief Executive Officer of the Debtors: Stephen S. Russo, 601 Industrial Drive, Pascagoula, MS 39581 (s.russo@missphosphates.com);

 (d) Investment Banker for the Debtors: Sandler O'Neill + Partners, L.P. (the "*Investment Banker*"), 1251 Avenue of the Americas, 6th Floor, New York, NY 10020, Attn: Sunny Cheung (scheung@sandleroneill.com), Avinash Tolani (atolani@sandleroneill.com), and Timur Hubey (thubey@sandleroneill.com);

 (e) Office of the United States Trustee for the Southern District of Mississippi, 501 East Court Street, Suite 6430, Jackson, MS 39201, Attn: Christopher J. Steiskal (Christopher.J.Steiskal@usdoj.gov);

 (f) Counsel to the DIP Agent, the Agent, the DIP Lenders, and the Pre-Petition Lenders: (i) Haynes and Boone, LLP, 1221 McKinney Street, Suite 2100, Houston, Texas 77010, Attn: Lenard M. Parkins (lenard.parkins@haynesboone.com) and Karl D. Burrer (karl.burrer@haynesboone.com); and (ii) Byrd & Wiser, 145 Main Street, Biloxi, MS 39530-4333, Attn: Robert A. Byrd (rab@byrdwiser.com); and

 (g) Counsel for any statutory committee appointed in the Chapter 11 Cases.

18. The Debtors submit that the foregoing notice and Sale Objection Deadline comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sales and Bidding Procedures, the Auction, the Sale Hearing, and the Sale to the Debtors' creditors and other parties in interest, including any additional entities that have a legitimate interest in purchasing the Sellers Assets and in in bidding on the Sellers Assets. Based upon the foregoing, the Debtors respectfully request that this Court approve the notice procedures and the Sale Objection Deadline proposed above.

B.  **Sales and Bidding Procedures are Appropriate and Will Maximize Value Received in Sale of Sellers Assets.**

19. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See In re Asarco, L.L.C.*, 650 F.3d 593, 602-03 (5th Cir. 2011) (the application of the business judgment standard was appropriate where the bankruptcy court issued its expense reimbursement order before any potential qualified bidders had incurred due diligence and work fees).

20. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand"); *see also In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

21. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy sales. *See In re Asarco, L.L.C.*, 650 F.3d 593 (5th Cir. 2011)[6]; *see also Official Comm. of Subordinated Bondholders v. Integrated*

---

[6] The Court of Appeals for the Fifth Circuit affirmed the ruling of the District Court which found that an order which allowed a reimbursement of expenses for participating bidders "was designed to maximize the value of ASARCO's estate, and was fair, reasonable, and appropriate. The bankruptcy court further determined that the Reimbursement Order was "in the best interests of ASARCO and its estate, creditors, interest holders, stakeholders, and all other parties in interest." On this basis, the bankruptcy court concluded that ASARCO had demonstrated a compelling and sound business justification for the reimbursement authority. . . . The district court similarly concluded that ASARCO's reimbursement motion satisfied the business judgment standard. The court determined that there was no evidence in the record of self-dealing or manipulation among the parties who negotiated the reimbursement procedures; the Reimbursement Order facilitated, not hindered, the auction process; and the approved maximum available size of the reimbursement fee was reasonable in comparison to the size of the SCC Judgment. *ASARCO LLC*, 441 B.R. at 831-33. *Id.* at 603.

*Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

22. The Debtors believe that the Sales and Bidding Procedures will establish sound parameters by which the proffered sale price of the Sellers Assets may be tested at the Auction, as well as the ensuing Sale Hearing, and evaluated as described herein. Such procedures will increase the likelihood that the Debtors will receive the greatest possible consideration for the Sellers Assets in a sale because they will ensure a competitive and fair bidding process. *In re Integrated Res., Inc.*, 147 B.R. at 659 (noting that Break-up Fees "encourage bidding and to maximize the value of the debtor's assets"). The Sales and Bidding Procedures will also allow the Debtors to undertake the sale and auction process expeditiously, which the Debtors believe is essential to maintaining and maximizing the value of their estates.

23. The Debtors believe that the proposed sales process and Auction and the proposed Sales and Bidding Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best or otherwise highest offer reasonably available at this time for the purchase of the Sellers Assets. Moreover, the proposed Sales and Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion conducted by Sandler O'Neill [7] that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtors believe that the Sales and Bidding Procedures will encourage bidding for the Sellers Assets, are consistent with other procedures previously approved by this Court, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

---

[7] An application to employ Sandler O'Neill + Partners, L.P. as the Investment Banker will be filed in connection with this Motion.

24. Thus, the proposed Sales and Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment under the circumstances and are a permissible use of the Debtors' property pursuant to Section 363 of the Bankruptcy Code because they will serve to maximize the value that the Debtors will obtain on account of the Sale of the Sellers Assets. Accordingly, *See In re Asarco, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011).

**C. The Proposed Notice Procedures for the Assigned Contracts and Leases and the Identification of Related Cure Amounts are Appropriate.**

25. As The Debtors also seek authority to assume and assign the Assigned Contracts to the Prevailing Purchaser in connection with the Prevailing Bid. Further, as soon as practicable, and in no event later than twenty-one (21) days prior to the Contract Objection Deadline, the Cure Notices, which shall describe corresponding Cure Amounts, shall be served on all necessary parties. To the extent that there are disputes regarding any of the Cure Amounts or other issues, the applicable parties may resolve such dispute by mutual agreement or by seeking recourse from the Court.

26. No later than the closing of the Sale (the "***Designation Deadline***"), the Prevailing Purchaser may designate in writing any Contract or Lease to be assumed and assigned to it at the closing. Upon the closing of the Sale, except as may otherwise be agreed to by the Contract Parties or as the Court may otherwise order, the Prevailing Purchaser shall pay the Cure Amount under the Assigned Contracts in accordance with Section 365(b) of the Bankruptcy Code as soon as practicable after the later of (a) such Cure Amounts are finally determined by the Bankruptcy Court and (b) the assumption and assignment of such Assigned Contract is effective.

27. In addition, the Prevailing Purchaser may designate additional Contracts or Leases, which had not previously been designated for assumption and assignment (the

"*Additional Assigned Contracts*"), to be assumed and assigned to the Prevailing Purchaser notwithstanding the occurrence of the closing.

28. Upon the election of the Prevailing Purchaser to seek the assignment of the Additional Assigned Contracts, the Debtors, at the sole expense of the Prevailing Purchaser, shall take all actions reasonably necessary to assume and assign the Additional Assigned Contracts to the Prevailing Purchaser. Any Cure Amounts with respect to the Additional Assigned Contracts shall be paid by the Prevailing Purchaser as soon as practicable after the later of: (a) such Cure Amount is finally determined by the Bankruptcy Court; and (b) the assumption and assignment of such Additional Assigned Contract is effective.

## VI. Approval of Proposed Sale Transaction is Appropriate and in Best Interest of the Bankruptcy Estates.

29. In accordance with Bankruptcy Rule 6004(f)(1), sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtors determined that a public Auction of the Sellers Assets will enable the Debtors to obtain the highest or otherwise best offer in a sale of their assets at this time and is in the best interests of the Debtors, the bankruptcy estates, and their creditors.

### A. Sale of Sellers Assets is Sound Exercise of the Debtors' Business Judgment.

30. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Further, Section 105(a) of the Bankruptcy Code provides, in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."