IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MISSISSIPPI PHOSPHATES** | ) | |
| **CORPORATION, et al.**[1] | ) | **CASE NO. 14-51667-KMS** |
| | ) | **Chapter 11** |
| | ) | |
| **Debtors** | ) | **Jointly Administered** |

## APPLICATION OF DEBTORS TO EMPLOY BUTLER SNOW LLP AS THEIR BANKRUPTCY COUNSEL AND DISCLOSURE OF COMPENSATION

Mississippi Phosphates Corporation, *et al.*, the Debtors and debtors-in-possession herein ("**Debtors**" or the "**Companies**"), by their attorneys, file this *Application of Debtors to Employ Butler Snow LLP as their Bankruptcy Counsel and Disclosure of Compensation* (the "**Application**"). In support of the Application, the Debtors present to the Court the following facts:

### Introduction

1. On October 27, 2014 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under Chapter 11 of the United States Bankruptcy Code.

2. MPC is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. MPC is a major United States producer and marketer of one of the most common types of phosphate fertilizer, diammonium phosphate ("**DAP**"). MPC's production facilities are located on a deep-water channel in Pascagoula, Mississippi. As

---

[1] The chapter 11 cases of the following affiliated Debtors have been administratively consolidated for joint administration pursuant to that certain *Order Granting Motion of the Debtor for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b)*, dated October 29, 2014 [Dkt. #62]: Mississippi Phosphates Corporation ("**MPC**"), Case No. 14-51667, Ammonia Tank Subsidiary, Inc. ("**ATS**"), Case No. 14-51668 and Sulfuric Acid Tanks Subsidiary, Inc. ("**SATS**"), Case No. 14-51671. These chapter 11 cases are sometimes referred to herein as the "**Bankruptcy Cases.**"

of the Petition Date, MPC employed 224 employees and 26 "nested" third-party contract employees. MPC's production facilities currently yield approximately 600,000 to 650,000 tons of DAP annually.

3.     ATS is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. ATS is a wholly owned subsidiary of MPC formed in May 2010. ATS' facilities include an ammonia tank, which stores ammonia used in MPC's production of DAP. ATS does not have any employees; ATS' work is performed by employees of MPC.

4.     SATS is a Delaware corporation with its principal place of business located at 601 Industrial Road, Pascagoula, Mississippi. SATS is a wholly owned subsidiary of MPC formed in May 2010. SATS' facilities include a sulfuric acid storage tank, which stores sulfuric acid used in MPC's production of DAP. SATS does not have any employees; SATS' work is performed by employees of MPC.

5.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in that certain *Declaration of David N. Phelps in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "***Phelps Declaration***") [Dkt. # 13], which is incorporated herein by reference.

5.     The Debtors continue to operate their businesses and manage their assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.     An Official Committee of Unsecured Creditors was appointed by the United Staes Trustee in these bankruptcy cases on November 12, 2014.

### Jurisdiction and Venue

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105(a), 327(a), 1107(a), 1108 and other applicable sections of the United States

Bankruptcy Code.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Relief Requested**

8.     It is necessary for the Debtors to retain legal counsel to render legal services relating to these bankruptcy cases.  By this Application, the Debtors seek to employ and retain Butler Snow LLP ("***Butler Snow***" or the "***Firm***") as their principal bankruptcy counsel with regard to the filing of their Chapter 11 petitions and the prosecution of their Chapter 11 cases to perform the legal services that will be necessary during these Chapter 11 case, including but not limited to the following:

(a)     The preparation and filing of the Schedules and Statement of Financial Affairs;

(b)     to advise the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses;

(c)     to attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

(d)     to take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on its behalf, the defense of any actions commenced against it, negotiations concerning contracts to which any of the Debtors is a party, negotiations concerning all litigation in which the Debtors are involved, evaluations of claims and liens of various creditors, and, where appropriate, to object to such claims or liens against the estates or their property;

(e)     to prepare on behalf of the Debtors all motions, applications, answers, orders, contracts, reports, accounts, documents and papers necessary to the administration of the estates;

(f)     to advise and consult with the Debtors and their other professionals in connection with any sale of its assets, as well as with any disclosure statement and plan of reorganization, and to represent the Debtor in any matter arising out of, related to or in connection with such plan of reorganization, disclosure statement, and all related agreements or documents, as well as any matters that are necessary for the confirmation, implementation or consummation of such plan; and

(g)     to perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with all aspects these Chapter 11 cases.

9.     The Debtors have selected the law firm of Butler Snow LLP, in part, because the Firm has had considerable experience in matters of this kind, and Debtors believe that it is well qualified to represent the Debtors as counsel in these cases.

10.     To the best of Debtors' knowledge, the law firm of Butler Snow LLP and its attorneys have no connection with the Debtors, with their creditors or other parties in interest, except as disclosed in the Affidavit of Stephen W. Rosenblatt (the "***Rosenblatt Affidavit***"), filed separately in this proceeding and attached hereto as Exhibit "A" to this Application. As set forth in the Rosenblatt Affidavit, the Firm is a "disinterested person" with respect to the Debtor, as that term is defined in 11 U.S.C. § 101(14). The Rosenblatt Affidavit, attached hereto as Exhibit "A." pursuant to Bankruptcy Rule 2014(a), discloses the Firm's relationships with the Debtors, affiliates of the Debtors, creditors of the Debtors and other parties in interest. The Firm does not represent or hold any interest adverse to the interests of the Debtors or the bankruptcy estates in

- 4 -

the matters in which it is to be engaged, and the Firm's employment is in the best interest of the bankruptcy estates.

11.    To the best of the Debtors' knowledge, the Firm has no connection with any of the creditors herein or parties in interest, or with the office of the United States Trustee, or any employees of the office of the United States Trustee which are prohibited, or which would interfere with or hinder the performance of Butler Snow's duties herein.

12.    The Debtors have agreed to employ the Firm and its attorneys, and the Firm and its attorneys have agreed to represent Debtors, on an hourly rate basis. The Firm's fees are based on its customary hourly rates. These current hourly rates, which are the same as or less than the rates charged for such services on non-bankruptcy matters, are subject to periodic increases in the normal course of business, usually effective as of January 1 of each year.

13.    The persons most likely to be involved in this representation and their respective positions and 2014 hourly rates are as follows:

### Bankruptcy

| Name | Position | 2014 Hourly Rate |
|------|----------|------------------|
| Stephen W. Rosenblatt | Partner | $440.00 |
| S. Ault Hootsell III | Partner | $360.00 |
| James E. Bailey III | Partner | $350.00 |
| Christopher R. Maddux | Partner | $330.00 |
| Paul S. Murphy | Partner | $280.00 |
| Adam Langley | Associate | $185.00 |
| J. Mitchell Carrington II | Associate | $175.00 |
| Thomas Hewitt | Associate | $175.00 |
| Velvet Johnson | Paralegal | $150.00 |

- 5 -

**Non-Bankruptcy**

| Name | Position | 2014 Hourly Rate |
|------|----------|------------------|
| Don B. Cannada | Partner | $485.00 |
| Michael Caples | Partner | $350.00 |
| Marcie Davant | Paralegal | $175.00 |

14.     Other attorneys and paralegals of Butler Snow may from time to time serve the Debtors in connection with professional services as needed and requested at the rates typically applicable to comparable matters. These hourly rates are subject to annual adjustments in the normal course of the Firm's business to reflect economic and other conditions, and these adjustments are usually made effective January 1 of each year. Butler Snow anticipates the 2015 hourly rates for each attorney and paralegal will higher than the rates listed above.

15.     Butler Snow intends to apply to this Court for allowance of compensation and reimbursement of expenses pursuant to and in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the applicable local rules, and the orders of this Court, including, without limitation, any order authorizing interim payment or compensation of professionals.

16.     The only compensation Butler Snow received from the Debtors within one year before the date of the Petition Date for services rendered was a payment that Butler Snow received from MPC on October 23, 2014, in the amount of $355,151.00. This payment was applied as follows: (i) $30,055.00 for services rendered for pre-petition work from October 24-26, 2014 in connection with the preparation for the filing of these Bankruptcy Cases; (ii) $5,151.00 for the chapter 11 filing fees (a $1,717.00 chapter 11 filing fee for each of the three Debtors); and (iii) $319,945.00 for a post-petition retainer. Butler Snow is presently holding its post-petition retainer of $319,945.00 in its trust account.

17.     Pursuant to that certain Management Services Agreement between the MPC and its parent, PHI, dated September 15, 2013, PHI was obligated to provide MPC with the "PHI Services" which included, among other things, "legal services." Butler Snow rendered legal services for both PHI and the Debtors in a number of different areas. As of the Petition Date, Butler Snow had received $1,331,440.13 in payments from PHI within the past year for those legal services and expenses rendered to PHI and MPC. Butler Snow also received an additional $66,545.69 from Liberty Surplus Insurance Corporation for matters in which Butler Snow was defending MPC under one or more claims for which the insurance company provided a defense.

18.     As of the Petition Date, Butler Snow was not owed any monies by PHI for its representation of PHI and the Debtors since Butler Snow agreed to waive its claim for any unpaid amounts otherwise owed by PHI.

19.     The Rosenblatt Affidavit states that the Firm's statement of compensation is in accordance with Section 329(a) of the Bankruptcy Code and with Bankruptcy Rules 2014 and 2016(b), and that Butler Snow understands that compensation for post-petition services will be paid by the Debtor only pursuant to orders of the Court allowing such compensation.

### Statement Regarding Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases

20.     As this Court is aware, the Executive Office for United States Trustees ("**EOUST**") has adopted new Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "**Appendix B Guidelines**"). By their terms, the Appendix B Guidelines "apply to the USTP's review of applications for compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original Guidelines (the "**Appendix A Guidelines**") adopted by the EOUST in 1996. The Appendix A Guidelines have been a part of this Court's local

procedures for years. In other chapter 11 cases where it has been retained, Butler Snow has filed its fee applications in compliance with the Appendix A Guidelines.

21.     Among other things, the Appendix B Guidelines ask attorneys in "larger chapter 11 cases" (defined as being those "chapter 11 cases with $50 million or more in assets and $50 million or more in liabilities") to provide additional documentation and make significant new disclosures in connection with their retention under section 327 and compensation under section 330 of the Bankruptcy Code. As the Appendix B Guidelines themselves acknowledge, "the Guidelines do not supersede local rules, court orders, or other controlling authority," and it remains to be seen exactly how the Appendix B Guidelines will be interpreted and incorporated into larger chapter 11 cases.

22.     MPC and Butler Snow intend to comply with the United States Trustee's the Appendix B Guidelines both in connection with this application and the interim and final fee applications to be filed by Butler Snow in the course of its engagement in the MPC bankruptcy case. It is MPC's and Butler Snow's intention to work cooperatively with the United States Trustee Program (the "**USTP**") to address the concerns that prompted the EOUST to adopt the Appendix B Guidelines. In doing so, however, MPC and Butler Snow reserve all rights as to the relevance, interpretation and substantive legal effect of the Appendix B Guidelines in respect of any application for employment or compensation in these cases that falls within the ambit of the Appendix B Guidelines.

23.     As set forth in the Declaration of Stephen Russo, the Chief Executive Officer of MPC (the "***Russo Declaration***"), attached hereto as Exhibit "B" to this Application, MPC has established certain procedures, as set forth therein, to supervise Butler Snow's fees and expenses to manage costs in this bankruptcy case.

WHEREFORE, the Debtors requests that they be authorized to employ Butler Snow as their attorneys and legal counsel, effective *nunc pro tunc* to the Petition Date. The Debtors pray for such other and additional relief as the Court deems just and appropriate.

Dated: November 12, 2014.

Respectfully submitted,

MISSISSIPPI PHOSPHATES CORPORATION, *et al.*

By: */s/ Stephen W. Rosenblatt*

Stephen W. Rosenblatt (Miss. Bar No. 5676)
Christopher R. Maddux (Miss. Bar No. 100501)
Paul S. Murphy (Miss. Bar No. 101396)
J. Mitchell Carrington (Miss. Bar No. 104228)
Thomas Hewitt (Miss. Bar No. 104589)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
www.butlersnow.com

ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

Christopher J. Steiskal, Esq.
Office of the United States Trustee
501 East Court Street, Suite 6-430
Jackson, MS  39201-5002
Christopher.J.Steiskal@usdoj.gov

Office of the United States Trustee
A.H. McCoy Federal Building, Suite 706
501 East Court Street, Suite 6-430
Jackson, MS 39201-5002
USTPRegion05.AB.ECF@usdoj.gov

David N. Usry, Esq.
Assistant United States Attorney
United States Attorney's Office
501 East Court Street, Suite 4.430
Jackson, MS  39201
David.Usry@usdoj.gov

### Ch. 11 Creditors' Committee

OCP S.A.
C/O Dianne Coffino
Covington & Burling, LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
dcoffino@cov.com

Trammo, Inc.
c/o James W. O'Mara
Phelps Dunbar
4270 I-55 North
Jackson, MS  39211
jim.omara@phelps.com

Premier Chemicals & Services, LLC
Francis Mayer
4856 Revere Ave., Suite A
Baton Rouge, LA  70808
francis@premierchemicals.net

Shrieve Chemical
c/o Carey Menasco
Liskow & Lewis
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139
clmenasco@liskow.com

Central Maintenance & Welding, INc.
c/o Hugo S. "Brad" deBeaubien
Shumaker, Loop & Kendrick, LLP
Bank of America Plaza
101 East Kennedy Blvd., Suite 2800
Tampa, FL  33602
bdebeaubien@slk-law.com

Mississippi Power Company
c/o Paul J. Delcambre, Jr.
Balch & Bingham, LLP
1310 Twenty Fifth Avenue
Gulfport, MS  39501-1931
pdelcambre@balch.com

Hydrovac Industrial Services, Inc.
c/o James A. McCullough, II
Brunini, Grantham, Grower & Hewes, PLLC
P. O. Drawer 119
Jackson, MS  39205
jmccullough@brunini.com

This, the 12th day of November, 2014.

                                        /s/ Stephen W. Rosenblatt
                                        STEPHEN W. ROSENBLATT

ButlerSnow 23126771v4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

In re:                       )

**MISSISSIPPI PHOSPHATES**
      **CORPORATION, et al.**[1]    )      **CASE NO. 14-51667-KMS**
                       )      **Chapter 11**

                       )      **Jointly Administered**
      **Debtors**          )

---

### AFFIDAVIT OF STEPHEN W. ROSENBLATT AND § 329(A) STATEMENT OF COMPENSATION IN SUPPORT OF APPLICATION TO EMPLOY BUTLER SNOW LLP AS BANKRUPTCY COUNSEL
### [Dkt. # _____]

Stephen W. Rosenblatt, after first being duly sworn, deposes and states as follows:

    1.     I am a Partner in the law firm of Butler Snow LLP ("***Butler Snow***"), which maintains its offices for the practice of law at, among other places, 1020 Highland Colony Parkway, Suite 1400, Ridgeland, Mississippi 39157.

    2.     I am admitted to practice law in the state of Mississippi, the United States District Courts for the Northern and Southern Districts of Mississippi and the United States Courts of Appeals for the Fifth Circuit. I submit this Affidavit in accordance with 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2014(a) and 2016 and in support of the *Application of Debtors to Employ Butler Snow LLP as Their Bankruptcy Counsel and Disclosure of Compensation* (the "***Application***") filed by the above-captioned Debtors and debtors-in-possession (the "***Debtors***" or "***Companies***").

---

[1] The chapter 11 cases of the following affiliated Debtors have been administratively consolidated pursuant to this Court's Order of October 29, 2014 [Dkt. #62]: Mississippi Phosphates Corporation ("***MPC***") Case No. 14-51667, Ammonia Tank Subsidiary, Inc. ("***ATS***") Case No. 14-51668 and Sulfuric Acid Tanks Subsidiary, Inc. ("***SATS***") Case No. 14-51671. These chapter 11 cases are sometimes referred to herein as the "***Bankruptcy Cases***."



3.      The Debtors have requested that Butler Snow be retained as their attorneys to provide such services as may become necessary during these Bankruptcy Cases. Butler Snow is willing to and has agreed to serve as their attorneys and to perform the services requested by the Debtors.

4.      As the Debtors' attorneys, Butler Snow expects to represent the Debtors generally in connection with the Bankruptcy Cases and to assist the Debtors in the performance of its duties in these cases, by rendering the legal services described in the Application.

5.      Butler Snow will apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Court's local rules, and any applicable orders of the Court. Butler Snow understands that no compensation will be paid to it by the Debtors for post-petition services or expenses, either from any retainer or otherwise, except pursuant to order of the Court.

6.      Butler Snow intends to seek compensation on an hourly basis for its services rendered, plus reimbursement of actual and necessary expenses in accordance with the firm's retention agreement. I anticipate that the persons likely to be performing the majority of the bankruptcy-related and non-bankruptcy legal services for the Debtors in these bankruptcy cases, and their respective 2014 hourly rates, are as follows:

**Bankruptcy**

| Name | Position | 2014 Hourly Rate |
|---|---|---|
| Stephen W. Rosenblatt | Partner | $440.00 |
| S. Ault Hootsell III | Partner | $360.00 |
| James E. Bailey III | Partner | $350.00 |
| Christopher R. Maddux | Partner | $330.00 |
| Paul S. Murphy | Partner | $280.00 |
| Adam Langley | Associate | $185.00 |
| J. Mitchell Carrington II | Associate | $175.00 |
| Thomas Hewitt | Associate | $175.00 |
| Velvet Johnson | Paralegal | $150.00 |

**Non-Bankruptcy**

| Name | Position | 2014 Hourly Rate |
|------|----------|------------------|
| Don B. Cannada | Partner | $485.00 |
| Michael Caples | Partner | $350.00 |
| Marcie Davant | Paralegal | $175.00 |

Other attorneys and paralegals of Butler Snow may from time to time serve the Debtors in connection with professional services as needed and requested at the rates typically applicable to comparable matters. These hourly rates are subject to annual adjustments in the normal course of the firm's business to reflect economic and other conditions, and these adjustments are usually made effective January 1 of each year. I anticipate the 2015 hourly rates for each attorney and paralegal to be higher than the rates listed above.

7.     The hourly rates set forth above are commensurate with the firm's customary hourly rates for work of this size, nature and complexity. These rates are set at a level designed to reflect the reasonable value of services rendered and to compensate Butler Snow fairly for the work of its attorneys and legal assistants and to cover fixed and routine non-reimbursable overhead expenses. The Firm proposes to charge the Debtors for certain disbursements and expenses incurred in the rendition of legal services. These reimbursable disbursements and expenses include, among other things, costs for certain telephone and facsimile charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

8.     The Firm proposes to bill at the rates set forth herein and will submit requests for compensation to the Court for approval.

9.      Neither I nor Butler Snow have shared or agreed to share with any other entity any compensation received or to be received for services rendered in connection with the Debtors, except as permitted by the provisions of the Bankruptcy Code and applicable rules.

10.     Butler Snow has represented Phosphate Holdings, Inc. ("*PHI*"), of which MPC is a wholly owned subsidiary, since PHI was formed as a Delaware corporation on December 17, 2004.  Since 2004, Butler Snow has represented PHI and the Debtors on a variety of matters.

11.     Prior to the Petition Date, Butler Snow represented PHI in the following matters:

    (a)      General corporate matters;

    (b)      Employment benefit plans and employment issues (jointly with MPC);

    (c)      Financing issues with respect to borrowings by PHI or guaranties by PHI of obligations of MPC;

    (d)      The Deepwater Horizon economic and property settlement business economic loss commercial tort claim; and

    (e)      Certain wrongful death and shareholder claims against PHI.

12.     With respect to matters affecting PHI in these Bankruptcy Cases, Butler Snow has been advised that PHI has retained as its counsel the law firm of Heller, Draper, Patrick, Horn & Dabney, LLC, and may retain additional counsel.  Butler Snow does not represent PHI with respect to the Bankruptcy Case.

13.     Further, to guard against any inadvertent conflict which may not exist at this time, but which may arise during the course of these bankruptcy cases, the Debtors may retain special conflicts counsel to represent it in the event some conflict may arise such that Butler Snow is not able to represent the Debtors in such matter.

14.     The only compensation Butler Snow received from the Debtors within one year before the date of the Petition Date for services rendered was a payment that Butler Snow received from MPC on October 23, 2014, in the amount of $355,151.00.  This payment was

applied as follows: (i) $30,055.00 for services rendered for pre-petition work from October 24-26, 2014 in connection with the preparation for the filing of these Bankruptcy Cases; (ii) $5,151.00 for the chapter 11 filing fees ($1,717.00 for the chapter 11 filing fee for each of the three Debtors); and (iii) $319,945.00 for a post-petition retainer. Butler Snow is presently holding its post-petition retainer of $319,945.00 in its trust account.

15.     Pursuant to that certain Management Services Agreement between the MPC and its parent, PHI, dated September 15, 2013, PHI was obligated to provide MPC with the "PHI Services" which included, among other things, "legal services." Butler Snow rendered legal services for both PHI and the Debtors in a number of different areas, and, as of the Petition Date, Butler Snow had received $1,331,440.13 in payments from PHI within the past year for those legal services and expenses rendered to PHI and MPC. Butler Snow also received an additional $66,545.69 from Liberty Surplus Insurance Corporation for matters in which Butler Snow was defending MPC under one or more insurance claims.

16.     As of the Petition Date, Butler Snow was not owed any monies by PHI for its representation of PHI and the Debtors since Butler Snow agreed to waive its claim for any unpaid amounts otherwise owed by PHI.

17.     Butler Snow ran a conflicts check on all creditors of the Debtors as reflected on the accounts payable ledger of the Debtors. This list of creditors was furnished to Butler Snow by the Chief Financial Officer of the Debtors. While Butler Snow represents several of these creditors and parties in interest on this list in matters completely unrelated to these Bankruptcy Cases, it had not represented any of them with respect to any matter involving the Debtors.[2]

---

[2] Butler Snow will provide to the United States Trustee, upon request, the results of its conflict search.

18.     Based on the foregoing, Butler Snow does not hold or represent an interest adverse to the estate and is disinterested.  Butler Snow does not have any connections with the Debtors, their creditors, any other party in interest or their respective attorneys and accountants, or with the office of the United States Trustee, or any person employed in the office of the United States Trustee: (i) which are prohibited; (ii) which would interfere with or hinder the performance of our duties herein, or (iii) which would prevent the employment of Butler Snow by the Debtors.

<u>**ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES**</u>

The following is provided in response to the request for additional information set forth in ¶ D.1. of the Appendix B Guidelines.

**Question:**     Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

*Response:*     Yes, these rates are lower than the rates we would normally charge for an engagement of this size and complexity.  We are charging the Debtors for these bankruptcy cases at our rates for normal, ordinary and routine matters.

**Question:**     Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

*Response:*     No.

**Question:**     If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference.

*Response:*     The billing rates for Butler Snow's pre-petition representation of the Debtors were the same as the rates set forth above that Butler Snow is charging for the representation of the Debtors in these bankruptcy cases. No adjustments were made to the billing rates of Butler Snow as a result of the filing of this chapter 11 bankruptcy case.

**Question:**   Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

*Response:*   Yes, the client has approved a 12-week budget and a staffing plan for these bankruptcy cases.

FURTHER AFFIANT SAYETH NAUGHT.

_____
STEPHEN W. ROSENBLATT

SWORN TO BEFORE ME, this the 12th day of November, 2014.

_____
Notary Public

My Commission Expires:

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 15929
VELVET G. JOHNSON
Commission Expires
Sept. 18, 2015
RANKIN COUNTY

ButlerSnow 24780980v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

In re:                                    )
                                          )
**MISSISSIPPI PHOSPHATES**                )
**CORPORATION, _et al._[1]**              )          **CASE NO. 14-51667-KMS**
                                          )          **Chapter 11**
                                          )
                                          )          **Jointly Administered**
         **Debtors**                      )
_____)

## DECLARATION OF STEPHEN S. RUSSO IN SUPPORT
## OF DEBTOR'S APPLICATION TO EMPLOY BUTLER SNOW LLP
## AS ITS BANKRUPTCY COUNSEL

Stephen S. Russo states as follows:

1.       I am the Chief Executive Officer of the Mississippi Phosphates Corporation (the "**_Company_**" or "**_MPC_**"), one of the Debtors herein, having served in that capacity since August 19, 2014. In that capacity, I oversee all of the Debtors' operations. I am also the President of Ammonia Tank Subsidiary, Inc. ("**_ATS_**") and Sulfuric Acid Tanks Subsidiary, Inc. ("**_SATS_**"), two subsidiaries of MPC.

2.       I have served over 35 years in a variety of businesses, including roles with Southerland, Inc. where I served as President, Chief Operating Officer and Chief Executive Officer, Restonic Mattress Corporation and Latex Foam Holdings, Inc. where I served as President & Chief Executive Officer, Consolidated Bedding, Inc. where I served as President and

---

[1] The chapter 11 cases of the following affiliated Debtors have been administratively consolidated for joint administration pursuant to that certain _Order Granting Motion of the Debtor for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b)_, dated October 29, 2014 [Dkt. #62]: Mississippi Phosphates Corporation ("_MPC_"), Case No. 14-51667, Ammonia Tank Subsidiary, Inc. ("_ATS_"), Case No. 14-51668 and Sulfuric Acid Tanks Subsidiary, Inc. ("_SATS_"), Case No. 14-51671. These chapter 11 cases are sometimes referred to herein as the "**_Bankruptcy Cases_**."


EXHIBIT
B

Chief Operating Officer, and Vernay Laboratories, Inc., where I served as and Senior Vice President of Operations.

    3.    I was brought to the Debtors because of my background in leadership of companies similar to MPC, and because of my experience as chief executive officer and operations management in the chemical industry and in turnaround environments.

    4.    I am familiar with the billing rates and material terms of the engagement of Butler Snow LLP ("*Butler Snow*") in its representation of the Debtors before the filing of these chapter 11 cases, as well as its proposed billing rates and the material terms of its representation of the Debtors in these chapter 11 bankruptcy cases. I am also generally familiar with the legal reputation of the Butler Snow law firm.

    5.    Although these bankruptcy cases could have been filed in Delaware because the Debtors are Delaware corporations, we chose to file it in the Southern District of Mississippi. One factor in our filing in the Southern District of Mississippi was that the Butler Snow's rates expenses are substantially less than the rates and expenses the Debtors would have had to pay if the bankruptcy cases had been filed in Delaware.

    6.    I have substantial prior experience in dealing with and managing lawyers and other professionals. The Debtors have established the following procedures to supervise Butler Snow's fees and expenses to manage costs:

        (a)    We have appointed two experienced bankruptcy lawyers (Stephen W. Rosenblatt and Christopher R. Maddux) to oversee the bankruptcy cases and to delegate work to others in the law firm based on the expertise and experience needed for the task at hand, as well as their availability and the cost to the Debtors;

(b)     We intend to communicate regularly with Butler Snow, the CRO and the Debtors' other officers and professionals through scheduled conference calls, meetings, and correspondence;

(c)     We plan to address on a regular basis with Butler Snow the needs of the Debtors, the priorities of operational issues and bankruptcy case administration issues, the time sensitivity of particular matters and the costs involved in particular undertakings;

(d)     We will coordinate work with management personnel, our CRO, and Butler Snow;

(e)     We sought to hire a law firm with broad experience and depth, both in bankruptcy and non-bankruptcy matters, and particularly one which had institutional knowledge of the Debtors and its operations;

(f)     We sought to hire a firm with a reputation for handling matters effectively and efficiently and which provides value for its clients; and

(g)     We sought to hire a firm that staffs matters appropriately for the task at hand.

7.     In the short time I have served as an officer of the Debtors, it is my view that Butler Snow fulfills the requirements of what we are seeking in our law firm for these bankruptcy cases.

8.     Further, it is my view that the Debtors have appropriate procedures in place with Butler Snow to manage the Debtors' legal fees and expenses in these bankruptcy cases.

FURTHER AFFIANT SAYETH NAUGHT.

_____

STEPHEN S. RUSSO

ButlerSnow 23135715

-3-