UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN THE MATTER OF:<br><br>MISSISSIPPI PHOSPHATES<br>CORPORATION, et al.<br><br>Debtors | Case No. 14-51667-KMS |

### AFFIDAVIT OF RICHARD J. SUMRALL

1. I am over the age of 21, possess personal knowledge of the matter contained herein, and am competent in all respects to attest to such matters.

2. I am a professional engineer registered, and in good standing, to practice in the State of Mississippi since 1997.

3. I am currently employed as an environmental engineer in the Mississippi Department of Environmental Quality ("MDEQ"). I have been working for MDEQ for the past 20 years. From 1993 to 1998, I was employed in the Air Toxics branch of the Air Division within the Office of Pollution Control ("OPC") of MDEQ. From 1998 to 2000, I was employed in the Energy and Transportation Branch of the Environmental Compliance and Enforcement Division ("ECED") within OPC of MDEQ. From 2000 to the present time, I have been employed as the Manager of the Chemical Branch of ECED within OPC of MDEQ. I received a Bachelor of Science degree in Chemical Engineering from Mississippi State University in 1993 and a Master of Science degree in Environmental Engineering from the University of Mississippi in 2004.

4. The Chemical Branch that I manage ensures compliance with environmental laws and regulations at chemical manufacturing plants, including the Mississippi Phosphates Corporation ("MPC") facility located in Pascagoula, Mississippi. I have visited and inspected the MPC

1



EXHIBIT A

facility, and have managed the visits and inspections of the MPC facility by my staff in the Chemical Branch during the thirteen plus years that I have managed the Chemical Branch. I have also participated in enforcement activities and orders related to the MPC facility.

    5.      MPC holds State of Mississippi Air Pollution Control Title V Construction and Operating Permit 1280-00044. This permit authorizes, and imposes conditions and limitations upon the air emissions from various processes engaged in the manufacture of Diammonium Phosphate ("DAP") Fertilizer, including Rock (Ore) Crushing, Sulfuric Acid Production, Phosphoric Acid Production, and Fertilizer Production.

    6.      MPC holds State of Mississippi Water Pollution Control (NPDES) Permit MS0003115. This is a National Pollutant Discharge Elimination System (NPDES) permit that authorizes and imposes conditions, requirements, and limitations upon the discharge of wastewater from various sources including non-contact cooling water and contaminated stormwater runoff. MPC also holds stormwater construction general permit coverage No. MSR105930 for the Phase II Gypsum storage area.

    7.      MPC holds State of Mississippi Hazardous Waste Management Regulations Generator ID MSD077909133. MPC is classified as a Large Quantity Generator of hazardous waste.

    8.      MPC holds State of Mississippi Solid Waste Management Permit SW0300040452. This permit authorizes and imposes conditions, requirements, and limitations upon the disposal of solid wastes (phosphogypsum) into a 263 acre onsite landfill. The East Phosphogypsum Stack is currently in operation. Financial Assurance for closure and post closure is required by MPC's Solid Waste Management Permit and Commission Agreed Order No. 4716-04. A copy of Commission Agreed Order No. 4716-04 is included as Exhibit 1. MPC maintains financial assurance in the form of a trust fund at Regions Bank to assure closure and

/or post-closure care of the landfill at its facility in Pascagoula, Mississippi. The sole beneficiary of the trust fund is MDEQ, and its purpose to assure payment for the costs of closure and/or post-closure care of the MPC facility covered by the Trust Agreement in the event that MPC fails to do so, whether as a result of bankruptcy or for any other reason. MPC's current estimate for the costs associated with closure and post-closure at the facility is approximately $80,000,000, and the actual costs could potentially exceed this amount. To fund the Trust, MPC agreed to make an initial deposit of $1,000. To fund the Trust, Debtor has been making quarterly payments of $200,000 into the fund since 2002. As of the end of September 2014, the Trust Fund value stood at approximately $10,900,000.

9.    MPC is employed in the bulk manufacture of Diammonium Phosphate (DAP) fertilizer. The facility is located on a deep-water port in Bayou Cassotte. Phosphorous containing ore (rock) is off loaded from barges onto the site. The rock is first ground to a fine powder and reacted with sulfuric acid to produce phosphoric acid. The phosphoric acid is then reacted with ammonia to produce the DAP fertilizer. The fertilizer is pelletized and shipped in bulk. Sulfuric acid utilized in the phosphoric acid plant is primarily produced onsite in one of two sulfuric acid plants. Elemental sulfur is piped to the facility, burned with oxygen and converted by catalyst into sulfuric acid. Air emissions from sulfuric acid production include sulfur dioxide and sulfuric acid mist. Sulfur dioxide is regulated as a criteria pollutant under 40 CFR Part 60 Subpart H, 11 Miss. Admin. Code Part 2, Chapter 6, and the facility's Title V Air Permit. Sulfuric acid mist is regulated for opacity. After significant issues with excess emissions from both sulfuric acid plants, MDEQ and MPC executed Commission Agreed Order No. 6350 13 imposing operational constraints upon each sulfuric acid plant. A copy of Commission Agreed Order No. 6350 13 is included as Exhibit B. Further, a history of acid spills and leaks from the plants has led to significant groundwater contamination in and around the sulfuric acid plants.

Groundwater assessment and remediation is being directed under an EPA 7003 (Imminent and Substantial Endangerment) Order issued in 2009 and amended in 2012, and should continue.

10. MPC holds State of Mississippi Water Quality (Clean Water Act Section 401) Certification Nos. WQC-1989046, WQC-1998122, and WQC-2007115, all of which regulate the dredging and managing of dredge spoils from MPC's turning basin in Bayou Cassotte. MPC also holds State of Mississippi Water Quality (Clean Water Act Section 401) Certification No. WQC-1996112 for construction of the gypsum storage facility, which required MPC to set aside 623 acres of wetlands in a conservation easement as wetlands mitigation. This 623 acre mitigation area of wetlands is located to the east and northeast of the MPC's facility, in the vicinity of Bangs Lake.

11. The production of phosphoric acid generates two waste streams of great environmental significance. First, the material left after the phosphorous has been removed from the ore contains many heavy metals and must be disposed of in an on site landfill. Furthermore, any precipitation which falls and contacts this material must be captured and managed onsite. Regulations prohibit discharge of treated wastewater except under certain catastrophic or chronic rainfall events. Second, wastewater generated from phosphoric acid production has a very low pH and high concentrations of phosphorous, ammonia and flourides. This wastewater is also prohibited from discharge and is managed onsite with contaminated stormwater runoff. In 2005, a levee within the stack system failed after receiving heavy rains over the previous two weeks. The spill resulted in thousands of fish and shellfish killed in Bayou Cassotte and Bangs Lake. Other releases from the facility have occurred during hurricanes and tropical storms in 2012 and 2013 also resulting in smaller fish kills. Today, with the existing acreage of the landfill, an inch of rain produces 11.5 million gallons of wastewater. This waste water is reduced only by

evaporation, consumption in the process, or by wastewater treatment (maximum 1.5 million gallons per day).

12. MPC also maintains the closed West Gypsum Stack. This stack ceased receiving phosphogypsum in 2002 and closure was completed in 2005. A seep of leachate outside the confining perimeter dike of the closed West Stack was discovered in 2011, and an amendment in 2012 to the EPA 7003 Order required assessment of the area affected by the seepage. The assessment and remediation required by the EPA 7003 Order should be fully implemented to address concerns related to seepage from the West Stack.

13. There are both short term and long term significant environmental concerns associated with the MPC facility. In the short term (next six months), the Wastewater Treatment Plant needs to continue to operate and the stacks need to be maintained. Maintenance of the East stack includes continued levee stabilization, inspection, and management of the millions of gallons of contaminated wastewater between the ponds within the levee/stack. The ponds are currently at a high level due to recent rainfall events, and the Wastewater treatment is required to reduce the amount, because additional rainfall events could result in a catastrophic release. If the plant stops processing rock, as is anticipated in the coming weeks, then no rainwater would be consumed by production and it would all collect in the ponds, which will make wastewater processing all the more critical to reduce this greater quantity of wastewater. Maintenance of the closed West Stack includes ensuring the cover remains intact and stable to prevent stormwater infiltration. Furthermore, this facility is subject to and must comply with 40 CFR Part 418 effluent guidelines which require facilities to maintain storage capacity for rainfall events. When this capacity is not available, the regulations prescribe conditions under which contaminated stormwater must/may be treated and discharged. Current water volumes at the facility are such that the facility *must* treat and discharge contaminated stormwater.

14. In the long term, it is essential that the MPC bankruptcy estate, MPC, and/or its successor in interest, and/or a purchaser of the assets of MPC through any sale properly close the East Stack waste landfill, meet post closure requirements including the continued operation of the Wastewater Treatment system, continue post closure maintenance of the West Stack, including treatment of any leachate/seepage, and remediate the contaminated groundwater to acceptable standards. By MPC's own estimates, the costs associated with closure and post-closure are in the range of $80,000,000. The Trust Fund assuring the payment of these costs currently contains only approximately $10,900,000. If MPC or its purchasers are not held responsible for closure, post-closure, and remediation, then the taxpayers will have to pay the remainder of these costs, which would be manifestly unjust. It is also essential that MPC, and/or its successor in interest, and/or a purchaser of the assets of MPC continue to make the required contributions to the Trust Fund in the amount of $200,000 each quarter as MPC has thus far complied with. In order to ensure that the taxpayers are not burdened with these costs in the long term, it is essential that the environmental responsibilities and liabilities associated with MPC's facility travel with the assets if assets are transferred to a purchaser/successor in the future.

FURTHER THE AFFIANT SAYETH NOT.

_____
RICHARD J. SUMRALL
Manager, Chemical Branch
Environmental Compliance and Enforcement Division
Office of Pollution Control
Mississippi Department of Environmental Quality

STATE OF MISSISSIPPI
COUNTY OF HINDS

STATE OF Mississippi

COUNTY OF Hinds

Personally appeared before me, the undersigned authority in and for the said county and state, on this  10th  day of  November , 2014, within my jurisdiction, the within named Richard J. Sumrall, who acknowledged that he executed the above and foregoing instrument.

_____ (NOTARY PUBLIC)

My commission expires:

_____

7