IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: ) | | |
| ) | | |
| MISSISSIPPI PHOSPHATES CORPORATION, et al. ) | | CASE NO. 14-51667-KMS |
| ) | | Chapter 11 |
| ) | | |
| Debtor. ) | | |
| _____ ) | | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION OF DEBTORS' MOTION FOR FINAL ORDER UNDER SECTIONS 105, 361, 362, 363, 364 AND 507 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 4001 AND 9014(I) AUTHORIZING THE DEBTORS TO INCUR POST-PETITION SENIOR SECURED SUPERPRIORITY INDEBTEDNESS; (ii) AUTHORIZING USE OF CASH COLLATERAL; (iii) GRANTING POST-PETITION PRIMING AND SENIOR PRIORITY SECURITY INTEREST AND SUPERPRIORITY CLAIMS; (iv) GRANTING ADEQUATE PROTECTION AND <u>MODIFYING THE AUTOMATIC STAY</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") files this objection (the "<u>Objection</u>") to the request of Mississippi Phosphates Corporation, *et al.*, the Debtors and debtors-in-possession (collectively the "<u>Debtors</u>"), for a final order on post-petition financing and use of cash collateral as set forth in that certain *Emergency Motion for Interim and Final Order Pursuant to Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the Debtors to Incur Post-Petition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Post-Petition Priming and Senior Priority Security Interest and Superpriority Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing on the Motion* (Dkt. # 14) (the "<u>DIP Financing Motion</u>"). In support hereof, the Committee respectfully states as follows:

22216903 v1

## BACKGROUND FACTS

1. On October 27, 2014 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Additionally, on the Petition Date Debtors filed the DIP Financing Motion seeking authority of the Court to incur post-petition secured financing, granting of certain post-petition priming and superpriority liens, use of cash collateral and modifications to the automatic stay.

3. On October 29, 2014, the Court entered orders jointly administering the Debtors' bankruptcy estates (Dkt. # 62). The Debtors continue in possession of their property and are operating their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4. On October 29, 2014, the Court entered an order granting the DIP Financing Motion on an interim basis (the "Interim Order") (Dkt. # 66) and scheduled a final hearing on the DIP Financing Motion for November 18, 2014 at 9:30 a.m. (the "Final Hearing").

5. On November 12, 2014, the United States Trustee appointed the Committee in this case pursuant to 11 U.S.C. § 1102 (Dkt. # 161).

6. On November 14, 2014, the Committee retained Burr & Forman, LLP as its counsel in this case.

7. On November 14, 2014, Debtors filed *Debtors' Omnibus Reply in Support of Debtors' Emergency Motion for Interim and Final Order Pursuant to Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002,*

*4001 and 9014 (I) Authorizing the Debtors to Incur Post-Petition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Post-Petition Priming and Senior Priority Security Interest and Superpriority Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Scheduling a Final Hearing on the Motion* (Dkt. # 187) (the "Omnibus Reply").

8. Simultaneously with the Omnibus Reply, Debtors filed the *Proposed Final Order Under Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the Debtors to Incur Post-Petition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Post-Petition Priming and Senior Priority Security Interest and Superpriority Claims; (IV) Granting Adequate Protection; and (V) Modifying the Automatic Stay.* (Dkt. # 188-1) (the "Proposed Order").

9. The Debtors have not filed their schedules or statements of financial affairs and have until December 10, 2014 to file these documents pursuant to the *Order Granting Motion to Extend Deadline to File Schedules or Provide Required Information* (Dkt. # 139).

**OBJECTIONS TO DIP MOTION/PROPOSED ORDER**

10. Set forth herein are some of the issues with the DIP Financing Motion that are of concern to the Committee. This is not an exhaustive list as counsel to the Committee is still in the process of reviewing the Agreement and other documents in support of the DIP Financing Motion. The Committee, through counsel, reserves the right to assert additional objections to the DIP Financing Motion at the Final Hearing.

11. The Proposed Order at ¶ 8 provides that the Debtors are authorized to use Cash Collateral[1] in accordance with the terms, conditions and limitations set forth in the Approved Budget.[2] The amount set forth in the Approved Budget to fund "Creditors Costs" is inadequate and will hinder the effectiveness of the Committee in representing the interest of unsecured creditors. The Approved Budget appears to only allocate $142,000 for "Creditor Costs" and fails to itemize what is included within those costs. The Committee believes that the facts in this case support its retention of a financial advisor or investment banker in order to ascertain the going concern value of the Debtors. This expense alone could cost in excess of the $142,000 allocated for "Creditor Costs." The Committee believes that given its anticipated expenses, the budget should allocate at least an amount equal to 50 percent of the costs allocated for "Debtor Costs – Legal and other Services" (or $872,750) for "Creditor Costs." Additionally, the Approved Budget fails to allocate any funds to support administrative claims under 11 U.S.C. § 503(b)(9) or critical vendor claims.

12. The Proposed Order at ¶ 10 grants the DIP Agent and DIP Lenders superpriority administrative expense claims and a perfected first-priority priming security interest "on all of the Debtors' property, assets, or interest in property or assets of any kind or nature whatsoever, real or personal, whether now owned or hereinafter existing, and wherever located and whether now existing or hereafter acquired or created." The proposed priming lien is overly broad by definition and should exclude from any lien to the DIP Lenders a lien on any commercial tort

---

[1] Terms not defined herein have the meaning assigned to them in the Proposed Order.

[2] There is a footnote in the Proposed Order indicating that the Approved Budget is attached as Exhibit "B," but no budget was attached to the Proposed Order. The only budget the Debtors have filed with the Court is the budget filed with the DIP Financing Motion at Exhibit C (Dkt. # 14-4). As such, the Committee assumes this is the Approved Budget and the numbers in that exhibit correctly reflect those amounts approved by the Pre-Petition Lenders.

claims or causes of actions that belong to the Debtors to the extent the DIP Lenders did not have a lien on these claims and actions prior to the Petition Date. Additionally, the superpriority administrative expense claims should not be inclusive of reclamation claims belonging to other creditors.

13. The Proposed Order at ¶ 12 provides that the DIP Agent and DIP Lenders shall submit Summary Invoices for fees and expenses to the U.S. Trustee, counsel for Debtors and counsel for the Committee and such parties and creditors in the case have ten (10) calendar days to object to the reasonableness of these invoices. While the Committee does not object to this procedure, this provision should specify that *any creditor or party in interest*, regardless of whether or not such entity receives actual notice of the Summary Invoices pursuant to this provision, retains the right to object to the Summary Invoices within the specified time-frame.

14. The Proposed Order at ¶ 17 proposes a "Carve-Out" for professional fees incurred by the Debtor and/or the Committee after a Termination Event but limits the professional fees which can be reimbursed to an aggregate amount not to exceed $200,000. While it is not entirely clear from the language of the Proposed Order what fees and expenses are included in the Carve-Out and when the professional fees will be paid on an interim basis, these facts are needed to determine if the allocated Carve-Out amount is sufficient and reasonable.

15. The Proposed Order at ¶¶ 17-18 seeks to limit (and in some cases completely restricts) the ability of the Committee to fund investigations and challenges to the Pre-Petition and DIP Lenders' collateral position. Additionally, ¶ 21 sets forth a stringent and unreasonable time-frame by which the Committee (or any other party of interest) has to investigate and challenge any pre-petition indebtedness or liens of the DIP Agent and/or Pre-Petition Lenders.

The Proposed Order provides a challenge period of 60 days from the Committee Appointment, however, a more reasonable deadline would be 60 days from the filing of the Debtors' schedules and statement of financial affairs, which is to occur on December 10, 2014. Additionally, the Committee should be allowed to seek an extension of the 60 day deadline through leave of the Court if additional time is needed to investigate or commence such challenges.

16.     The default provisions set forth in the Credit Agreement, and in particular the "Sale Milestones" set forth therein, are onerous and go far beyond the types of terms contained in an arm's length credit agreement. These provisions essentially allow the DIP Lenders to "drive the train" with regards to a potential sale of the Debtors' assets at the expense of all the other creditors. It provides the DIP Lenders unfettered control over the bankruptcy case, and confirms the DIP Lenders' right to credit bid while simultaneously making it impossible for any creditor to challenge the lien status and claims of the DIP Lenders and/or Pre-Petition Lenders. These provisions are overreaching and limit more profitable alternative funding sources that may be available to the Debtors.

17.     Lastly, various terms of the Proposed Order seek to limit this Court's authority to modify or approve an alternative exit strategy for the Debtors that have not been previously blessed by the DIP Lenders. These provisions seek to limit this Court's inherit authority to oversee the bankruptcy process and comply with the Bankruptcy Code. The Court, on its own or through objection of any party in interest, should not be bound to the overreaching terms set forth in the Proposed Order.

          Respectfully submitted,

By:   */s/ Kasee Sparks Heisterhagen*
      Kasee Sparks Heisterhagen (MB# 103521)
      Burr & Forman LLP
      RSA Tower
      11 North Water Street
      Suite 22200
      Mobile, Alabama 36602
      Telephone: (251) 344-5151
      Facsimile: (251) 344-9696
      ksparks@burr.com

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF System and served electronically on all parties enlisted to receive service electronically.

SO CERTIFIED, this 17th day of November, 2014.

      */s/ Kasee Sparks Heisterhagen*
      Kasee Sparks Heisterhagen