IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>**MISSISSIPPI PHOSPHATES<br>CORPORATION,** *et al.*[1]<br><br>**Debtors** | CASE NO. 14-51667-KMS<br>Chapter 11<br><br>Jointly Administered |

**AFFIDAVIT OF JONATHAN J. NASH IN SUPPORT OF THE APPLICATION
OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) TO (I) RETAIN
DELOITTE TRANSACTIONS AND BUSINESS ANALYTICS LLP TO PROVIDE THE
DEBTORS WITH A CHIEF RESTRUCTURING OFFICER, AND (II) DESIGNATE
JONATHAN J. NASH AS CHIEF RESTRUCTURING OFFICER
FOR THE DEBTORS *NUNC PRO TUNC* TO NOVEMBER 10, 2014**
[Dkt. # 205]

Jonathan J. Nash, after first being duly sworn, deposes and states as follows:

1. I am a Principal in the Corporate Restructuring Group ("***CRG***") of Deloitte Transactions and Business Analytics LLP ("***DTBA***" or the "***Firm***"), a financial advisory services firm which maintains several office locations within the United States. I submit this affidavit (the "***Affidavit***") in support of the *Application of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to (I) Retain Deloitte Transactions and Business Analytics LLP to Provide the Debtors with a Chief Restructuring Officer, and (II) Designate Jonathan J. Nash as Chief Restructuring Officer for the Debtors Nunc Pro Tunc to November 10, 2014* (the "***Application***")[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## QUALIFICATIONS

---

[1] The Chapter 11 cases of the following affiliated Debtors have been administratively consolidated pursuant to this Court's Order of October 29, 2014 [Dkt. # 62]: Mississippi Phosphates Corporation ("***MPC***") Case No. 14-51667, Ammonia Tank Subsidiary, Inc. ("***ATS***") Case No. 14-51668 and Sulfuric Acid Tanks Subsidiary, Inc. ("***SATS***") Case No. 14-51671.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2. The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of DTBA or its affiliates.

3. DTBA is an advisory firm with significant experience in the field of restructuring and providing financial and operational guidance to companies in distressed situations. DTBA's (or its predecessors') professionals have provided services to debtors, creditors, and other constituents in numerous chapter 11 cases, including, among others, American Airlines, Lehman Brothers Inc., MF Global Inc., GSI Group, Inc., Pilgrims Pride, High Voltage Engineering, Applied Graphics Technology, Fairchild, Inc., RBX Industries, TMP Directional Marketing, Brondage Bone, Inc., Pointblank, Inc., Beacon Power, InYx USA.

4. Additionally, I have substantial experience in providing restructuring and reorganization services both as a Restructuring Principal of DTBA and, previously, as a Managing Partner of CRG. I have extensive international experience having lived in China, and have managed companies in the Pacific Rim, the Middle East, China, and Europe. With more than 15 years of senior-management experience in a broad mix of companies, I have extensive experience providing strategic leadership in crisis situations, solving short-term cash related issues, and implementing financial planning, budgeting, and expense control. Some of these notable engagements include functioning as CRO or CEO for: TMP Directional Marketing (CRO in Ch. 11) and Western Non-Wovens (CEO in Ch. 11).

### SERVICES TO BE PROVIDED

5. Subject to this Court's approval, and pursuant to the engagement letter effective November 10, 2014, (a copy of which is attached to the Application as Exhibit "A" thereto) (the "*Engagement Letter*"), DTBA has agreed to provide the Debtors with a CRO, and I will serve in that capacity, assisted by other personnel of DTBA and its affiliates. Among other things, the

scope of the services DTBA will include providing assistance, as requested by the Debtors and agreed to by DTBA, for the following:[3]

    (a) Assess Client's current business plan and operations to identify areas of opportunity, including, but not limited to, potential profitability, ongoing cash requirements, profit center contributions and break-even levels;

    (b) Develop Client's financial and operational strategy and associated activities for the Board's input and approval;

    (c) Oversee the implementation of Client's Board-approved financial and operational strategy;

    (d) Coordinate and consult with Client's investment banker with respect to the chapter 11 sales process with respect to potential utilization of Client's assets by potential buyers;

    (e) Oversee the relationship with Client's lenders and other creditors;

    (f) Oversee the management of, and effort to enhance, Client's liquidity issues;

    (g) Meet with the Board on a periodic basis to discuss, among other things, engagement progress and financial and operational reports;

    (h) Oversee the implementation of Board-approved bankruptcy efforts of the Client, including being the Client's witness in the bankruptcy court on matters incident to the Client's bankruptcy cases; and

    (i) Perform the day to day functions customarily and reasonably associated with the position of a Chief Restructuring Officer in companies of similar size and complexity.

6.    Pursuant to the Engagement Letter, DTBA also shall provide such other services as may be agreed to by DTBA and Client in writing based on discussions with the Chief

---

[3] The summary of the terms of the Engagement Letter set forth in this Application is for convenience only. Except as set forth below, to the extent of any discrepancies between such summary and the terms of the Engagement Letter, the Engagement Letter shall govern.

Executive Officer ("*CEO*") of the Debtors as the engagement progresses and additional information is obtained during the course of the engagement.

7. Upon approval of its retention, DTBA will report to, and receive direction from, the CEO and the Board of Directors of the Debtors. Moreover, I will act under the direction, control, and guidance of the CEO and the Board of Directors of the Debtors as long as I remain as the CRO.

### DISINTERESTEDNESS AND ELIGIBILITY

8. To check upon and displace possible relationships with interested parties in these chapter 11 cases, DTBA has researched its client databases and performed reasonable due diligence to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with any of the Debtors, their significant creditors, professionals or other entities with significant relationships with the Debtors identified on a schedule provided to DTBA by the Debtors. Despite the efforts described above to identify and disclose DTBA's connections with the interested parties in these chapter 11 cases, because DTBA is a nationwide firm, DTBA is unable to state with certainty that every client relationship or other connection has been disclosed. DTBA and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that are known to us to be assisting the Debtors or various committees. Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, DTBA or its affiliates in matters unrelated to these chapter 11 cases. To the best of my knowledge, DTBA does not have conflicts or relationships that would impair or preclude its and my ability to serve the Debtors pursuant to the Engagement Letter. In this

regard, if DTBA discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

9. Furthermore, I am not aware of any connection between myself or the personnel of DTBA and its affiliates who are anticipated to assist me in the role of the Debtors' chief restructuring officer and the United States Bankruptcy Judge presiding in these chapter 11 cases and the United States Trustee's Office.

10. From its internal research, DTBA has determined that certain relationships should be disclosed, as follows:

    a. DTBA and/or its affiliates provides services in matters unrelated to the Debtors and these chapter 11 cases to certain of the Debtor's largest unsecured creditors and other potential parties-in-interest listed on **Exhibit 1** or their affiliates.

    b. Certain of the potential parties-in-interest listed on **Exhibit 1** and/or their affiliates, may be attest clients or affiliates of attest clients of Deloitte & Touche LLP ("***Deloitte & Touche***"), an affiliate of DTBA. DTBA and myself, as the Debtors' chief restructuring officer, will not participate in negotiations involving such potential parties in interest or otherwise undertake activities which would impair Deloitte & Touche's independence with respect thereto.

    c. Law firms identified on **Exhibit 1**, including Butler Snow LLP, the Debtors' Counsel have provided, currently provide and may in the future provide legal services to DTBA or its affiliates in matters unrelated to the Debtors and these chapter 11 cases, and/or DTBA and/or its affiliates have provided, currently provide, and may in the future provide services to such firms or their clients in matters unrelated to these chapter 11 cases.

    d. In the ordinary course of its business, DTBA or its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be potential parties-in-interest in this chapter 11 case. For example, from time to time, DTBA and/or its affiliates and one or more such entities and/or their affiliates may work on assignments for the same client, involving clients related by ownership or some other form of business relationship, and/or may otherwise engage each other directly for various purposes.

    e. Certain financial institutions or their respective affiliates (including Wells Fargo) listed on **Exhibit 1** (i) are lenders to an affiliate of DTBA (DTBA is a guarantor of such indebtedness) and/or (ii) have financed a portion of

the capital and/or capital loan requirements of various partners and principals, respectively, of DTBA or its affiliates.

f. Certain potential parties-in-interest in these chapter 11 cases may be a party to various litigation matters, unrelated to the Debtors and these chapter 11 cases, in which DTBA and/or one or more of its affiliates are also a party. In certain of these unrelated litigation matters, DTBA and/or its affiliate(s) may be co-defendants with, may represent clients related to or clients with a commonality of interest with various potential parties in interest in these chapter 11 cases. In other unrelated litigation matters, DTBA and/or its affiliates may be adverse to or may represent clients with an interest adverse to various potential parties in interest in these chapter 11 cases.

11. Deloitte & Touche, an affiliate of DTBA, has reorganized of some of its business units, including its financial advisory services, tax services, solutions, human capital and outsourcing units. This reorganization was intended to align the organizational structure more closely with the manner in which business is conducted. These services are now being performed by entities affiliated with Deloitte & Touche, including Deloitte Financial Advisory Services LLP, Deloitte Tax LLP and Deloitte Consulting LLP. Accordingly, some personnel who may assist me as the Debtors' chief restructuring officer in these chapter 11 cases may be personnel now employed by or associated with these affiliates of DTBA or their respective subsidiaries, including subsidiaries located outside of the United States.

12. DTBA has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Affidavit. DTBA has no agreement with any nonaffiliated entity to share any compensation paid by the Debtors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

[*Signature Page to Follow*]

THIS, the 18th day of November 2014.

_____
JONATHAN N. NASH

SWORN TO BEFORE ME, this the 18th day of November 2014.

_____
Anna K. Logan
Notary Public

My Commission Expires:

8-1-15

## EXHIBIT "1"

Potential Parties-in-Interest for whom Deloitte Transactions and Business Analytics LLP or its affiliates have provided or are currently providing services in matters unrelated to this chapter 11 case or with whom such entities have other relationships, including banking relationships.

A.R. Wilfley & Sons, Inc.
ADP Screening & Selection Services
ADP, LLC
AIG
Airgas South
Ametek Process Instruments
Andritz Separation Inc
Anixter, Inc.
Applied Industrial Technologies
AT&T Annex
Blue Cross & Blue Shield of Mississippi
BP Energy Co.
Brock Services Ltd.
Butler Snow
Cable One
Cameron
Carousel Industries
Caterpillar Financial Services Corporation
Centro Inc
Chartis Specialty Insurance Company
Chemtrade
Cintas #211
Climax Portable Machine Tools
Clyde Union Pumps
Crawford & Company
Daily Equipment Company
Dispensing Solution Inc.
Dresser-Rand Company
Dresser-Rand Coppus
Duponte Sulfur Prod.
E. I. du Pont de Nemours and Company
Elliott Company
Express Services Inc.
Fedex
Fintube
Fisher Scientific Co.
FL Dept Of Agriculture
Gardner Denver Water Jetting System
Giant Resource Recovery-Attala, Inc
Goodwin Procter

Great America Leasing Corp.
Haynes & Boones
Hertz Equipment And Pump Division
Hoerbiger Revak
Hub International Gulf South
Hudson Bay Fund LP
Ingersoll Rand
John Crane
John Deere Financial
Keene Turbomachinery Services
Koch Knight LLC
Layne Christensen Company
Lexington Insurance Company
Liberty Mutual Insurance Company
Lloyd's
Magotteaux
Mecs, Inc.
Medtox Diagnostics
Metso Minerals Industries Inc
Mid South Sales Co Inc
Midwesco
Millipore Corporation
Mississippi Phosphates Corporation
Mississippi Power Company
Mobile Mini
Motion Industries Inc
MSC Industrial Supply
NES Rentals
Netsuite, Inc.
Olin Corp
Oxbow Sulphur, Inc.
Perkin Elmer
Pine River Credit Relative Value Master Fund Ltd.
Regions Bank
Rsc Equipment Rental
Ryerson
Sandler O'Neil
Saybolt Lp
Schein, Henry
Setco
SGS Petroleum Service Corporation
Shook & Fletcher Insulation Co.
Signet Maritime Corporation
Southern Air Solutions
Southern Gas And Supply
Stericycle, Inc

Sulzer Pumps
Sunbelt Rentals
Trammo, Inc
Transammonia, Inc.
Travelers
Truckpro
Unimin Lime
United Rentals
United States Treasury
UPS
US Dept. Of Justice, Env. Enf. Sec.
Venable Llp
Verizon Wireless
Virtus Angels Fund, LP
Visa
Volvo Rents
VWR International
Waste Management - Emelle Treatment Facility
Wells Fargo
Wesco Distribution, Inc.
Williams Scotsman, Inc
Yokogawa

ButlerSnow 23429875v2