# Exhibit B

*Final for Execution*

## MPC ENVIRONMENTAL TRUST AGREEMENT

### BY AND AMONG

### MISSISSIPPI PHOSPHATES CORPORATION
### AMMONIA TANK SUBSIDIARY, INC. and SULFURIC ACID TANK SUBSIDIARY, INC., the Debtors,

### STUW LLC, as Administrative Agent for the Lenders,

### PROJECT NAVIGATOR, LTD.,
**not individually but solely in its representative capacity as Environmental Trustee,**

### AND

### THE UNITED STATES OF AMERICA, on behalf of the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
**and**
### the STATE of MISSISSIPPI, by and through the MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY
**as Beneficiaries**

**As of July 30, 2015**

# TABLE OF CONTENTS

RECITALS ...........................................................................................................1

ARTICLE I DEFINITIONS ...............................................................................2

    1.1 Definitions.................................................................................................2

    1.1.1 Administrative Costs............................................................................2

    1.1.2 Assigned Assets ...................................................................................2

    1.1.3 Additional Assets .................................................................................2

    1.1.4 Agreement.............................................................................................2

    1.1.5 Bankruptcy Cases.................................................................................2

    1.1.6 Bankruptcy Code ..................................................................................2

    1.1.7 Bankruptcy Court..................................................................................3

    1.1.8 Beneficiaries ........................................................................................3

    1.1.9 BP Proceeds .........................................................................................3

    1.1.10 CERCLA.............................................................................................3

    1.1.11 Closing Date.......................................................................................3

    1.1.12 Court ...................................................................................................3

    1.1.13 Debtors................................................................................................3

    1.1.14 Effective Date .....................................................................................3

    1.1.15 Emergency Environmental Action.....................................................3

    1.1.16 Environmental Actions .......................................................................3

    Governments

    1.1.17 Environmental Costs...........................................................................4

i

1.1.18 Environmental Law(s) ....................................................................4

1.1.19 Environmental Trust .....................................................................4

1.1.20 Environmental Trust Account.........................................................4

1.1.21 Environmental Trust Administrative Account...................................4

1.1.22 Environmental Trust Assets...........................................................4

1.1.23 Environmental Trust Environmental Cost Account...........................4

1.1.24 Environmental Trust Wind-Down Account.......................................4

1.1.25 Environmental Trust Parties .........................................................4

1.1.26 Environmental Trust Proceeds.......................................................4

1.1.2 Environmental Trust Fund Threshold...............................................4

1.1.28 Environmental Trustee.................................................................5

1.1.29 EPA ..........................................................................................5

1.1.30 Excess Proceeds.........................................................................5

1.1.31 Governments..............................................................................5
1.1.32 Gyp Stacks ...............................................................................5

1.1.33 Initial Funding...........................................................................5

1.1.34 Internal Revenue Code................................................................5

1.1.35 Lead Agencies............................................................................5

1.1.36 Liquidation Trust .......................................................................5

1.1.37 MDEQ.......................................................................................5

1.1.38 MPC Facility or Facility .............................................................5

1.1.39 Non-Lead Agency.......................................................................5

1.1.40 120-Day Budget.........................................................................5

1.1.41 Parties ......................................................................................................5

1.1.42 Person ......................................................................................................5

1.1.43 OSF Regulations ......................................................................................6

1.1.44 State ...........................................................................................................6

1.1.45 State Trust Fund .......................................................................................6

1.1.46 Stipulation and Settlement Agreement or Settlement Agreement ...............6

1.1.47 Trust All-Asset Sale ..................................................................................6

1.1.48 Trust Subaccount(s) ..................................................................................6

1.1.49 United States .............................................................................................6

ARTICLE II THE ENVIRONMENTAL TRUST ..............................................................6

    2.1     Creation of and Transfer of Assets to the Environmental
            Response Trust .......................................................................................6

    2.2     Transfer of Funding and Consideration to the Environmental
            Trustee; Creation of Trust Accounts ....................................................8

    2.3     Objectives and Purposes ........................................................................9

    2.4     Holder of Environmental Trust Assets .................................................10

    2.5     Management of Environmental Trust Assets ..........................................10

    2.6     Investment and Safekeeping of Environmental Trust Assets ..................10

    2.7     Access and Deed Restrictions ...............................................................11

    2.8     Accounting .............................................................................................12

    2.9     Termination ...........................................................................................12

    2.10    Property Disposition ..............................................................................12

ARTICLE III WORK AND DISTRIBUTIONS ...............................................................13

    3.1     Environmental Trust Accounts ..............................................................13

3.2     Payments by the Environmental Trust .......................................................14

3.2.1   Emergency Funding ..................................................................................14

3.2.2   Administrative Expenses of the Environmental Trust ...............................14

3.2.3   Remuneration for Environmental Trustee's Start-Up Fees and Expenses.15

3.2.4   Environmental Expenses of the Environmental Trust ...............................15

3.2.5   Reimbursement of Agencies and Performance of Environmental Action by Environmental Trust ..................................................................................16

3.3     Liens by Government.................................................................................16

3.4     Manner of Distributions............................................................................17

3.5     Unclaimed Distributions ...........................................................................17

ARTICLE IV THE ENVIRONMENTAL TRUSTEE ....................................................17

4.1     Appointment ..............................................................................................17

4.2     Generally....................................................................................................18

4.3     Powers........................................................................................................18

4.4     Other Professionals ...................................................................................19

4.5     Limitation of the Environmental Trustee's Authority ...............................19

4.6     Reliance by the Environmental Trust Parties.............................................19

4.7     Compensation of the Environmental Trustee ............................................20

4.8     Liability of Environmental Trust Parties ...................................................20

4.9     Exculpation and Indemnification...............................................................21

4.10    Termination, Replacement, and Removal of the Environmental Trustee..............................................................................22

4.10.1 Termination................................................................................................22

4.10.2 Replacement...............................................................................................23

iv

4.10.3 Removal ....................................................................................................23

4.11   Appointment of Successor Environmental Trustees...................................23

4.12   No Bond ....................................................................................................24

ARTICLE V BENEFICIARIES ........................................................................................24

5.1    Beneficiaries ..............................................................................................24

5.2    Identification of Beneficiaries....................................................................24

5.3    Non-Beneficiaries ......................................................................................26

5.4    Transfer of Beneficial Interests..................................................................26

ARTICLE VI REPORTING AND TAXES ........................................................................27

6.1    Reports .......................................................................................................27

6.2    Other ..........................................................................................................27

6.3    Reports in Support of Insurance Claims .....................................................27

6.4    Taxes..........................................................................................................27

ARTICLE VII MISCELLANEOUS PROVISIONS ..........................................................27

7.1    Amendments and Waivers ..........................................................................27

7.2    Tax Treatment............................................................................................28

7.3    Cooperation................................................................................................28

7.4    Situs of the Trust........................................................................................28

7.5    Severability ................................................................................................28

7.6    Sufficient Notice ........................................................................................29

7.7    Headings ....................................................................................................29

7.8    Actions Taken on Other Than Business Day ..............................................29

7.9    Consistency of Agreements and Construction.............................................29

v

7.10    Compliance with Laws ...............................................................................29

7.11    Preservation of Privilege...........................................................................29

7.12    No Recourse to Beneficiaries.....................................................................30

7.13    Status of Beneficiaries ..............................................................................30

7.14    Uniform Custodial Trust Act ....................................................................30

7.15    Prevailing Party .......................................................................................30

## MPC ENVIRONMENTAL TRUST AGREEMENT

This MPC Environmental Trust Agreement (this "Agreement") is made this 30th day of July 2015, by and among MISSISSIPPI PHOSPHATES CORPORATION("MPC"), AMMONIA TANK SUBSIDIARY, INC. and SULFURIC ACID TANK SUBSIDIARY, INC., as the Debtors in these Bankruptcy Cases (defined below) (collectively "Debtors"), STUW LLC, on behalf of and as administrative agent for the Lenders ("Administrative Agent"); PROJECT NAVIGATOR, LTD., a California Corporation not individually but solely in its representative capacity as Environmental Trustee (defined below) of the Environmental Trust established hereby (the "Environmental Trust"), THE UNITED STATES OF AMERICA (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the STATE OF MISSISSIPPI (the "State"), by and through the Mississippi Department of Environmental Quality ("MDEQ") (the United States and the State jointly "the Governments" and all parties collectively the "Parties").

## R E C I T A L S:

WHEREAS, the Debtors filed voluntary Chapter 11 petitions for relief under Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, (the "Bankruptcy Code") as then amended in the United States Bankruptcy Court for the Southern District of Mississippi, Southern Division (the), on October 27, 2014, which are jointly administered as *In re: Mississippi Phosphates Corporation et al.*, Case No. 14-51667 (the "Bankruptcy Cases");

WHEREAS, the Debtors, the United States, the State, by and through MDEQ, Phosphate Holdings, Inc. ("PHI"), the Administrative Agent, the Environmental Trustee and the Liquidation Trustee (defined below) have entered into that certain Settlement Agreement (the "Settlement Agreement") filed with the Bankruptcy Court on June 22, 2015;

WHEREAS, the Settlement Agreement provides for the creation of a Liquidation Trust and a separate Environmental Trust;

WHEREAS, the Settlement Agreement provides for the transfer of certain property of Debtors' estates (defined below and collectively the "Assigned Assets") and unsold property from the Liquidation Trust ("Additional Assets") to the Environmental Trust to be administered by the Environmental Trustee pursuant to this Agreement and the Settlement Agreement;

WHEREAS, the Environmental Trust is to be funded by means set forth in the Settlement Agreement;

WHEREAS, the Settlement Agreement provides in part that the State Financial Assurance Trust Fund created under the trust agreement, dated March 28, 2002, between MPC (Grantor) and Morgan Keegan Trust Company, FSB (Trustee) for the benefit of MDEQ and that is referenced in the Agreed Order No. 4716 04 dated March 1, 2004, between the Mississippi Commission on Environmental Quality and MPC (hereafter the "State Trust Fund") may be accessed by MDEQ to pay the costs associated with the operation and maintenance of the waste water treatment system incident to closure and post-closure care of the Phosphogypsum Stack No. 2 and associated ditches/ponds, in accordance with the terms of the trust agreement and as approved by MDEQ.

WHEREAS, in accordance with the Settlement Agreement, the Environmental Trust is established for the purposes of owning the Environmental Trust Assets (defined below), carrying out administrative and property management functions related to the Environmental Trust Assets, managing and/or funding implementation of future Environmental Actions (defined below) approved by the Lead Agencies as defined herein with respect to the Environmental Trust Assets at the MPC Facility (defined below), ultimately selling, transferring, or otherwise disposing or facilitating the reuse of all or part of the Environmental Trust Assets and, if possible, fulfilling other obligations as set forth in the Settlement Agreement;

WHEREAS, this Agreement and the Settlement Agreement govern the Environmental Trust, which is created pursuant to section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "QSF Regulations"); and

WHEREAS, the Environmental Trust shall be the exclusive holder of the Environmental Trust Assets described herein for purposes of 31 U.S.C. § 3713(b);

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements contained herein and in the Settlement Agreement the Parties hereby agree as follows:

## ARTICLE I.
## DEFINITIONS

1.1.    Definitions.

The following terms as used in this Agreement shall have the definitions given below:

1.1.1.  "Administrative Costs" means the fees, costs, and expenses incurred in connection with the administration of the Environmental Trust, including but not limited to real estate management, taxes, insurance, property marketing costs, maintenance costs and expenses of the Environmental Trust and its third-party professionals, but excluding expenses incurred in overseeing, managing, and performing Environmental Actions.

1.1.2.  "Assigned Assets" has the same meaning given to the Environmental Assigned Assets in Paragraph 6 of the Settlement Agreement and includes, but is not limited to, the Gyp Stacks.

1.1.3.  "Additional Assets" means those assets of the Liquidation Trust that remain unsold at the end of the Liquidation Period (as defined in the Settlement Agreement) and that are conveyed to the Environmental Trust in accordance with the Settlement Agreement.

1.1.4.  "Agreement" has the meaning as given in the preamble.

1.1.5.  "Bankruptcy Cases" has the meaning given in the recitals to this Agreement.

1.1.6.  "Bankruptcy Code" means title 11 of the United States Code, as then amended, and subject to any further amendments retroactively applicable to the Petition Date.

2

1.1.7. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Mississippi.

1.1.8. "Beneficiaries" means the United States (on behalf of EPA) and the State (by and through MDEQ), and shall also mean the Administrative Agent for the limited purpose of receiving a share in the proceeds of asset sales by the Environmental Trust and the residual of the Environmental Trust in accordance with the Settlement Agreement.

1.1.9. "BP Proceeds" has the meaning set forth in the Settlement Agreement.

1.1.10. "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as now in effect or hereafter amended.

1.1.11. "Closing Date" has the meaning set forth in the Settlement Agreement.

1.1.12. "Court" means the Bankruptcy Court or if the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of this Agreement, a United States District Court having competent jurisdiction with respect to such matter.

1.1.13. "Debtors" has the meaning given in the preamble.

1.1.14. "Effective Date" has the meaning set forth in the Settlement Agreement.

1.1.15. "Emergency Environmental Action" has the meaning set forth in Section 3.2.1 herein.

1.1.16. "Environmental Actions" means any and all environmental activities authorized or required under Environmental Law, or any and all environmental activities as directed by the Lead Agency, that occur after the Effective Date and that are related to the Environmental Trust Assets, including, but not limited to, response or remedial actions, removal actions, corrective action, closure or post-closure care (including, but not limited to, under RCRA Subtitle C), reclamation, investigations, studies, remediation, interim actions, final actions, emergency actions, water treatment, construction and implementation of engineered structures and controls, monitoring, repair and replacement of engineered structures, monitoring equipment and controls, operation and maintenance, implementation, operation and maintenance of institutional controls, coordination and integration of reuse and remedial efforts and initiatives (including, without limitation, multi-stakeholder communications), and, if required, long-term stewardship and perpetual custodial care activities. "Environmental Actions" also includes the above environmental activities relating to the migration of hazardous substances or contaminants emanating from the Environmental Trust Assets. For the avoidance of doubt, "Environmental Actions" shall not include natural resource assessment or restoration.

1.1.17. "Environmental Costs" means the costs and expenses of implementing Environmental Actions, including any expenses of environmental contractors incurred in overseeing, managing and performing Environmental Actions.

3

1.1.18. "Environmental Law(s)" means, whenever in effect, all federal, state and local statutes, regulations, rules, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including, without limitation, CERCLA, the Clean Water Act ("CWA"), 33 U.S.C. §1251 et seq., the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq., Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., and any state or local equivalents (including, but not limited to Miss. Code Ann. §§ 17-17-1, et seq. and 49-17-1, et seq.).

1.1.19. "Environmental Trust" means the trust established pursuant to this Agreement.

1.1.20. "Environmental Trust Account" has the meaning given in Section 2.2.4 herein.

1.1.21. "Environmental Trust Administrative Account" means the account established to provide funding for the Administrative Costs of the Environmental Trust that have been approved by the EPA and MDEQ and the pre-Closing Date Start-Up Fees and Expenses of the Environmental Trustee as provided in Section 2.2.4 herein.

1.1.22. "Environmental Trust Assets" means (a) those assets and properties, including the Assigned Assets, the Additional Assets, the right to distributions of funds from the Liquidation Trust, and the right to distributions of funds from the BP Proceeds, all as transferred to the Environmental Trust pursuant to the Settlement Agreement (see Paragraph 47 of the Settlement Agreement), and (b) such other assets acquired, earned, or held by the Environmental Trust from time to time pursuant to the Environmental Trust Agreement and Settlement Agreement, including Environmental Trust Proceeds (defined below).

1.1.23. "Environmental Trust Environmental Cost Account" has the meaning given in Section 2.2.3.

1.1.24. "Environmental Trust Wind-Down Account" has the meaning given in Section 2.2.4.

1.1.25. "Environmental Trust Parties" means, collectively, the Environmental Trust, the Environmental Trustee and its affiliates and their respective shareholders, officers, directors, employees, members, managers, partners, affiliated entities, consultants, agents, accountants, attorneys or other professionals or representatives engaged or employed by the Environmental Trust or Environmental Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Environmental Trust (for the avoidance of doubt, other than the Environmental Trust, the Environmental Trustee and affiliated entities, and their respective shareholders, officers, directors, and employees) shall not be Environmental Trust Parties.

1.1.26. "Environmental Trust Proceeds" means the net proceeds of any liquidation, sale, lease, recovery or other disposition of or other proceeds in respect of the Environmental Trust Assets.

1.1.27. "Environmental Trust Fund Threshold" has the meaning given in Section 2.5.1 herein.

4

1.1.28. "Environmental Trustee" means the trustee of the Environmental Trust.

1.1.29. "EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States.

1.1.30. "Excess Proceeds" has the meaning given in the Stipulation and Settlement Agreement.

1.1.31. "Governments" means the EPA and the MDEQ.

1.1.32. "Gyp Stacks" shall mean the phosphogypsum stack(s), the associated ditches and ponds for managing process waste water, the Gyp Stack Maintenance Equipment (as defined in the Settlement Agreement and identified on Attachment A hereto), and the Waste Water Treatment Plant at the Facility, together with all associated monitoring wells, pumps, piping, ditches, drainage, conveyances, water control structures, collection pools, cooling ponds, surge ponds, auxiliary holding ponds and regional holding ponds. The term Gyp Stacks also includes the adjacent parcels identified as "Borrow Areas" on Attachment 11 to MPC's Draft Closure Plan dated April 12, 2013, from which clean fill material may be excavated and used for closure.

1.1.33. "Initial Funding" has the meaning given in Section 2.2.1 herein.

1.1.34. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

1.1.35. "Lead Agencies" means (i) MDEQ for RCRA closure and post-closure requirements and (ii) EPA for all other matters. The Lead Agency may be changed as provided in Paragraph 43 of the Settlement Agreement.

1.1.36. "Liquidation Trust" means the Liquidation Trust established pursuant to the Settlement Agreement.

1.1.37. "MDEQ" means the Mississippi Department of Environmental Quality.

1.1.38. "MPC Facility" or "Facility" is the real property and improvements at the MPC mineral processing and fertilizer manufacturing facility located at 601 Industrial Road, Pascagoula, Mississippi and such other contiguous or adjacent property owned and/or operated by MPC.

1.1.39. "Non-Lead Agency" means the EPA for the RCRA closure and post-closure requirements and MDEQ for all other matters. The Non-Lead Agency may be changed as provided in Paragraph 43 of the Settlement Agreement.

1.1.40. "120-Day Budget" has the meaning given in Section 3.2.2, herein.

1.1.41. "Parties" means the Debtors, the Environmental Trustee, and the Beneficiaries.

1.1.42. "Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, charitable foundation,

5

unincorporated organization, government or any agency or political subdivision thereof or any other entity.

1.1.43. "QSF Regulations" has the meaning given in the recitals.

1.1.44. "State" means the State of Mississippi by and through MDEQ.

1.1.45. "State Trust Fund" has the meaning given in the recitals.

1.1.46. "Stipulation and Settlement Agreement" or "Settlement Agreement" has the meaning given in the recitals.

1.1.47. "Trust All-Asset Sale" shall mean a sale of all or substantially all of the Liquidation Trust's or Environmental Trust's real and tangible personal property, plant and equipment that expressly includes the Gyp Stacks.

1.1.48. "Trust Subaccount" and "Trust Subaccounts" have the meanings given in Section 2.2.5.

1.1.49. "United States" means the United States of America (on behalf of EPA) and all of its agencies, departments, and instrumentalities.

1.1.50. Any capitalized term not expressly defined herein shall have the meaning given in the Settlement Agreement.

## ARTICLE II.
## THE ENVIRONMENTAL TRUST

2.1.    Creation of and Transfer of Assets to the Environmental Trust

2.1.1. Pursuant to the Settlement Agreement, the Parties hereby establish, on behalf of the Beneficiaries named herein, and Debtors hereby agree to transfer, assign and deliver, by good title and other appropriate instruments, to the Environmental Trust, or to the Environmental Trustee, not individually but solely in its representative capacity as Environmental Trustee on behalf of the Beneficiaries, all of Debtors' respective rights, titles and interests in and to the Assigned Assets. Debtors shall retain no ownership or other residual interest whatsoever with respect to the Environmental Trust or the Environmental Trust Assets, except as provided in the Settlement Agreement. The transfer of ownership by Debtors of the Assigned Assets shall be a transfer of all of the Debtors' respective rights, titles and interests therein, and the transfer shall be free and clear of all claims, liens and interests against the Debtors, including, without limitation, liens for the payments of monetary claims asserted or that could have been asserted in the Bankruptcy Cases, but, shall remain subject to: (a) any existing in rem claims that do not secure payment of monetary claims (such as easements or deed restrictions) and (b) any unpaid claims for ad valorem taxes on property. The transfer shall be (i) subject to any rights of the Governments under the Settlement Agreement; and (ii) accomplished by transfer of good title, with all such conveyance documents to be agreed to in form and substance by the Debtors and the Environmental Trustee. The grantee for each such deed and personal property bill of sale shall be the Environmental Trust by and through Project Navigator Ltd., Trustee of the

6

Environmental Trust not individually but solely in its representative capacity as the Environmental Trustee. The Environmental Trust shall not be responsible for, and Debtors shall be responsible for, in accordance with the applicable bankruptcy law, any invoices, statements, and amounts relating to the Assigned Assets that relate to the period prior to the Closing Date even if such items are issued after the Closing Date or are not known of at the time of the Closing Date.

2.1.2.  Debtors, as applicable, will reasonably cooperate with the United States on behalf of EPA, the State on behalf of MDEQ and the Environmental Trustee to deliver to the title company (which will record or cause to be recorded in the appropriate real property records) the transfer documents as soon as reasonably practicable, but not to exceed 30 days after the Closing Date. Debtors further agree to cooperate with the Environmental Trustee in the event title needs to be further clarified in any deed or if the deed needs to be amended. Debtors shall pay all recording costs, transfer fees, title insurance premiums, and other costs incident to the title transfers for the Assigned Assets (including ad valorem property taxes and related redemption amounts accrued through tax year 2012 and excluding any unpaid ad valorem property taxes for tax years 2013 through 2015). No deeds are to be recorded until all payments by Debtors referenced in this Paragraph are made.

2.1.3.  The Environmental Trust shall be responsible for payment of all ad valorem property taxes for tax years 2013 and thereafter, including all redemption amounts, for the Assigned Assets, and such amounts are to be paid from funds made available to the Environmental Trust Administrative Account from the net income of the Trammo Terminal Operations in accordance with Section 2.2.2 for the duration of the Trammo lease. Debtors and Administrative Agent shall execute, or cause to be executed, and record, if necessary, all necessary releases of any liens or security interests held by any of the Debtors and Administrative Agent against the Assigned Assets. In connection with the Closing Date and after the Closing Date, each of the Parties (other than the Governments) will support the efforts of the Debtors, the Liquidation Trust and the Environmental Trust to obtain tax relief from the applicable taxing authorities for property taxes including abatement of property tax payments by the Debtors, the Liquidation Trust and the Environmental Trust.

2.1.4.  Upon transfer of the Assigned Assets, the Debtors shall have no interest in, or with respect to, any Environmental Trust Assets except as otherwise provided in the Settlement Agreement, and, except as otherwise provided herein, neither the Debtors, nor any successors thereto, shall have any further obligation to provide funding to the Environmental Trust.

2.1.5.  The Environmental Trust hereby accepts and agrees to hold the Environmental Trust Assets in the Environmental Trust for the benefit of the Beneficiaries for the purposes described in Section 2.3 below, subject to the terms of the Settlement Agreement, this Agreement, and any applicable orders of the Court.

2.1.6.  Upon the conclusion of the Liquidation Period, the Environmental Trust shall take ownership of any remaining Liquidation Trust Acquired Assets or any part thereof (the "Additional Assets") by special warranty deeds and bills of sale, in form and substance reasonably satisfactory to the Liquidation Trustee and Environmental Trustee. The Environmental Trust shall not be responsible for, and the Liquidation Trust shall be responsible

7

for, in accordance with the applicable bankruptcy law, the costs of transferring the Liquidation Trust Acquired Assets to the Environmental Trusts (including all recording costs, transfer fees, title insurance premiums, and other costs incident to the transfers) and any invoices, statements, and amounts relating to the Additional Assets that relate to the period prior to the transfer of the Additional Assets to the Environmental Trust, even if such items are issued after the transfer or are not known of at the time of the transfer.

2.2.    Transfer of Funding and Consideration to the Environmental Trustee; Creation of Trust Accounts

2.2.1.  Within two (2) business days of the Closing Date, upon the request of the Environmental Trustee, the Liquidation Trustee shall cause to be transferred to the Environmental Trust, at the direction of the Environmental Trustee, cash in the amount of up to $50,000.00 to fund the Environmental Trust Administrative Account (the "Initial Funding"), in accordance with the Settlement Agreement.

2.2.2.  The Environmental Trust Administrative Account shall be initially funded by the Initial Funding transferred to the Environmental Trust by the Liquidation Trustee as set forth above.  Thereafter, in accordance with the Settlement Agreement, the Environmental Trust Administrative Account shall be funded with proceeds from the net income of the Trammo Terminal Operations, as defined in the Settlement Agreement, in accordance with approved budgets and Administrative Agent's approval (which shall not be unreasonably withheld), and, as available, with up to 15% of other available amounts collected by the Environmental Trust. In the event of a shortfall in either the Environmental Trust Administrative Account or the Environmental Trust Environmental Cost Account, the Governments may approve in writing a transfer from one account to the other. In the event of a shortfall in the Environmental Trust Administrative Account, the Environmental Trustee may apply to the Liquidation Trustee for additional funding from the net income of the Trammo Terminal Operations which request is subject to the approval of the Liquidation Trustee, the Administrative Agent and the Governments which will not be unreasonably withheld.

2.2.3.  The Environmental Trust Environmental Cost Account shall be funded by proceeds from the sales of assets by the Liquidation Trust, by the BP Proceeds, and, upon MDEQ approval, periodic transfers of funds for closure and post-closure care from the State Trust Fund, all as provided in the Settlement Agreement.

2.2.4.  Upon receipt of the Assigned Assets and the Initial Funding the Environmental Trustee shall create an Environmental Trust Administrative Account within the Environmental Trust (the "Environmental Trust Administrative Account"). The purpose of the Environmental Trust Administrative Account shall be to provide funding for the Administrative Costs of the Environmental Trust that have been approved by the EPA and MDEQ and the pre-Closing Date Start-Up Fees and Expenses of the Environmental Trustee (Section 3.2.3). The Environmental Trustee shall create within the Environmental Trust Administrative Account a segregated Environmental Trust wind-down reserve account, in an amount of not more than $50,000.00, to fund the wind-down costs of the Environmental Trust (the "Environmental Trust Wind-Down Account"). The Environmental Trustee shall also create a segregated Environmental Trust Environmental Cost Account within the Environmental Trust ("Environmental Trust

8

Environmental Cost Account"). The purpose of the Environmental Trust Environmental Cost Account shall be to provide funding for Environmental Actions and Costs with respect to the Environmental Trust Assets. The separate accounts are referred to in this Agreement individually as an "Environmental Trust Account" and collectively as the "Environmental Trust Accounts." Subject to Section 2.6, the income and gains from any investment of the Environmental Trust Assets shall be allocated, paid and credited to such Environmental Trust Account in accordance with this 2.2 and the Settlement Agreement.

2.2.5. Each Environmental Trust Account may be divided into such number of trust subaccounts dedicated for specific uses as may be deemed necessary in the sole discretion of the Environmental Trustee (each, a "Trust Subaccount") to comply with the terms of, and implement, the Settlement Agreement and this Agreement.

2.2.6. For all federal income tax purposes, the Environmental Trustee and Debtors shall treat the transfer of the Acquired Assets by Debtors to the Environmental Trust (and as applicable, the transfer of Additional Assets from the Liquidation Trust to the Environmental Trust) as a transfer to a qualified settlement fund pursuant to section 468B of the Internal Revenue Code and the QSF Regulations. The Environmental Trustee shall at all times seek to have the Environmental Trust treated as a "qualified settlement fund" as that term is defined in the QSF Regulations. The Court shall retain continuing jurisdiction over the Environmental Trust and Environmental Trust Accounts sufficient to satisfy the requirements of the QSF Regulations. The Environmental Trustee shall cause any taxes imposed on the earnings of the Environmental Trust to be paid out of such earnings and shall comply with all tax reporting and withholding requirements imposed on the Environmental Trust under applicable tax laws. Taxes imposed upon earnings accruing to the Environmental Trust Environmental Cost Account shall be paid from the Environmental Trust Environmental Cost Account. The Environmental Trustee shall be the "administrator" of the Environmental Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).

2.3.    Objectives and Purposes

2.3.1. The purpose of the Environmental Trust shall be to: (i) own the Environmental Trust Assets; (ii) carry out administrative and property management functions related to the Environmental Trust Assets; (iii) manage and/or fund implementation of future Environmental Actions approved by the Lead Agencies with respect to the Environmental Trust Assets; (iv) fulfill other obligations as set forth in the Settlement Agreement; and (v) ultimately sell, transfer, or otherwise dispose or facilitate the reuse of all or part of the Environmental Trust Assets, if possible. The Environmental Trustee may, upon approval of the EPA and MDEQ, conduct trade or business for the sole purpose of increasing assets to be utilized for Environmental Actions, but shall not engage in any other trade or business.

2.3.2. The Bankruptcy Court shall retain continuing jurisdiction over the Environmental Trust. The Environmental Trust satisfies all the requirements of, and is intended by the Parties to be classified as, a qualified settlement fund pursuant to the QSF Regulations.

9

2.4.    Holder of Environmental Trust Assets

The Environmental Trust shall be the exclusive holder of the Environmental Trust Assets and Environmental Trust Accounts described herein for purposes of 31 U.S.C. § 3713(b).

2.5.    Management of Environmental Trust Assets

Consistent with this Agreement and the Settlement Agreement, the Environmental Trustee shall use the Environmental Trust Environmental Cost Account to fund Environmental Actions approved by the Lead Agency pursuant to applicable environmental law with respect to the Environmental Trust Assets. The Environmental Trustee shall use the Environmental Trust Administrative Account to fund the Administrative Costs of the Environmental Trust that have been approved by the Governments. In the event of a shortfall in either the Environmental Trust Administrative Account or the Environmental Trust Environmental Cost Account, the Governments may approve in writing a transfer from one account to the other.

2.5.1.  If the Environmental Trustee determines, and the Lead and Non-Lead Agency agree in writing at any time after the Closing Date that, based on, among other things, new information about the estimated cost of Environmental Actions or the assumption of liability by a buyer or other party for Environmental Actions, the Trust Accounts have adequate funding to perform the Environmental Actions required by applicable law and to pay the reasonable administrative costs to accomplish the objectives of the Environmental Trust and there is no demonstrated need for additional funding and no reimbursements to be made to the Governments ("Environmental Trust Funding Threshold"), then in such event, the Governments may instruct jointly in writing that such funding in excess of the Environmental Trust Funding Threshold be transferred in accordance with the Settlement Agreement.

2.5.2.  After the Lead and Non-Lead Agencies have confirmed to the Environmental Trustee that all final actions have been completed, and all final costs have been disbursed for Environmental Actions and wind down of the Environmental Trust, any funds remaining in the Environmental Trust Environmental Cost Account or Environmental Trust Administrative Account shall be transferred in accordance with the Settlement Agreement.

2.5.3.  Annually, beginning with the first year after the Closing Date, the Environmental Trustee shall provide the Governments with an update of anticipated future Administrative Costs of the Environmental Trust.

2.6.    Investment and Safekeeping of Environmental Trust Assets

2.6.1.  The Environmental Trust Assets, until sold as provided herein and in the Settlement Agreement, shall be held in trust and segregated. All interest, dividends, and other revenue earned in an Environmental Trust Account shall be retained in the applicable Environmental Trust Account and used only for the same purposes as the principal in that account as provided in this Agreement and the Settlement Agreement, subject to any transfers approved by the Governments, in accordance with the terms of this Agreement and the Settlement Agreement. The Environmental Trustee shall be under no liability for interest or producing income on any moneys received by the Environmental Trust hereunder and held for distribution or payment as provided in this Agreement, except as such interest shall actually be

10

received by the Environmental Trust. The right and power of the Environmental Trust to invest the Environmental Trust Assets, Environmental Trust Proceeds, or any income earned by the Environmental Trust, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with ARTICLE III hereof) in demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured, or Treasury bills. The scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional types of investments as permitted by the United States and the State, and these additional types of investments shall be specifically detailed in writing including a directive that the Environmental Trust is authorized to make, in each case, such type of investments.

2.6.2. The Environmental Trustee is expressly prohibited from holding any or all of the Environmental Trust Assets in a common, commingled or collective trust fund and from holding any or all of the Environmental Trust Assets in a common, commingled or collective trust fund with the assets of any other entity. However, the funds provided for administrative expenses can be held in one account.

2.6.3. Nothing in this Section shall be construed as authorizing the Environmental Trustee to cause the Environmental Trust to carry on any business other than as specified herein or to divide the gains therefrom, including without limitation, the business of an investment company, or a company "controlled" by an "investment company," required to register as such under the Investment Company Act of 1940, as amended.

2.6.4. The Environmental Trust Parties shall not incur any liability for following any written direction or order to act (or to refrain to act) from any Beneficiary so long as such written direction is not manifestly inconsistent with this Agreement and the Settlement Agreement.

2.7.    Access and Deed Restrictions

The Environmental Trustee shall provide the Lead Agency and Non-Lead Agency and their respective representatives and contractors access to all portions of the Environmental Trust Assets that the Environmental Trust owns at all reasonable times for the purposes of conducting Environmental Actions. The Environmental Trustee shall implement any institutional controls or deed restrictions requested by the Lead Agency and Non-Lead Agency with respect to the Environmental Trust Assets. The Environmental Trustee shall execute and record with the appropriate recorder's office any easements or deed restrictions requested in writing by the Lead Agency and Non-Lead Agency for restrictions on use of the Environmental Trust Assets in order to protect public health, welfare or safety or the environment or ensure non-interference with any action provided for in this Agreement. Any easements or deed restrictions of record as to the Environmental Trust Assets in effect prior to the Effective Date of the Settlement Agreement shall survive the Settlement Agreement. The Environmental Trustee shall abide by the terms of any institutional controls or deed restrictions in place or of record as to the Environmental Trust Assets; provided, however, nothing herein shall create any personal liability for any Environmental Trust Party due to the Environmental Trustee's failure to abide by any institutional controls of which the Environmental Trustee is unaware.

11

2.8.  Accounting

The Environmental Trustee shall maintain proper books, records, and accounts relating to all transactions pertaining to the Environmental Trust, and the assets and liabilities of the Environmental Trust in such detail and for such period of time as may be necessary to enable the Environmental Trustee to make full and proper accounting in respect thereof in accordance with ARTICLE VI below and to comply with applicable provisions of law and good accounting practices.   Except as otherwise provided herein or by the Settlement Agreement, the Environmental Trustee shall not be required to file any accounting or seek approval of the Court with respect to the administration of the Environmental Trust, or as a condition for making any payment or distribution out of the Environmental Trust Assets.  Beneficiaries shall have the right upon fourteen (14) days' prior written notice delivered to the Environmental Trustee to inspect such books and records at reasonable times during business hours.

2.9.  Termination

Consistent with the terms of the Settlement Agreement, the Environmental Trustee shall not unduly prolong the duration of the Environmental Trust and shall at all times endeavor to complete the Environmental Trust's objectives and purposes, resolve, settle, or otherwise dispose of all claims against Environmental Trust Assets to effect the distribution of any remaining Environmental Trust Assets and other receipts relating thereto to the Beneficiaries and the others who receive distributions hereunder in accordance with the terms hereof and the Settlement Agreement, and to terminate the Environmental Trust as soon as practicable consistent with this Agreement and the Settlement Agreement.

2.10.  Property Disposition

2.10.1. The Environmental Trustee may, at any time, seek the approval of the Lead Agency and Non-Lead Agency for the sale or lease or other disposition of all or part of the Environmental Trust Assets.  Subject to the approval of the Lead Agency and Non-Lead Agency, and to the terms of the Settlement Agreement, the Environmental Trustee may propose a sale, lease, or disposition of the Environmental Trust Assets that includes funding from the respective Environmental Trust Environmental Cost Account and/or the Environmental Trust Administrative Account, provided that the net effect of any proposed sale, lease or disposition is to lessen the total financial obligations and liabilities that would otherwise be incurred in the absence of any such sale, lease, or disposition.

2.10.2. In the event of any approved sale or lease or other disposition of Environmental Trust Assets in accordance with the Settlement Agreement:

(a)     From the gross proceeds, the Environmental Trustee shall return to the Environmental Trust Administrative Account any amount expended from the Environmental Trust Administrative Account in connection with the sale, lease or other disposition.

(b)     Once the expenses in subparagraph (a) have been returned to the Environmental Trust Administrative Account, the Environmental Trustee shall pay the remaining proceeds ("Net Proceeds") in accordance with the Settlement Agreement.

That portion of proceeds designated for payment to the Environmental Trust shall be distributed to the Environmental Trust Environmental Cost Account.

2.10.3. Any proposed sale of Additional Assets for an amount of $500,000.00 or more, is subject to prior approval in writing by the Administrative Agent and the Governments in accordance with the Settlement Agreement. The marketing and sale of Additional Assets is subject to the provisions of Paragraphs 48-49 of the Settlement Agreement.

2.10.4. The Parties agree that, to the extent permitted by applicable law, the rule against perpetuities does not apply to the Environmental Trust, but to the extent that any rule against perpetuities or a rule governing or limiting vesting, accumulations, the suspension of alienation, or the like shall be deemed applicable, the Environmental Trust shall automatically terminate on the date 90 days after the date on which 21 years less 91 days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, and provided further that if the Environmental Trust owns real property located in any jurisdiction that sets a maximum duration for interests in real property located in such jurisdiction held in trust under a rule against perpetuities or a rule governing or limiting vesting, accumulations, the suspension of alienation, or the like, that for the Environmental Trust is shorter than the date 90 days after the date on which 21 years less 91 days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, the Environmental Trust shall automatically terminate as to such Property upon the expiration of the maximum period authorized pursuant to the laws of such jurisdiction. If the Environmental Trust is terminated in whole or in part pursuant to this Subsection, title to the relevant Property or Properties as to which the Environmental Trust is terminated shall be transferred outright and free of trust to or at the direction of the United States in consultation with any of the States in which the relevant Property or Properties are located, provided, however, that the disposition of all relevant Property or Properties shall be governed by applicable state and federal law, or by agreement of the Environmental Trustee, the United States, and the applicable State, or by order of the Court, and further provided that neither the United States or any State will be required to accept an ownership interest in the relevant Property or Properties as to which the Environmental Trust is terminated.

## ARTICLE III.
## WORK AND DISTRIBUTIONS

3.1.   Environmental Trust Accounts

The Environmental Trustee shall establish, maintain and hold Environmental Trust Accounts consistent with the Settlement Agreement and Section 2.2 of this Agreement, to administer the Environmental Trust Assets and distributions therefrom. The Environmental Trustee shall also maintain a dedicated Environmental Trust Administrative Account for administrative funds, which shall be used solely to pay the costs of administering the Environmental Trust as set forth herein.

3.2.    Payments by the Environmental Trust

The Environmental Trustee shall provide the Lead Agency and Non-Lead Agency with balance statements and proposed budgets as described in Sections 3.2.2 and 3.2.4 of this Agreement. The Environmental Trustee shall not pay any expense that has not been provided for in the applicable budget or approved by the Lead Agency or, in the case of costs incurred by the Environmental Trust Administrative Account, by the Governments. The initial Lead Agency shall be MDEQ for approval of trust budgets related to RCRA closure and post-closure actions and shall be EPA for approval of trust budgets related to all other matters. The Lead Agency may change by agreement of the Governments, and the Governments will notify the Environmental Trustee of such change in writing.   The Governments may notify the Environmental Trustee that the Governments have divided up Lead Agency responsibility for different portions of Environmental Action or budgets.

3.2.1.    Emergency Funding

In the event of an emergency with respect to the Environmental Trust Assets requiring the performance of an Environmental Action within hours or days of the Environmental Trustee first receiving notice of the emergency, if the emergency does not permit sufficient time to amend the approved budget, the Environmental Trustee may utilize funding from the Environmental Trust Environmental Cost Account to undertake Environmental Actions necessary to respond to the emergency (the "Emergency Environmental Action").   If an Emergency Environmental Action is performed by the Lead Agency or Non-Lead Agency, the Environmental Trustee may reimburse the Lead Agency (or the Non-Lead Agency, if the Lead Agency concurs in writing) for such Emergency Environmental Action from the Environmental Trust Environmental Cost Account.   Nothing in this subsection shall preclude the payment or reimbursement of the Emergency Environmental Action through the annual budget or budget revision process.

3.2.2.    Administrative Expenses of the Environmental Trust

Prior to the Closing Date, the Environmental Trustee shall submit to the Governments for approval a budget for the first 120 days following the Closing Date (a "120-Day Budget") for the Environmental Trust Administrative Account. The Administrative Agent shall be served with a copy of the 120-Day Budget, simultaneously with the Governments.   The 120-Day Budget for the Environmental Trust Administrative Account shall be deemed approved upon approval by the Lead Agency after consultation with the Non-Lead Agency. If disapproved, such budget shall be revised and resubmitted as expeditiously as possible. No expenses may be incurred or paid from the Environmental Trust Administrative Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget, and the Environmental Trustee shall have authority to deviate not more than ten (10) percent (%) from any line item unless the Lead Agency, in consultation with the Non-Lead Agency, approves such expenses in writing or unless a revised 120-Day Budget is approved consistent with this Section.   Within 90 days following the Closing Date in the first year, and thereafter at least 60 days before January 1 of each year for the following year, the Environmental Trustee shall provide to the Governments and the Administrative Agent a statement showing the balance of the accounts and a proposed Environmental Trust Administrative Account budget for the coming year. The Lead Agency

14

shall have the authority to approve or disapprove the proposed budget after consultation with the Non-Lead Agency. If disapproved, such budget shall be revised and resubmitted as expeditiously as possible. No administrative expenses may be incurred or paid by the Environmental Trustee that are inconsistent with the approved budget except in the event of an Environmental Emergency, and the Environmental Trustee shall have authority to deviate not more than ten (10) percent (%) from any line item, unless the Lead Agency, in consultation with the Non-Lead Agency, approves a revised budget or a revised line item for an approved budget, provided, however, that the Environmental Trustee may incur or pay ongoing or recurring expenses approved in the prior year's budget that occur between the time a proposed annual budget is submitted and the time it is approved. Each annual budget shall include a future year forecast of administrative expenditures, with annual details for at least the next three years (or such longer period as the Governments shall reasonably request). The Environmental Trust shall regularly, but at least annually, and otherwise upon the reasonable request of the Governments, provide documentation to the Governments to substantiate compliance with the applicable approved budget and application of Environmental Trust Assets consistent with the terms of this Agreement and the Stipulation and Settlement Agreement. The approved budget shall be funded by the transfer of the approved amount from the Environmental Trust Administrative Account.

### 3.2.3.   Remuneration for Environmental Trustee's Start-Up Fees and Expenses

The Environmental Trustee shall be entitled to remuneration from the Environmental Trust Administrative Account of up to $50,000.00 for its reasonable fees and expenses in connection with the formation of the Environmental Trust, preparation for taking Environmental Actions, and preparation of the first 120-Day Budget, prior to the Closing Date. Within 60 days of the Closing Date, the Environmental Trustee will submit detailed invoices reflecting its pre-Closing Date fees and expenses for approval by the Governments.

### 3.2.4.   Environmental Expenses of the Environmental Trust

Prior to the Closing Date, the Environmental Trustee shall submit to the Governments for approval a 120-Day Budget for the Environmental Trust Environmental Cost Account. The Administrative Agent shall be served with a copy of the 120-Day Budget, simultaneously with the Governments. The Lead Agency shall have the authority to approve or disapprove the proposed 120-Day Budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency. No expenses may be incurred or paid from the Environmental Trust Environmental Cost Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget, and the Environmental Trustee shall have authority to deviate not more than ten (10) percent (%) from any line item, except as provided for Emergency Funding in Section 3.2.1, or unless a revised 120-Day Budget is approved consistent with this Section.

Within 90 days following the Closing Date in the first year, and thereafter at least 60 days before January 1 of each year for the following year, the Environmental Trustee shall provide the Governments and the Administrative Agent with balance statements and annual budgets of projected expenditures from the Environmental Trust Environmental Cost Account. The first budget for the remainder of the current calendar year shall be submitted within 90 days following the Closing Date and thereafter, annual budgets shall be submitted at least 60 days before each

15

January 1 during the term of the Environmental Trust. The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency. If disapproved, a budget shall be revised and resubmitted as expeditiously as possible. No expenses may be incurred or paid by the Environmental Trustee that are inconsistent with an approved budget, and the Environmental Trustee shall have authority to deviate not more than ten (10) percent (%) from any line item, except as provided in Section 3.2.1, or unless a revised budget is approved consistent with this Section; provided, however, that the Environmental Trustee may incur or pay ongoing or recurring expenses approved in the prior year's budget that occur between the time a proposed annual budget is submitted and the time it is approved.

     3.2.5. <u>Reimbursement of Agencies and Performance of Environmental Action by Environmental Trust</u>

     The Environmental Trustee shall pay funds from the Environmental Trust Environmental Cost Account to the applicable Lead Agency making a written request for funds for reimbursement within 30 days following such request. Such written request shall: (i) be in accordance with the approved budget set forth in Section 3.2.4 above, and (ii) specify what the funds were used for and shall certify that they were used only for Environmental Actions with respect to the Environmental Trust Assets. The Environmental Trustee shall also pay funds from the Environmental Trust Environmental Cost Account to a Non-Lead Agency making a written request for funds within 30 days following such request in the event the Lead Agency has requested the assistance of the Non-Lead Agency. Such written request shall: (i) be in accordance with the approved budget set forth in Section 3.2.4 above, and (ii) specify what the funds were used for and shall certify that they were used only for Environmental Actions performed after the Closing Date by the Non-Lead Agency pursuant to a request for assistance by the Lead Agency.

     In the case of requests by the Lead Agency to the Environmental Trustee to use the funds from that Environmental Trust Environmental Cost Account to perform Environmental Actions, the Environmental Trustee shall utilize the funds from the Environmental Trust Environmental Cost Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency pursuant to Section 3.2.4 above. The Environmental Trustee shall be responsible for the review and selection of any contractors sought to perform work; provided, however, that the Environmental Trustee shall provide the Lead Agency with its intended selection at least 30 days before the contract is awarded, and the Lead Agency may object or otherwise deny the award of any contract for any reasonable reason. The Environmental Trustee shall require liability insurance from each contractor hired to perform work.

3.3. <u>Liens by Government</u>

     In the event of a Trust All-Asset Sale, the Administrative Agent shall receive any proceeds attributable to the Gyp Stacks until it has received full payment of the Adequate Protection Claim (as defined in the Settlement Agreement). Subject only to the payment of the Adequate Protection Claim to the Administrative Agent in the event of a sale of the Gyp Stacks, the Governments shall have a lien on all distributions or allocations of funds to the Environmental Trust for any amounts expended by the Governments to conduct Environmental

Actions on any parcel or property owned by the Environmental Trust. Subject only to the payment of the Adequate Protection Claim to the Administrative Agent, the Environmental Trust and Administrative Agent shall have a lien consistent with their allocations under the Settlement Agreement on all assets of the Environmental Trust and Liquidation Trust. Subject only to the payment of the Adequate Protection Claim to the Administrative Agent, the Environmental Trust hereby grants to the Environmental Trustee, the Governments and the Administrative Agent a first-priority lien on and security interest in the Environmental Trust Assets, except with respect to any real property, to secure the payment of all amounts owed to, accrued or reserved on account of the Environmental Trust or to be retained by the Environmental Trustee hereunder or otherwise due hereunder and under the Settlement Agreement. The Environmental Trustee agrees to take appropriate actions and execute appropriate documents so that the Environmental Trustee's and the Beneficiaries' liens and security interests hereunder are perfected. The perfection will require the signatures of the Beneficiaries and the Administrative Agent.

3.4.   Manner of Payment.

Cash payments made by the Environmental Trust pursuant to the Settlement Agreement and this Agreement shall be in United States dollars by checks drawn on a domestic bank whose deposits are federally insured selected by the Environmental Trustee, or by wire transfer from such a domestic bank, at the option of the Environmental Trustee.

3.5.   Unclaimed Distributions

In the event that funds remain in the Environmental Trust at its termination, the amounts remaining shall be transferred, upon written confirmation by the Governments, in accordance with the Settlement Agreement.

### ARTICLE IV.
### THE ENVIRONMENTAL TRUSTEE

4.1.   Appointment

4.1.1.   Project Navigator, Ltd., not individually but solely in its representative capacity, is appointed to serve as the Environmental Trustee to administer the Environmental Trust and the Environmental Trust Accounts, in accordance with this Agreement, and the Environmental Trustee hereby accepts such appointment and agrees to serve in such representative capacity, effective upon the Closing Date, and to take such actions as are necessary, prior to the Closing Date, to set up the Trust, Trust Accounts, the 120-Day Budget, and actions necessary to prepare for undertaking the Environmental Actions. If the Environmental Trustee is not reappointed by the Beneficiaries and no successor Environmental Trustee is appointed by the Beneficiaries by the expiration of the Environmental Trustee's term, as set forth in Section 4.10.2, the Court may reappoint the Environmental Trustee or appoint a successor Environmental Trustee.

4.1.2.   After consultation with the Governments, the Environmental Trust is authorized to obtain the services of an environmental consultant to implement the future Environmental Actions (the "Consultant"). The Environmental Trustee shall consider any request by a Lead Agency, made in consultation with a Non-Lead Agency, to utilize the services of an existing Consultant or contractor, provided that the continued use of the Consultant or contractor would

17

be cost-effective. The Consultant shall obtain environmental, general and professional liability insurance in the sum of no less than $5 Million or such greater amount as agreed to by the Environmental Trust after consultation with the Governments. The beneficiary of the insurance policies shall be the Environmental Trust Parties and the Beneficiaries, and shall cover negligence committed by the Consultant in implementing the Environmental Actions or any other negligence committed by the Consultant. The legal relationship of the Consultant to the Environmental Trust and Environmental Trustee is that of an independent contractor professional, not that of an entity employed by the Environmental Trust or the Environmental Trustee. The Consultant shall not be deemed an Environmental Trust Party.

4.2.   Generally

The Environmental Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Environmental Trust and the Settlement Agreement and not otherwise. The Environmental Trustee shall have the authority to bind the Environmental Trust, and any successor Environmental Trustee, or successor or assign of the Environmental Trust, but shall for all purposes hereunder be acting in its representative capacity as Environmental Trustee and not individually. Notwithstanding anything to the contrary contained herein, the Environmental Trustee shall not be required to take action or omit to take any action if, after the advice of counsel, the Environmental Trustee believes in good faith such action or omission is not consistent with the Environmental Trustee's fiduciary duties. The Environmental Trustee shall have no obligations or liability to perform any activities for which the Environmental Trust Environmental Cost Account or Environmental Trust Administrative Account lacks sufficient funds.

4.3.   Powers

In connection with the administration of the Environmental Trust, except as otherwise set forth in this Agreement or the Settlement Agreement, the Environmental Trustee is authorized to perform any and all acts necessary or appropriate to accomplish the purposes of the Environmental Trust. The powers of the Environmental Trust shall, without any further Court approval or order, include, without limitation, each of the following: (i) to receive, manage, invest, supervise and protect the Environmental Trust Assets, withdraw, make distributions and pay taxes and other obligations owed by the Environmental Trust or the Environmental Trust Accounts from funds held by the Environmental Trustee and/or the Environmental Trust (or the Environmental Trust Accounts) in accordance with the Settlement Agreement and this Agreement, and withhold and pay to the appropriate taxing authority any withholding taxes on distributions from the Environmental Trust; (ii) to engage employees and professional Persons to assist the Environmental Trust and/or the Environmental Trustee with respect to the responsibilities described herein; (iii) to make distributions of the Environmental Trust Assets from the Environmental Trust Accounts for the purposes contemplated in this Agreement and the Settlement Agreement; and (iv) to effect all actions and execute all agreements, instruments and other documents necessary to implement this Agreement, including to exercise such other powers as may be vested in or assumed by the Environmental Trust and/or the Environmental Trustee pursuant to this Agreement and any order of the Court or as may be necessary and proper to carry out the provisions of this Agreement and the Settlement Agreement. No Person dealing with the Environmental Trust shall be obligated to inquire into the authority of the

18

Environmental Trustee in connection with the protection, conservation or disposition of Environmental Trust Assets. The Environmental Trustee is authorized to execute and deliver all documents on behalf of the Environmental Trust to accomplish the purposes of this Agreement and the Settlement Agreement.

4.4.    Other Professionals

The Environmental Trustee is authorized to retain on behalf of the Environmental Trust and pay such third parties as the Environmental Trustee (in accordance with a budget approved pursuant to Section 3.2 and in a manner consistent with Section 4.1.2 and 4.3 above) may deem necessary or appropriate to assist the Environmental Trustee in carrying out its powers and duties under this Agreement and the Stipulation and Settlement Agreement, including, without limitation, (i) counsel to the Environmental Trust and/or Environmental Trustee, (ii) a public accounting firm to perform such reviews and/or audits of the financial books and records of the Environmental Trust as may be appropriate in the Environmental Trustee's reasonable discretion and to prepare and file any tax returns or informational returns for the Environmental Trust or the Environmental Trust Accounts as may be required, and (iii) environmental consultants, custodians, security personnel, engineers, surveyors, brokers, contractors, administrative assistants and clerks. The Environmental Trustee may pay all such Persons compensation for services rendered and expenses incurred in accordance with a budget approved as provided in Section 3.2. The Environmental Trustee may, consistent with its fiduciary duty and with Section 4.1.2, above, retain an affiliated company to perform services for the Environmental Trust.

4.5.    Limitation of the Environmental Trustee's Authority

The Environmental Trust and the Environmental Trustee shall not and are not authorized to engage in any trade or business with respect to the Environmental Trust Assets or any proceeds therefrom, except as expressly provided herein and to the extent the same is deemed in good faith by the Environmental Trustee to be reasonably necessary or proper for the conservation or protection of the Environmental Trust Assets, or the fulfillment of the purposes of the Environmental Trust. The Environmental Trust and the Environmental Trustee shall not take any actions that would cause the Environmental Trust to fail to qualify as a qualified settlement fund under the QSF Regulations.

4.6.    Reliance by the Environmental Trust Parties

Except as may otherwise be provided herein: (a) the Environmental Trust Parties may rely on, and shall be protected from liability in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties; (b) the Environmental Trust Parties may consult with legal counsel, financial or accounting advisors and other professionals and shall not be personally liable for any action taken or not taken in accordance with the advice thereof; and (c) Persons dealing with the Environmental Trust Parties shall look only to the Environmental Trust Environmental Cost Account if related to Environmental Action or Environmental Trust Administrative Account to satisfy any liability incurred by the Environmental Trust Parties to such Person in carrying out the terms of this

19

Agreement or any order of the Court, and the Environmental Trust Parties shall have no personal obligations to satisfy any such liability other than as provided in Section 4.9.1.

4.7.    Compensation of the Environmental Trustee

The Environmental Trust shall pay its own reasonable and necessary costs and expenses, and shall reimburse the Environmental Trustee for the actual reasonable out-of-pocket fees and expenses to the extent incurred by the Environmental Trustee in connection with the Environmental Trustee's duties hereunder, including, without limitation, necessary travel, lodging, office rent (to be paid directly by the Environmental Trust), postage, photocopying, telephone and facsimile charges upon receipt of periodic billings, all in accordance with an annual budget or fee schedule approved by the Beneficiaries. The Environmental Trustee, and employees of the Environmental Trust and the Environmental Trustee, who perform services for the Environmental Trust shall be entitled to receive reasonable compensation for services rendered on behalf of the Environmental Trust in accordance with an annual budget or fee schedule approved by the Lead Agency, in consultation with the Non-lead Agency.

The Environmental Trust Assets shall be subject to the claims of the Environmental Trustee, and the Environmental Trustee shall be entitled to reimburse itself out of any available cash in the Environmental Trust Administrative Account, and the Environmental Trust shall be obligated to pay, for actual out-of-pocket expenses and for actual hours worked.

All compensation and other amounts payable to the Environmental Trustee shall be paid from the Environmental Trust Assets.

4.8.    Liability of Environmental Trust Parties

4.8.1.  In no event shall any of the Environmental Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Debtors, Lender Parties, or any other Environmental Trust Party. The Environmental Trust Parties shall further be indemnified and exculpated in accordance with Section 4.9 of this Agreement. The Environmental Trustee shall not be deemed in breach of its duties or responsibilities on account of the insufficiency of funds and shall not be liable to any person or entity for any environmental contamination or discharge that occurs due to an insufficiency of funds to address same. Funding from the Environmental Trust Environmental Cost Account may not be used except as otherwise expressly provided by and in accordance with the Settlement Agreement.

4.8.2.  As provided in Section IX (Covenants, Reservations and other Terms) of the Settlement Agreement, the Environmental Trust Parties are deemed to have resolved their civil liability under CERCLA, RCRA, CAA and CWA and State Environmental Laws to the United States, on behalf of EPA, and the State, on behalf of MDEQ, and have protection from contribution actions or claims as provided by Sections 113(f)(2) of CERCLA, 42 U.S.C. Section 9613(f)(2), or similar state law, or claims under common law for matters addressed in the Settlement Agreement. The Environmental Trust Parties shall have the benefits of the covenants not to sue as set forth in Section IX of the Settlement Agreement and of contribution protection as set forth in Section IX of the Settlement Agreement, each as limited by all reservations of rights contained in the Settlement Agreement. Any claim or cause of action brought under any

20

of the above referenced Environmental Laws or claims under common law that is brought against the Environmental Trustee for any matter addressed in the Settlement Agreement or this Agreement by any party to the Settlement Agreement or by any third party shall be under the exclusive jurisdiction of the Bankruptcy Court or the District Court upon withdrawal of reference.

4.8.3. No provision of this Agreement or the Settlement Agreement shall require the Environmental Trust Parties to expend or risk their own personal funds or otherwise incur any personal financial liability based on the ownership or environmental condition of the Assets or the performance or non-performance of any of its duties or the exercise of any of its authorities as Environmental Trustee hereunder. Notwithstanding the foregoing, the Environmental Trustee shall satisfy from its own funds any liability imposed by a final order of the Court, not reversed on appeal, on account of the Environmental Trustee's fraud, or willful misconduct, with relation to the performance or non-performance of any of its duties or the exercise of any of its authorities as Environmental Trustee hereunder.

4.9.    Exculpation and Indemnification

4.9.1. None of the Environmental Trust Parties shall be personally liable unless the Court, by a final order that is not reversed on appeal, finds that it committed fraud or willful misconduct after the Effective Date in relation to the Environmental Trustee's duties. There shall be an irrebuttable presumption that any action taken or not taken with the approval of the Court does not constitute an act of fraud or willful misconduct, provided that there has been no misrepresentation to the Court. Any judgment against an Environmental Trust Party and any costs of defense relating to any Environmental Trust Party shall be paid from the Environmental Trust Environmental Cost Account only if it relates to the Environmental Actions, or from the Environmental Trust Administrative Account, without the Environmental Trust Party having to first pay from its own funds for any personal liability or costs of defense, unless a final order of the Court, that is not reversed on appeal, determines that it committed fraud or willful misconduct in relation to the Environmental Trust Party's duties. In the event the Bankruptcy Court makes such a determination, that Environmental Trust Party shall reimburse the relevant Environmental Trust Account for all expended funds.

4.9.2. The Environmental Trust Parties are exculpated by all persons, including without limitation, holders of claims and other parties in interest, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership or environmental condition of Environmental Trust Assets and the discharge of the powers and duties conferred upon the Environmental Trust and/or Environmental Trustee by the Settlement Agreement or any order of the Court entered pursuant to or in furtherance of the Settlement Agreement, or applicable law or otherwise. No person, including without limitation, holders of claims and other parties in interest, will be allowed to pursue any claims or cause of action against any Environmental Trust Party for any claim against the Assigned Assets or Additional Assets, for making payments in accordance with the Settlement Agreement or any order of the Court, or for implementing the provisions of the Settlement Agreement or any order of the Court. Nothing in this Paragraph or the Settlement Agreement shall preclude the Beneficiaries from enforcing the terms of the Settlement Agreement and this Agreement against the Environmental Trust Parties as provided herein. Notwithstanding anything in this Section 4.9.2 or elsewhere in this Agreement to the

contrary, nothing in this Agreement shall be construed to exculpate the Environmental Trust Parties from any liability resulting from any act or omission constituting fraud, or willful misconduct, as provided herein.

4.9.3.  The Environmental Trust shall indemnify, defend and hold harmless (without the Environmental Trust Parties having to first pay from their personal funds) the Environmental Trust Parties from and against any and all claims, causes of action, liabilities, obligations, losses, costs, judgments, damages or expenses (including attorneys' fees) and any other assertion of liability arising out of the ownership or environmental condition of Environmental Trust Assets or action or inaction or in connection with the Environmental Trustee's duties, to the fullest extent permitted by applicable law, including but not limited to, those caused or alleged to be caused by negligence or fault of any Environmental Trust Party (except for fraud or willful misconduct), provided that such indemnification shall be limited to funds in the Environmental Trust Environmental Cost Account if it relates to Environmental Action or the Environmental Trust Administrative Account.  Without limiting the foregoing, any such judgment against a Environmental Trust Party and any such costs of defense relating to any Environmental Trust Party shall be paid by the Environmental Trust consistent with the terms and conditions of this Section.  Notwithstanding the foregoing, to the extent fraud or willful misconduct of any Environmental Trust Party is alleged and the Court finds, by a final order, not reversed on appeal, that such Environmental Trust Party committed fraud or willful misconduct, after the Closing Date in relation to the Environmental Trustee's duties, there shall be no indemnification, of that Environmental Trust Party, for any judgments arising from such allegations of fraud, or willful misconduct. It shall be an irrebuttable presumption that any action taken, or inaction, consistent with Court approval shall not constitute willful misconduct or fraud, provided that there has been no misrepresentation to the Court.

4.10.  Termination, Replacement, and Removal of the Environmental Trustee.

4.10.1. Termination

The duties, responsibilities and powers of the Environmental Trustee will terminate on the date the Environmental Trust is dissolved under applicable law in accordance with the Settlement Agreement, or by an order of the Court; provided that this Section and Sections 4.6, 4.8 and 4.9 above shall survive such termination, dissolution and entry.  The Environmental Trustee may resign from its Environmental Trusteeship generally and without cause giving not less than 120 days prior written notice thereof to the Court, the Governments and the Administrative Agent, provided however, that in the event a suitable replacement is not found and approved by the Governments and the Administrative Agent within 120 days after such written notice is provided, the Environmental Trustee's resignation shall not become effective and the Environmental Trustee shall continue to function in its capacity as Environmental Trustee until a suitable replacement is found and approved by the Governments and Administrative Agent.  Further provided, however, that the Court may allow the Environmental Trustee's resignation to take effect for good cause shown.  If an Environmental Trustee resigns from his position hereunder, subject to a final accounting, such Environmental Trustee, including his professionals, attorneys, and advisors, shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring

22

before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Environmental Trustee.

### 4.10.2. Replacement

The Environmental Trustee may be replaced upon completion of any ten (10) year term at the direction of the Governments and the Administrative Agent; however, this Section and Sections 4.6, 4.8 and 4.9 above shall survive such termination.

### 4.10.3. Removal

The Environmental Trustee may be removed or the Environmental Trust Assets may be transferred to another Environmental Trust at the request of the Governments and the Administrative Agent by:

(a)     The entry of an order by the Bankruptcy Court, not reversed on appeal, immediately upon notice of appointment of a temporary or permanent successor, finding that the Environmental Trustee committed fraud, willful misconduct or criminal conduct after the Closing Date in relation to the Environmental Trustee's duties under the Environmental Trust; or

(b)     The entry of an order by the Bankruptcy Court, not reversed on appeal, immediately upon notice of appointment of a temporary or permanent successor, finding that (i) the Environmental Trustee in any material respect, as a result of negligence, exacerbates hazardous conditions at the Environmental Trust Assets, (ii) is seriously or repeatedly deficient or late in performance of the work or violates the provisions of the Settlement Agreement, or (iii) has violated one or more material provisions of this Agreement.  In the event of the occurrence of 2(i), 2(ii) or 2(iii), the Governments and the Administrative Agent may jointly direct that (i) the Environmental Trustee be replaced in accordance with the Trust Agreement or (ii) all Trust Assets be transferred to a new trust established to oversee clean-up of the Environmental Trust Assets, at the direction of the Governments and the Administrative Agent to be used in accordance with the terms of this Agreement or the Settlement Agreement.

(c)     The provisions of this Section and Section 4.6, 4.8 and 4.9 above shall survive the removal of the Environmental Trustee or transfer of funds.

## 4.11.   Appointment of Successor Environmental Trustees

Any successor Environmental Trustee shall be proposed by the Governments and the Administrative Agent and appointed by the Court.  Any successor Environmental Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the Environmental Trust records.  Thereupon, such successor Environmental Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Environmental Trust with like effect as if originally named herein; provided, however, that a removed or resigning

Environmental Trustee shall, nevertheless, when requested in writing by the successor Environmental Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Environmental Trustee under the Environmental Trust all the estates, properties, rights, powers, and trusts of such predecessor Environmental Trustee.

4.12.   No Bond

Notwithstanding any state law to the contrary, the Environmental Trustee, including any successor Environmental Trustee, shall be exempt from giving any bond or other security in any jurisdiction.

## ARTICLE V.
## BENEFICIARIES

5.1.   Beneficiaries

Beneficial interests in the Environmental Trust shall be held by each of the Beneficiaries.

5.2.   Identification of Beneficiaries

5.2.1. In order to determine the actual names and addresses of the authorized representatives of a Beneficiary, the Environmental Trust and the Environmental Trustee shall be entitled to rely conclusively on the name and address of the authorized representative for such Beneficiary listed below in Section 5.2.2, who may from time to time provide additional or replacement names and addresses of authorized representatives, or listed in any written notice provided to the Environmental Trustee in the future by an authorized representative of such Beneficiary.

5.2.2. The Environmental Trustee shall send copies of all reports, budgets, annual balance statements, and other documents that the Environmental Trustee is required to submit to a Beneficiary under the Settlement Agreement and this Agreement, and related implementation documents including any unilateral administrative orders, consent decrees, or administrative orders on consent to the following person(s), as applicable:

As to the United States of America (on behalf of EPA) as beneficiary:

Authorized representative and party to receive all notices under 5.2.2:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-2840
Facsimile: (202) 616-6584
File Ref. No. 90-7-1-08388/18

Joan Redleaf-Durbin

24

Associate Regional Counsel
U.S. EPA, Region 4
Office of Regional Counsel (C-14J)
SNAFC, 13th Floor
61 Forsyth Street, S.W.
Atlanta, Georgia 30303-8960
Telephone: (404) 562-9544

E-mail: redleaf-durbin.joan@epa.gov

Alan Annicella
Project Manager
United States Environmental Protection Agency, Region 4
SNAFC, 13th Floor
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960
Telephone: (404) 562-8610
E-mail: annicella.alan@epa.gov

As to the State of Mississippi as beneficiary:

Authorized representative and party to receive all notices under 5.2.2:

Christopher G. Wells
Chief of Staff
Mississippi Department of Environmental Quality

P.O. Box 2261
Jackson, MS 39225
Telephone: 601-961-5545
Email: chris_wells@deq.state.ms.us

Roy Furrh
General Counsel
Mississippi Department of Environmental Quality
MS Bar No.4321
P.O. Box 2261
Jackson, MS 39225
Telephone: 601-961-5260
Email: Roy _Furrh@deq.state.ms.us

Rick Sumrall
Mississippi Department of Environmental Quality
Environmental Compliance and Enforcement Division
P.O. Box 2261
Jackson, MS 39225
Telephone: 601-961-5791

Email: Rick_Sumrall@deq.state.ms.us
As to the Lenders' Administrative Agent STUW LLC

Marc Sole
STUW, LLC
777 Third Avenue, 30th Floor,
New York, NY 10017

With a copy to:

Lenard M. Parkins, Esq.
Haynes and Boone, LLP
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: (713) 547-2000
Email: lenard.parkins@haynesboone.com

5.3.    Non-Beneficiaries

Upon the Closing Date of this Agreement, the Debtors shall have no interests including, without limitation, any reversionary interest, in the Environmental Trust or any Environmental Trust Assets except as provided in the Settlement Agreement. The Governments and the Administrative Agent shall be the sole beneficiaries of the Environmental Trust Accounts. Debtors shall not have any rights or interest to the Environmental Trust Assets distributed to the Environmental Trust Accounts, nor to any funds remaining in any of the Environmental Trust Accounts upon the completion of any and all final actions and disbursements for any and all final costs except to the extent of Excess Proceeds as defined and provided in the Settlement Agreement.

5.4.    Transfer of Beneficial Interests

The interest of the Beneficiaries in the Environmental Trust, which are reflected only on the records of the Environmental Trust maintained by the Environmental Trustee, are not transferable except upon order of the Court or by operation of law, and in any event, only after written notice to the Environmental Trust. The Environmental Trust shall not be required to record any transfer in favor of any transferee where, in the sole discretion of the Environmental Trustee, such transfer is or might be construed to be ambiguous or to create uncertainty as to the holder of the interest in the Environmental Trust. Until a transfer is in fact recorded on the books and records maintained by the Environmental Trust for the purpose of identifying Beneficiaries, the Environmental Trust, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications to Beneficiaries, as though it has no notice of any such transfer, and in so doing the Environmental Trust and Environmental Trustee shall be fully protected and incur no liability to any purported transferee or any other Person. Interests in the Environmental Trust may not be transferred to the Debtors or any Persons related to Debtors (within the meaning of Section 468B(d)(3) of the Internal Revenue Code).

## ARTICLE VI.
## REPORTING AND TAXES

6.1.    Reports

As soon as practicable, but no later than 28 days after the end of each calendar quarter beginning with the quarter ended after assets are first received by the Environmental Trust and ending as soon as practicable upon termination of the Environmental Trust, the Environmental Trust shall submit to the Beneficiaries a written report, including: (a) financial statements of the Environmental Trust at the end of such calendar quarter or period and the receipts and disbursements of the Environmental Trust for such period; and (b) a description of any action to be taken by the Environmental Trust, and prior to such action being taken, in the performance of its duties which, as determined by outside counsel, accountants or other professional advisors, materially and adversely affects the Environmental Trust and of which notice has not previously been given to the Beneficiaries. The Environmental Trust shall promptly submit additional reports to the Beneficiaries whenever, as determined by outside counsel, accountants or other professional advisors, an adverse material event or change occurs which affects either the Environmental Trust or the rights of the Persons receiving distributions (including, without limitation, the Beneficiaries) hereunder.

6.2.    Other

The Environmental Trust shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Environmental Trust that are required by any applicable governmental unit.

6.3.    Reports in Support of Insurance Claims

The Environmental Trust shall also file (or cause to be filed) reports and cost analyses in support of claims against insurance carriers at the request of the Governments and shall provide the United States and the State a copy of any such reports and cost analyses.

6.4.    Taxes

The Environmental Trustee shall be the "administrator," within the meaning of Treasury Regulation Section 1.468B-2(k)(3), of the Environmental Trust. Subject to definitive guidance from the Internal Revenue Service or a judicial decision to the contrary, the Environmental Trustee shall file tax returns and pay applicable taxes with respect to the Environmental Trust in a manner consistent with the provisions of the QSF Regulations. All such taxes shall be paid from the Environmental Trust Administrative Account.

## ARTICLE VII.
## MISCELLANEOUS PROVISIONS

7.1.    Amendments and Waivers

Any provision of this Agreement may be amended or waived by mutual written consent of the Environmental Trust and the Beneficiaries; provided, however, that no change shall be

made to this Agreement that would alter the provisions of Section 7.2 hereof or adversely affect the federal income tax status of the Environmental Trust as a "qualified settlement fund" (in accordance with Section 6.4 hereof), or, unless agreed to in writing by the affected Environmental Trustee, any of the rights or powers of the Environmental Trustee as contained in this Agreement. Technical amendments to this Agreement may be made as necessary, to clarify this Agreement or enable the Environmental Trustee to effectuate the terms of this Agreement, in a manner consistent with the Settlement Agreement with the mutual consent of the Environmental Trust and the Beneficiaries.

7.2.     Tax Treatment

    The Environmental Trust created by this Agreement is intended to be treated as a qualified settlement fund pursuant to the QSF Regulations for federal income tax purposes, and to the extent provided by law, this Agreement shall be governed and construed in all respects consistent with such intent.

7.3.     Cooperation

    7.3.1.  The Environmental Trust and Environmental Trustee shall take such actions and execute such documents as are reasonably requested by Debtors and Beneficiaries with respect to effectuating the Settlement Agreement and the transactions contemplated thereby, provided that such actions are not inconsistent with this Agreement or the Settlement Agreement. To the extent that the Debtors request the Environmental Trust and/or the Environmental Trustee to take such an action, the Environmental Trust and Environmental Trustee shall do so at the sole expense of the Debtors.

    7.3.2.  The Environmental Trustee shall cooperate with the Liquidation Trust Trustee to accomplish the respective objectives of the Environmental Trust and Liquidation Trust.

7.4.     Situs of the Trust

    The situs of the Trust herein established is Mississippi. To the extent the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, those laws as are applicable. Where the Bankruptcy Code or other federal law is not applicable, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Mississippi, without giving effect to the principles of conflict of law thereof.

7.5.     Severability

    If any provision of this Agreement or application thereof to any Person or circumstance shall be finally determined by the Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

7.6.    Sufficient Notice

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the Person for whom such notice is intended, or via email or facsimile, to the name and address set forth in the case of a Beneficiary in Section 5.2 of this Agreement or such other address provided in writing to the Trust by an authorized representative of the respective Beneficiary.

7.7.    Headings

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

7.8.    Actions Taken on Other Than Business Day

If any payment or act under the Stipulation and Settlement Agreement or this Agreement is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date. For the purposes of this agreement, a business day shall be any of the days Monday through Friday excluding national holidays.

7.9.    Consistency of Agreements and Construction

To the extent reasonably possible, the provisions of this Agreement shall be interpreted in a manner consistent with the Stipulation and Settlement Agreement. Where the provisions of this Agreement are irreconcilable with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall prevail, with the exception of Section 3.2.2 and 3.2.4 in which case this Agreement controls.

7.10.    Compliance with Laws

Any and all distributions of Environmental Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

7.11.    Preservation of Privilege

In connection with the rights, claims, and causes of action that constitute the Environmental Trust Assets, any attorney-client privilege, work-product immunity, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Environmental Trust shall vest in the Environmental Trust and its representatives, and the Parties are authorized to take all necessary actions to effectuate the transfer of such privileges.

7.12.   <u>No Recourse to Beneficiaries</u>

In no event shall the Beneficiaries have any responsibility for paying any expenses, fees, and other obligations of the Environmental Trust, and in no event shall the Environmental Trust or the Environmental Trustee, or any of their agents, representatives, or professionals, have recourse to the Beneficiaries therefor.

7.13.   <u>Status of Beneficiaries</u>

No Beneficiary shall be deemed to be an owner, operator, partner, agent, shareholder, officer, or director of the Environmental Trust or the Environmental Trust Parties, or to be an owner or operator of the Environmental Trust Assets, solely on account of this Agreement or the Settlement Agreement, or actions contemplated thereby, or its status as a Beneficiary or party to this Agreement or the Settlement Agreement.

7.14.   <u>Uniform Custodial Trust Act</u>

This Agreement shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

7.15.   <u>Prevailing Party.</u>

If the Environmental Trust is the prevailing party in a dispute regarding the provisions of this Environmental Trust Agreement or the enforcement thereof, the Environmental Trust shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action (except that the Governments are not responsible for such costs, expenses and fees).

THE UNDERSIGNED PARTIES ENTER INTO THIS AGREEMENT:

**FOR THE UNITED STATES OF AMERICA:**

Date: _7/14/15_                    By: _____
                                        BRUCE S. GELBER
                                        Deputy Assistant Attorney General
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice


Date: _7/24/15_                    By: _____
                                        KENNETH G. LONG
                                        Senior Attorney
                                        D.C. Bar no. 414791
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, DC 20044


Date: _7/24/15_                    By: _____
                                        ALAN S. TENENBAUM
                                        National Bankruptcy Coordinator
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, DC 20044

31

**THIS PAGE INTENTIONALLY BLANK**

**THIS PAGE INTENTIONALLY BLANK**

**FOR THE STATE OF MISSISSIPPI ON BEHALF OF THE MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY:**

Date: 7/28/15

By: _____

CHRISTOPHER G. WELLS
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, MS 39225
Telephone: 601-961-5545
Email: chris_wells@deq.state.ms.us

34

**FOR THE ADMINISTRATIVE AGENT:**

Date: August 3, 2015          By: _____

MARC SOLE
STUW, LLC
777 Third Avenue, 30th Floor,
New York, NY 10017

35

**FOR THE DEBTORS**

**MISSISSIPPI PHOSPHATES CORPORATION**

Date: _8-4-15_                    By: _____
                                 Robert Kerley
                                 Chief Financial Officer

**AMMONIA TANK SUBSIDIARY, INC.**

Date: _8-4-15_                    By: _____
                                 Robert Kerley
                                 Chief Financial Officer

**SULFURIC ACID TANKS SUBSIDIARY, INC.**

Date: _8-4-15_                    By: _____
                                 Robert Kerley
                                 Chief Financial Officer

**FOR THE ENVIRONMENTAL TRUSTEE:**

DATE: 7/24/15        BY: _____

Roberto Puga
**Principal of Project Navigator, Ltd.**
**Solely in its Capacity as Trustee of the MPC**
**Environmental Trust**
**One Pointe Drive, Suite 320**
**Brea, CA 92821**

37

**ATTACHMENT A TO MPC ENVIRONMENTAL TRUST AGREEMENT**

**GYP STACK EQUIPMENT LIST**

ATTACHMENT A
ENVIRONMENTAL TRUST AGREEMENT

**MS PHOSPHATES CORP EQUIPMENT CODES**
**AREA 252   WASTE WATER TREATMENT**
Last update 6/3/2015 10:22:00 AM

| COST CENTER | EQUIPMENT NUMBER | DESCRIPTION |
|---|---|---|
| **AGITATORS, MIXERS, MECHANICAL BLENDERS, DRIVES** | | |
| 8252 | 252-0111001 | SLAKER AGITATOR |
| 8252 | 252-0111002 | LIME SLURRY TANK AGITATOR |
| 8252 | 252-0111003 | #1 – 2ND STAGE TANK AGITATOR |
| 8252 | 252-0111004 | #2 – 2ND STAGE TANK MIXING TANK AGITATOR |
| 8252 | 252-0111005 | 1ST STAGE MIXING TANK AGITATOR |
| **COMPRESSORS, RELATED EQUIP; BLOWERS, DRIVES** | | |
| 8252 | 252-1010004 | COMMINUTOR |
| 8252 | 252-1010006 | BAG FILTER BLOWER |
| 8252 | 252-1011005 | 2ND STAGE TANK AERATOR COMPRESSOR |
| 8252 | 252-1011006 | LIME SILO DUST FILTER BLOWER |
| 8252 | 252-1011007 | INSTRUMENT AIR COMPRESSOR & RECEIVER SINGLE STAGE |
| **DYKES, DAMS PONDS, ETC.** | | |
| 8252 | 252-1710002 | GYPSUM POND |
| 8252 | 252-1710003 | NORTH DITCH LEVEE |
| **ELECTRICAL** | | |
| 8252 | 252-1911001 | LIGHTING, WASTEWATER TREATMENT ARE |
| 8252 | 252-1911002 | ROUTINE & P.M. WASTEWATER TREAT. AREA |
| **FANS AND DRIVES (EXHAUST FANS, ETC)** | | |
| 8252 | 252-2110003 | NORTH DITCH COOLING TOWER FAN NO. 1 SOUTH |
| 8252 | 252-2110006 | NORTH DITCH COOLING TOWER FAN NO. 4 NORTH |
| **FEEDERS AND DRIVES** | | |
| 8252 | 252-2211002 | ROTARY VALVE |
| 8252 | 252-2211003 | GRIT SCREW |
| **HEAT EXCHANGERS, EVAPORATORS, AND COOLERS** | | |
| 8252 | 252-3110008 | NORTH DITCH COOLING TOWER |
| **INSTRUMENTS AND CONTROLS** | | |
| 8252 | 252-3410002 | POTABLE WATER CHLORINATOR |
| 8252 | 252-3411001 | INSTRUMENTATION & CONTROLS |
| **PIPE, VALVES, AND FITTINGS** | | |
| 8252 | 252-3810021 | DAP COOLING WATER LINE |
| 8252 | 252-3811001 | PIPE, VALVES & FITTINGS |

**MS PHOSPHATES CORP EQUIPMENT CODES**
**AREA 252    WASTE WATER TREATMENT**
Last update 6/3/2015 10:22:00 AM

**PUMPS AND DRIVES**

| | | |
|---|---|---|
| 8252 | 252-4110017 | POLYMER TANK CIRCULATING PUMP |
| 8252 | 252-4110042 | #2 WELL PUMP AUX. ENGINE |
| 8252 | 252-4110046 | NORTH STORM WATER SUMP PUMP EAST |
| 8252 | 252-4110047 | NORTH STORM WATER SUMP PUMP CENTER |
| 8252 | 252-4110055 | SOUTH CAUSTIC PUMP |
| 8252 | 252-4110056 | NORTH CAUSTIC PUMP |
| 8252 | 252-4110061 | NORTH DITCH COOLING TOWER HOT WELL PUMP NO. 2 EAST |
| 8252 | 252-4110062 | NORTH DITCH COOLING TOWER HOTWELL PUMP NO. 3 |
| 8252 | 252-4110066 | SEWAGE LIFT PUMP, EAST @ SEWAGE PLANT |
| 8252 | 252-4110067 | SEWAGE LIFT PUMP, WEST @ SEWAGE PLANT |
| 8252 | 252-4110087 | SOUTH STORM WATER SUMP PUMP CENTER |
| 8252 | 252-4110088 | SOUTH STORM WATER SUMP PUMP NORTH |
| 8252 | 252-4110103 | NORTH DITCH ACID SPILL PUMP |
| 8252 | 252-4110107 | PORTABLE DIESEL TRASH PUMP, DETROIT DIESEL ENGINE |
| 8252 | 252-4110108 | DAP SUPPLY PUMP EAST |
| 8252 | 252-4110109 | DAP SUPPLY PUMP WEST |
| 8252 | 252-4110111 | POTABLE WATER BOOSTER PUMP |
| 8252 | 252-4110116 | #2 – 6" DIESEL PUMP |
| 8252 | 252-4110117 | #1 – 6" DIESEL PUMP |
| 8252 | 252-4111001 | SMALL EAST DITCH PUMP |
| 8252 | 252-4111002 | SMALL WEST DITCH PUMP |
| 8252 | 252-4111004 | SOUTHEAST POND PUMP |
| 8252 | 252-4111005 | SOUTHWEST POND PUMP |
| 8252 | 252-4111006 | NORTHWEST POND PUMP |
| 8252 | 252-4111007 | EAST SLURRY PUMP |
| 8252 | 252-4111008 | WEST SLURRY PUMP |
| 8252 | 252-4111009 | 1ST STAGE SERVICE WATER PUMP |
| 8252 | 252-4111010 | 2ND STAGE SERVICE WATER PUMP |
| 8252 | 252-4111011 | BIG WEST DITCH PUMP |
| 8252 | 252-4111012 | BIG EAST DITCH PUMP |
| 8252 | 252-4111013 | DAP STORMWATER PUMP @ INF JR |
| 8252 | 252-4111014 | NORTHWEST POND BOOSTER PUMP (ASH PUMP) |
| 8252 | 252-4111015 | NORTHEAST POND PUMP |
| 8252 | 252-4111016 | SOUTHWEST POND N2 EVAP. PUMP |
| 8252 | 252-4111018 | COOLING TOWER RECYCLE PUMP 6"HAZELTON |
| | | *West leachate sump pump* |

**STRUCTURES AND BUILDINGS**

| | | |
|---|---|---|
| 8252 | 252-5011001 | BUILDINGS AT INF JR |
| 8252 | 252-5011002 | PLATFORMS, HANDRAILS AND LADDERS |
| 8252 | 252-5011003 | 6' X 8' FIBERGLASS BLDG @ W/W TREAT. AREA |
| 8252 | 252-5011004 | 7'9" X 8' FIBERGLASS BLDG @ W/W TREAT. AREA |

**TANKS**

| | | |
|---|---|---|
| 8252 | 252-5110008 | ACID TANK @ N. DITCH ACID CONTROL |
| 8252 | 252-5110025 | CAUSTIC TANK W/W CONTROL |
| 8252 | 252-5110031 | 10,000 GALLON SEWAGE SURGE TANK |
| 8252 | 252-5110033 | POTABLE WATER RETENTION TANK |
| 8252 | 252-5111001 | SILO TANK |
| 8252 | 252-5111002 | SLAKER |

*Caustic storage tank – sulfuric acid plant*
*Caustic tank – east gypsum stack*
*Caustic tank – east gypsum stack*

MS PHOSPHATES CORP EQUIPMENT CODES
## AREA 252    WASTE WATER TREATMENT
Last update 6/3/2015 10:22:00 AM

| | | |
|---|---|---|
| 8252 | 252-5111003 | LIME SLURRY TANK |
| 8252 | 252-5111004 | 1ST STAGE MIXING TANK LIME NEUT. |
| 8252 | 252-5111005 | #1 – 2ND STAGE MIXING TANK |
| 8252 | 252-5111006 | #2 – 2ND STAGE MIXING TANK |

## TOOLS AND EQUIPMENT

| | | |
|---|---|---|
| 8252 | 252-5810002 | GENERATOR @ LOW PRESSURE STORAGE |
| ~~8252~~ | ~~252-5810010~~ | ~~#1 DRISCO WELDING MACHINE WHEN USED IN WW 10" – 18"~~ |
| 8252 | 252-5811013 | DREDGE BOAT 671 DETROIT |
| 8252 | 252-5810023 | #2 DRISCO WELDING MACHINE 10" – 18" |

## OFFICE – GENERAL EQUIPMENT

| | | |
|---|---|---|
| ~~8252~~ | ~~252-7311001~~ | ~~COST OF WATER TREATEMENT OPER. SUPPLIES~~ |

## VEHICLES  - See Rolling Stock Inventory

| | | |
|---|---|---|
| ~~8252~~ | ~~252-7610009~~ | ~~#2 1996 FORD F-150 – WASTEWATER TREATMENT TRUCK~~ |
| ~~8252~~ | ~~252-7310003~~ | ~~AR66 6 WHEEL BUGGY~~ |
| ~~8252~~ | ~~252-7610020~~ | ~~#12 1994 FORD 150 – BOBBY LOTT~~ |



## NEW WASTE WATER TREATMENT PLANT

## AGITATORS, MIXERS, MECHANICAL BLENDERS, DRIVES

| | | |
|---|---|---|
| 8252 | 252-0110001 | NO. 1 RAKE DRIVE |
| 8252 | 252-0110002 | NO. 2 RAKE DRIVE |
| 8252 | 252-0110003 | NO. 1 RESLURRY TANK AGITATOR |
| 8252 | 252-0110004 | NO. 2 RESLURRY TANK AGITATOR |
| 8252 | 252-0110005 | LIME SLURRY AGITATOR |
| 8252 | 252-0110005 | LIME SLURRY AGITATOR DRIVE |
| 8252 | 252-0110006 | NO. 1 MIX TANK AGITATOR |
| 8252 | 252-0110006 | NO. 1 MIX TANK AGITATOR DRIVE |
| 8252 | 252-0110007 | NO. 2 MIX TANK AGITATOR |
| 8252 | 252-0110007 | NO. 2 MIX TANK AGITATOR DRIVE |
| 8252 | 252-0110008 | NO. 3 MIX TANK AGITATOR |
| 8252 | 252-0110008 | NO. 3 MIX TANK AGITATOR DRIVE |
| 8252 | 252-0110009 | NO. 1 BLEND TANK AGITATOR |
| 8252 | 252-0110009 | NO. 1 BLEND TANK AGITATOR DRIVE |
| 8252 | 252-0110010 | NO. 2 BLEND TANK AGITATOR |
| 8252 | 252-0110010 | NO. 2 BLEND TANK AGITATOR DRIVE |
| 8252 | 252-0110011 | NO. 2 RAKE LIFT DRIVE |
| 8252 | 252-0110012 | NO. 1 RAKE LIFT DRIVE |
| 8252 | 252-0110013 | NO. 1 STATIC MIXER |
| 8252 | 252-0110014 | NO. 2 STATIC MIXER |
| 8252 | 252-0110016 | NO. 1 POLYMER FEED SYSTEM |
| 8252 | 252-0110017 | NO. 2 POLYMER FEED SYSTEM |
| 8252 | 252-0110018 | NO. 3 POLYMER FEED SYSTEM |
| 8252 | 252-0110019 | Aireators |

## COMPRESSORS, RELATED EQUIP; BLOWERS, DRIVES

MS PHOSPHATES CORP EQUIPMENT CODES
AREA 252    WASTE WATER TREATMENT
Last update 6/3/2015 10:22:00 AM

| | | |
|---|---|---|
| 8252 | 252-1010001 | LIME SILO BLOWER |
| 8252 | 252-1010001 | LIME SILO BLOWER DRIVE |
| 8252 | 252-1010007 | BELT FILTER AIR-COMPRESSOR |

**FEEDERS AND DRIVES**

| | | |
|---|---|---|
| 8252 | 252-1410001 | #1 LIME SCREW CONVEYOR |
| 8252 | 252-1410001 | #2 LIME SCREW CONVEYOR |

**ELECTRICAL**

| | | |
|---|---|---|
| 8252 | 252-1910001 | BIN VIBRATOR |
| 8252 | 252-1910002 | 5KV MAIN SWITCH |
| 8252 | 252-1910003 | 5KV/480 TRANSFORMER |
| 8252 | 252-1910004 | 480V MAIN BREAKER FOR MCC |
| 8252 | 252-1910005 | A/C UNIT IN MCC |
| 8252 | 252-1910006 | AREA LIGHTS AND RECEPTICALS |
| 8252 | 252-1910007 | SUMP PUMP IN R/R LIME PIT |
| 8252 | 252-1910008 | MAIN BREAKER IN MAIN SUB |

**ELEVATORS**

| | | |
|---|---|---|
| 8252 | 252-2010001 | LIME BUCKET ELEVATOR |

**FEEDERS AND DRIVES**

| | | |
|---|---|---|
| 8252 | 252-2210001 | LIME FEEDER |
| 8252 | 252-2210001 | LIME FEEDER DRIVE |
| 8252 | 252-2210002 | FILTER PRESS |
| 8252 | 252-2210002 | FILTER PRESS DRIVE |
| 8252 | 252-2210003 | GRIT DISCHARGE SCREW |
| 8252 | 252-2210003 | GRIT DISCHARGE SCREW DRIVE |

**FILTERS (WET & DRY) & DRIVES, BAGHOUSES**

| | | |
|---|---|---|
| 8252 | 252-2410001 | SILO BAG FILTER |

**INSTRUMENTS AND CONTROLS** - see ~~&a~~ P+I attached

| | | |
|---|---|---|
| ~~8252~~ | ~~252-2410001~~ | ~~INSTRUMENT AND CONTROLS~~ |

**PIPE, VALVE & FITTING**

| | | |
|---|---|---|
| ~~8252~~ | ~~252-2810001~~ | ~~AIR PIPING~~ |
| ~~8252~~ | ~~252-2810002~~ | ~~WATER PIPING~~ |
| ~~8252~~ | ~~252-8810000~~ | ~~PROCESS WATER~~ |
| ~~8252~~ | ~~252-5810001~~ | ~~Chlorine Piping (Reference Blank Work Orders for Tracking)~~ |

**PUMPS AND DRIVES**

| | | |
|---|---|---|
| 8252 | 252-4110002 | LIME SLURRY PUMP A |
| 8252 | 252-4110002 | LIME SLURRY PUMP DRIVE A |
| 8252 | 252-4110003 | LIME SLURRY PUMP B |
| 8252 | 252-4110003 | LIME SLURRY PUMP DRIVE B |

**MS PHOSPHATES CORP EQUIPMENT CODES**
**AREA 252    WASTE WATER TREATMENT**
Last update 6/3/2015 10:22:00 AM

| | | |
|---|---|---|
| 8252 | 252-4110004 | LIME UNLOADING PUMP |
| 8252 | 252-4110004 | LIME UNLOADING PUMP DRIVE |
| 8252 | 252-4110005 | NO. 1 RECYCLE PUMP |
| 8252 | 252-4110005 | NO. 1 RECYCLE PUMP DRIVE |
| 8252 | 252-4110006 | NO. 2 RECYCLE PUMP |
| 8252 | 252-4110005 | NO. 2 RECYCLE PUMP DRIVE |
| 8252 | 252-4110007 | NO. 1 SLUDGE PUMP |
| 8252 | 252-4110007 | NO. 1 SLUDGE PUMP DRIVE |
| 8252 | 252-4110008 | NO. 2 EFFUENT PUMP |
| 8252 | 252-4110008 | NO. 2 EFFUENT PUMP DRIVE |
| 8252 | 252-4110009 | FILTER FEED PUMP |
| 8252 | 252-4110009 | FILTER FEED PUMP DRIVE |
| 8252 | 252-4110010 | FILTER WASH PUMP |
| 8282 | 252-4110010 | FILTER WASH PUMP DRIVE |
| 8252 | 252-4110011 | FILTRATE PUMP |
| 8252 | 252-4110011 | FILTRATE PUMP DRIVE |
| 8252 | 252-4110012 | SUMP PUMP |
| 8252 | 252-4110012 | SUMP PUMP DRIVE |
| 8252 | 252-4110013 | SEWAGE LIFT PUMP |
| 8252 | 252-4110014 | LIME UNLOADING PIT SUMP PUMP |
| 8252 | 252-4110015 | RESLURRY PUMP |
| 8252 | 252-4110015 | RESLURRY PUMP DRIVE |
| 8252 | 252-4110016 | AREA WASH DOWN PUMP |
| ~~8252~~ | ~~252-4104130~~ | ~~P.A COOLING WATER PUMP "A"~~ |
| ~~8252~~ | ~~252-4104131~~ | ~~P.A. COOLING WATER PUMP "B"~~ |
| 8252 | 252-4104132 | RETENION POND PUMPS |
| 8252 | 252-4104133 | New Caustic Pump |
| **8252** | **252-4104134** | **Flume Pump** |
| 8252 | 252 – 4104135 | 1st Emergency Pump |
| 8252 | 252 – 4104136 | 2nd Emergency Pump |
| 8252 | 252--4104137 | High Pressure Washer |
| 8252 | 252--4104138 | Seal Water Booster Pump |
| 8252 | 252--4104139 | Emergency Potable Water Model SSV Goulds Pump |
| 8252 | 252--4104140 | #1 Outfall Pump (Vertical) Flowserve –Vertical Turbine Pump |
| 8252 | 252--4104141 | #2 Outfall Pump (Horizontal) Flowserve 6LR-13A-FPD-SF  Rotation CW |
| 8252 | 252---4104142 | Storm Water Pump (Vertical) Flowserve  12EHM-1 Stage |
| 8252 | 252---4104143 | Outfall  Metering Pumps (Dynaflow Model-G40A2468A1) 3-PUMPS |

### Screens

| | | |
|---|---|---|
| 8252 | 252-4410001 | GRIT SCREEN |
| 8252 | 252-4410001 | GRIT SCREEN DRIVE |

## STRUCTURE AND BUILDING

| | | |
|---|---|---|
| ~~8252~~ | ~~252-6010007~~ | ~~GENERAL PLANT~~ |

## TANKS

| | | |
|---|---|---|
| 8252 | 252-5110001 | NO. 1 CLARIFIER |
| 8252 | 252-5110003 | NO. 1 MIX TANK |
| 8252 | 252-5110004 | NO. 2 MIX TANK |
| 8252 | 252-5110005 | NO. 3 MIX TANK |
| 8252 | 252-5110006 | NO. 1 BLEND TANK |
| 8252 | 252-5110007 | NO. 2 BLEND TANK |

**MS PHOSPHATES CORP EQUIPMENT CODES**
**AREA 252     WASTE WATER TREATMENT**
Last update 6/3/2015 10:22:00 AM

| | | |
|---|---|---|
| 8252 | 252-5110009 | RESLURRY TANK |
| 8252 | 252-5110010 | NO. 2 EFFLUENT TANK |
| 8252 | 252-5110011 | LIME SILO |
| 8252 | 252-5110013 | LIME SLAKER |
| 8252 | 252-5110013 | LIME SLAKER DRIVE |
| 8252 | 252-5110014 | LIME SLURRY TANK |
| 8252 | 252-5110015 | FILTRATE SUMP |
| 8252 | 252-5110016 | NO. 2 CLARIFIER |
| 8252 | 252-5110017 | LIME UNLOADING HOPPER |
| 8252 | 252-5110020 | STORAGE TANK 4000 GAL POLYMER TANK |
| 8252 | 252-5110021 | ACID TANK |

MS PHOSPHATES CORP EQUIPMENT CODES
AREA 256    EAST GYPSUM DISPOSAL SITE
Last update 6/3/2015 10:24:00 AM

| COST CODE | EQUIPMENT NUMBER | DESCRIPTION |
|---|---|---|
| | | |
| | **DYKES, DAMS, PONDS, ETC.** | |
| | | |
| 8256 | 256-1712001 | NEW EAST GYP POND SECTION 1 |
| 8256 | 256-1712002 | NEW EAST GYP POND SECTION 2 |
| 8256 | 256-1712003 | NEW EAST GYP RETURN/SURGE POND |
| | | |
| | **PIPE, VALVES AND FITTINGS** | |
| | | |
| 8256 | 256-3812001 | GYPSUM PIPING N FILTER |
| 8256 | 256-3812002 | GYPSUM PIPING S FILTER |
| 8256 | 256-3812003 | WATER RETURN LINES |
| | | |
| | **PUMPS AND DRIVES** | |
| | | |
| 8256 | 256-4112001 | WATER RETURN PUMP, #1 |
| 8256 | 256-4112002 | WATER RETURN PUMP, #2 |
| 8256 | 256-4112003 | N. FILTER GYPSUM BOOSTER PUMP |
| 8256 | 256-4112004 | S. FILTER GYPSUM BOOSTER PUMP |
| 8256 | 256-4112005 | SPARE FITLER GYPSUM BOOSTER PUMP |
| | | |
| | ~~**INSTRUMENTATION AND CONTROLS**~~ | |
| | | |
| ~~8256~~ | ~~256-3412001~~ | ~~INSTRUMENTATION~~ |
| | | |
| | **ROADS** | |
| | | |
| 8256 | 256-4209005 | NEW EAST GYP POND ROADWAY |
| | | |
| | **STRUCTURES & BUILDINGS** | |
| | | |
| 8256 | 256-5012001 | PLATFORMS, HANDRAILS & LADDERS |
| 8256 | 256-5012002 | OFFICE & MCC BREAKER ROOM |
| | | |
| | **TOOLS & EQUIPMENT** | |
| | | |
| 8256 | 256-5812001 | #4 DRISCO WELDER |
| 8256 | 256-5812002 | #3 DRISCO WELDER |
| 8256 | 256 -5812003 | Emergency Spill Pump Generator |

**EQUIPMENT CHARGE ACCOUNT**
**ROLLING STOCK**

| DESCRIPTION | COST CENTER |
|---|---|

**DOZERS**

| | |
|---|---|
| Komatsu D41P S/N B21050 | 8253 |
| John Deere 700 | 8253 |

**TRACKHOE**

| | |
|---|---|
| # 2 Komatsu  PC300LC-6 | 8253 |
| # 3 Komatsu  PC300LC-7EO | 8253 |
| #4  Komatsu  PC300LC-7EO | 8253 |
| #5  Komatsu  PC300LC-7EO | 8253 |

**MISCELANEOUS**

| | |
|---|---|
| 2006 Chevy 1500 | 8252 |
| 2001 Ford F450 | 8253 |
| 2006 Ford F-150 | 8252 |
| 2001 Chevy 1500 | 8253 |
| 1999 GMC 6500 | 8253 |
| 1987 Ford LT900 | 8253 |
| Kubota RTV | 8253 |